**R. GIBSON PAGTER, JR.**
California State Bar No. 116450
**PAGTER AND MILLER**
525 N. Cabrillo Park Drive, Suite 104
Santa Ana, CA 92701
Telephone: (714) 541-6072
Facsimile: (714) 541-6897
Email: gibson@pagterandmiller.com

Attorneys for CARL H REINHART, Debtor and Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No. 8:09-bk-16774 TA |
| CARL H REINHART, | Chapter 11 |
| | ORIGINAL DISCLOSURE STATEMENT OF DEBTOR, CARL H REINHART, DESCRIBING CHAPTER 11 PLAN DATED MARCH 22, 2010 |
| Debtor and Debtor-in-Possession. | Disclosure Statement Hearing<br>Date: May 5, 2010<br>Time: 10:00 a.m.<br>Ctrm: 5B<br>    411 W. 4th St<br>    Santa Ana, CA 92701<br><br>Plan Confirmation Hearing<br>Date: Not Yet Scheduled<br>Time:<br>Ctrm: 5B<br>    411 W. 4th St<br>    Santa Ana, CA 92701 |

///

///

-1-

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................... 5
      A. Purpose of this Document ................................. 5
      B. Deadlines for Voting and Objection;
         Date of Plan Confirmation Hearing ...................... 6
         1) Time and Place of the Confirmation Hearing ......... 7
         2) Deadline for Voting for or Against the Plan ........ 7
         3) Deadline for Objecting to the Confirmation of the Plan ........ 7
         4) Identity of Person to Contact for More Information
            Regarding the Plan .................................. 7
      C. Disclaimer ............................................... 8

II.   BACKGROUND .................................................. 8
      A. Description and History of Debtor's Business ........... 8
      B. Principals/Affiliates of Debtor's Business ............. 8
      C. Management of the Debtor Before and After the Bankruptcy .. 8
      D. Events Leading to Chapter 11 Filing .................... 9
      E. Significant Events During the Bankruptcy ............... 8
         1) Bankruptcy Proceedings .............................. 9
         2) Other Legal Proceedings ............................. 10
         3) Actual and Projected Recovery of Preferential or
            Fraudulent Transfers ................................ 10
         4) Procedures Implemented to Resolve Financial Problems .. 10
         5) Current and Historical Financial Conditions ........ 14

III.  SUMMARY OF THE PLAN OF REORGANIZATION ............... 14
      A. What Creditors and Interest Holders Will Receive
         Under the Proposed Plan ............................... 14
      B. Unclassified Claims .................................... 14
         1) Administrative Expenses ............................. 15
            A. Court Approval of Fees Required ................. 15
         2) Priority Tax Claims ................................. 16
      C. Classified Claims and Interests ....................... 17
         1) Classes of Secured Claims .......................... 17
         2) Classes of Priority of Unsecured Claims ............ 34
         3) Class of General Unsecured Claims .................. 35
         4) Class(es) of Interest Holders ...................... 35
      D. Means of Effectuating the Plan ........................ 37
         1) Funding for the Plan ................................ 37
         2) Post-Confirmation Management ........................ 37
         3) Disbursing Agent .................................... 37
      E. Risk Factors .......................................... 37

///

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

F. Other Provisions of the Plan ............................................. 37
   1) Executory Contracts and Unexpired Leases ................... 37
   2) Governmental Regulation ............................................. 37
G. Tax Consequences of Plan ............................................. 37
H. Objections to Claims ....................................................... 38

IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES .... 39
  A. Who May Vote of Object ............................................... 39
    1) Who May Object to Confirmation of the Plan ................. 39
     a. What is an Allowed Claim/Interest ............................ 39
     b. What is an Impaired Claim/Interest ........................... 39
     c. Who is Not Entitled to Vote ..................................... 40
     d. Who can Vote in More than One Class ..................... 40
     e. Votes Necessary to Confirm the Plan ....................... 40
     f. Votes Necessary for a Class to Accept the Plan .......... 41
     g. Treatment of Nonaccepting Classes ......................... 41
     h. Request for Confirmation Despite Nonacceptance by
       Impaired Class(es) ............................................... 41
  B. Liquidation Analysis ..................................................... 41
  C. Feasibility .................................................................. 42

V.   EFFECT OF CONFIRMATION OF PLAN ........................... 43
  A..1 Discharge ............................................................... 43
  A.2 Permanent Satisfaction and Injunction .......................... 44
  A.3 Exculpation ............................................................. 44
  B. Revesting of Property in the Debtor ................................ 45
  C. Modification of the Plan ................................................ 45
  D. Post-Confirmation Status Report .................................... 45
  E. Quarterly Fees ........................................................... 45
  F. Post-Confirmation Conversion/Dismissal ......................... 46
  G. Final Decree .............................................................. 46

///

///

///

///

///

Pagier and Miller
525 N Cabrillo
Park Drive
Suite 304
Santa Ana CA
92701
(714) 541-6072

Disclosure Statement

EXHIBIT A -- LIST OF ALL ASSETS ……………………………………    37
EXHIBIT B – FINANCIAL STATEMENTS …………………………………    37
EXHIBIT C – UNEXPIRED LEASES TO BE ASSUMED ………………    37
EXHIBIT D – EXECUTORY CONTRACTS TO BE ASSUMED ………    37
EXHIBIT E – LIQUIDATION ANALYSIS …………………………………    37
EXHIBIT F -- LIST OF ADMINISTRATIVE EXPENSE CLAIMS ………    38
EXHIBIT G – LIST OF PRIORITY UNSECURED CLAIMS ……………    39
EXHIBIT H – LIST OF GENERAL UNSECURED CLAIMS ……………    40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

I.

## INTRODUCTION

CARL H REINHART ("REINHART") is the Debtor and Debtor in Possession in this Chapter 11 bankruptcy case. On July 7, 2009, REINHART commenced this bankruptcy case by filing a Chapter 11 Petition under the United States Bankruptcy Code ("Code") 11 U.S.C. §101 et seq., Chapter 11 allows the debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. REINHART is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a reorganization plan. REINHART seeks to accomplish payments under the Plan from the sale of several assets, future cash revenues, new financing, and possibly development of the largest asset of this Bankruptcy Estate, i.e. real property located at 14311 Ladd Canyon, Silverado CA ("LADD"), a 92-acre undivided parcel on which a large home is currently under construction but nearly complete. The Effective Date of the proposed plan will be 30 calendar days after the entry of an Order confirming the Plan.

### A.    **Purpose of this Document**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

### **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

Disclosure Statement

Papier and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

1)    **WHO CAN VOTE OR OBJECT.**

2)    **WHAT THE TREATMENT OF YOU CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), and HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION.**

3)    **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY.**

4)    **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN.**

5)    **WHAT IS THE EFFECT OF CONFIRMATION.**

6)    **WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

B.    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

Papier and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1)    Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____ 2010 at _____ in Courtroom 5B of the United States Bankruptcy Court, Santa Ana Division, located at 411 W. 4th St., Santa Ana, CA 92701.

**2)    Deadline for Voting for or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to R. Gibson Pagter, Jr., Pagter and Miller, 525 N. Cabrillo Park Dr., Ste 104, Santa Ana, CA 92701.

Your ballot must be received by _____ or it will not be counted.

**3)    Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon counsel for REINHART, at the address listed on the first page of this document and the Office of the U.S. Trustee, 411 W. 4th St., Ste 9041, Santa Ana, CA 92701 by _____.

**4)    Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact R. Gibson Pagter, Jr., Pagter and Miller, 525 N. Cabrillo Park Dr., Ste 104, Santa Ana, CA 92701; telephone 714-541-6072; fax 714-541-6897; e-mail gibson@pagterandmiller.com.

Disclosure Statement

C.    **Disclaimer**

The financial data relied upon in formulating the Plan is based on the value of the Real Property.  The information contained in this Disclosure Statement is provide by REINHART, who represents that everything stated in the Disclosure Statement is true and correct to his best knowledge.  The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

II.

BACKGROUND

A.    **Description and History of the Debtor's Business**

REINHART is a single man who is a commercial real estate broker and investor in and developer of real estate. He is the owner of Peninsula Investment Real Estate Brokerage ("Peninsula"). REINHART, and now his bankruptcy estate, own(s) several pieces of real property, including raw land, residential homes, and mixed-use commercial properties, but its single largest asset is LADD.

B.    **Principals/Affiliates of Debtor's Business**

REINHART is the sole principal of his business.

C.    **Management of the Debtor Before and After the Bankruptcy**

Prior to filing the bankruptcy REINHART managed his own financial affairs, and has done so since this bankruptcy case was filed.

D.    **Events Leading to Chapter 11 Filing**

A foreclosure sale of LADD set by Commercial Bank of California ("CBC") for July 7, 2009 led to the filing of this bankruptcy case.  None of REINHART's other real estate properties were at even the notice of default stage, and REINHART was not a party to any

Payne and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6972

Disclosure Statement

-8-

lawsuits. Although the construction of the home on LADD was mostly complete pre-bankruptcy REINHART could not obtain financing to take out CBC or to complete construction.

E.    **Significant Events During the Bankruptcy**

   1)    **Bankruptcy Proceedings**

REINHART employed Pagter and Miller as general counsel for Debtor and the Court approved this employment on September 4, 2009. On October 8, 2009 CBC filed a Motion for Relief from Stay seeking to foreclose on one of its 2 deeds of trust on LADD, which REINHART opposed. CBC withdrew this Motion prior to any hearing on it. On October 23, 2009 First Franklin, a creditor secured by a deed of trust upon real property located at 28106-28162 Silverado Canyon Road, Silverado CA, filed a Motion for Relief from Stay seeking to foreclose on its deed of trust, which REINHART opposed, and which the parties resolved by a stipulated Order in February 2010, whereby REINHART pays this creditor net cash from operations on that property (where REINHART also lives). On January 10, 2010 CBC filed another Motion for Relief From Stay, which REINHART opposed, and which CBC then withdrew prior to any hearing.

On March 10, 2010, the Court set a claims bar date that will be 60 days after service of a form of Notice thereof. REINHART predicts that Notice will be served March 23, 2010, with a claims filing bar date of May 24, 2010.    This Disclosure Statement and Plan are to be filed March 22, 1010.

No adversary proceedings have been filed and no contested matters are pending as of March 22, 2010. The deadline for any creditor to contest the dischargeability of any debt passed on October 13, 2009, with no complaint therefor being filed.

   2)    **Other Legal Proceedings**

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-9-

Disclosure Statement

None.

**3)     Actual and Projected Recovery of Preferential or Fraudulent Transfers**

REINHART has identified no pre-petition preferential or fraudulent transfers and has not

sought the recovery of any such alleged transfers. Since REINHART believes he was solvent

at all relevant times before he filed this bankruptcy case, he does not anticipate he will be filing

any preference or fraudulent transfer actions in this case.

**4)     Procedures Implemented to Resolve Financial Problems**

Property No.1--19312 Fisher Lane, Santa Ana, CA (APN 393-083-15):

REINHART has repaired and improved the home located at 19312 Fisher Lane, Santa Ana CA

("FISHER"), where REINHART resided on the Petition Date, in which REINHART/this estate

have a 51% interest. He expects to market it for sale at $1,200,000 in or before April 2010

through Peninsula, on a no fee basis but for a potential 3% commission to a buyer's-broker, if

any. REINHART expects the Estate will net $100,000 or more from a sale of Fisher, and incur

no taxable gain for income tax purposes.

Property No. 2--14311 Ladd Canyon Road, Silverado, CA (APN 105-051-11)

REINHART has sought, and continues to seek, to complete the construction of the home on

LADD. REINHART has contacted over 15 prospective lenders, including CBC, and intends to

pursue over 12 more, for approximately $1,200,000 in new post-petition financing to do so, and

to be able to pay down some of CBC's secured claims. To date, one such lender has agreed,

tentatively, to make such a loan on a superpriority basis, and REINHART has obtained a

contractor's estimate of the cost to complete the home. The proceeds of the new post-petition

financing are expected to be sufficient to complete the construction of the home. Since filing

this case REINHART has spent over $100,000 on completing the home and working on the

Disclosure Statement

Papke and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

development of LADD, and intends to pursue the filing of a tentative tract map with the County

of Orange to divide LADD into a 5 acre parcel with the home on it and an 87 acre parcel (which

itself later may be further subdivided into smaller parcels). Completion of such parcelization will

afford additional flexibility in the sale of the property and expand the pool of qualified buyers.

REINHART estimates the completed home alone, on 5 acres, should be valued at $4,500,000

and the home, on the full 92 acres, should be valued at $7,000,000. The sale of either of the

above offerings at the above values will pay off all lenders secured on LADD, including post-

petition lenders, in full, and even at the lower sales price from the sale of the home on 5 acres,

provide approximately $500,000-700,000 to the Estate for debt reduction as specified in the

Plan, with minimal taxable gain to the Estate .

Property No. 3—Commercial Land, Silverado Canyon Road, Silverado, CA (APN 876-032-05)

REINHART proposes to retain this vacant parcel, which is a portion of Silverado Center, for

future development, as the present sale value is likely to increase significantly in future years.

This property is encumbered by loans in favor of CCRC Farms, LLC, The Koll Trust, and Bob

D. Heinrich, although these loans are expected to be paid in full from the sale of Property No. 4

and Property No. 5 as specified below.

Property No. 4—Multi-Tenant Commercial Building, 28192-28202 Silverado Canyon Road,

Silverado, CA (APN 876-032-04)

REINHART will market and sell this parcel of commercial property, which includes three

retail suites (currently rented to two tenants) totaling 2,100 rentable square feet. This parcel is

a portion of Silverado Center, is valued at $700,000, and is encumbered by cross-

collateralized deeds of trust in favor of CCRC Farms, LLC ($570,000), The Koll Trust

($1,000,000) and Bob D. Heinrich ($350,000), respectively.   The sale of this property is

expected to pay off the CCRC Farms, LLC loan in full and provide for a paydown of

Pagter and Miller
325 N Cabrillo
Park Drive
Suite 104
Santa Ana. CA
92701
(714) 541-6072

Disclosure Statement

approximately $100,000 or more on The Koll Trust loan.  There is a current balance of approximately $27,000 in the Estate's cash collateral account for Properties 3, 4, 5 and 6 which, collectively, constitute Silverado Center. This account likely will be reduced after payment of post-petition real estate taxes on Properties 3, 4, 5, and 6.  Upon confirmation REINHART will release all remaining funds in the cash collateral account for this property to CCRC Farms, LLC. This property is expected to generate approximately $3,600 per month in gross rental income until it is sold, to be deposited into the Estate's cash collateral account, with the release of all net funds from this account, after payment of operational expenses but not debt service, to CCRC Farms, LLC on a monthly basis until this property is sold.

Property No. 5—Single-Tenant Restaurant Building, 28222 Silverado Canyon Road, Silverado, CA (APN 876-032-03)

REINHART will market and sell this parcel of commercial property, which is improved with a vacant restaurant building with approximately 3,000 interior rentable square feet plus patio seating area, at a price of $900,000.  This parcel is a portion of Silverado Center and encumbered by the same cross-collateralized deeds of trust which encumber Property No. 4 above.  The sale of either Property No. 4 or Property No. 5, whichever occurs first, is expected to pay off in full the loan to CCRC Farms, LLC, with any remaining proceeds, plus all proceeds from the sale of the remaining property, expected to pay off The Koll Trust loan in full.

Property No. 6—Commercial Land, Silverado Canyon Road, Silverado, CA (APN 876-032-02)

REINHART will retain this vacant parcel, which is a portion of Silverado Center, for future development, as the present sale value in likely to increase significantly in future years. This property is encumbered by the same cross-collateralized deeds of trust which encumber

Disclosure Statement

Payter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Property No. 4 above, although these loans are expected to be paid in full from the sale of Property No. 4 or Property No. 5 as specified above, or with respect to Bob D. Heinrich, as further specified below.

Property No. 7--28106-28192 Silverado Canyon Road, Silverado, CA (APN 876-034-04, 05)

REINHART will continue to occupy the residence located at 28106 Silverado Canyon Road, Silverado and to operate Peninsula from an adjacent commercial building at 28162 Silverado Canyon Road, Silverado. REINHART's agreed order with the primary secured lender on this property, First Franklin Financial Corporation, provided for a release to that lender of most of the then-existing balance in the estate's cash collateral account for this property, as well as for REINHART to continue to place all rental income received from this property into the existing cash collateral account for this property and to be released to the above lender monthly. The Koll Trust has agreed to suspend the requirement for payments on its loan on this property until a future date to be determined. In addition, after payment of all creditors provided for under the Plan REINHART intends to further develop the approximately 40,000 square feet of excess commercial land which is a portion of this property.

Property No. 8—Commercial Land, Silverado Canyon Road, Silverado, CA (APN 876-033-03):

REINHART will rent this property for commercial storage, with all income received from such rentals to be placed in the existing cash collateral account for this property. He will release the net, post-operational proceeds of the cash collateral account to the lender secured on this property, Main Street-Santa Ana LLC, on a monthly basis.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

### 5) Current and Historical Financial Conditions

Prior to the Petition Date, the commercial credit lending market was contracting. REINHART believes that even if his proposed new private post-petition lender declines to fund a loan, he nevertheless will be able to borrow from a commercial or other private lender to complete LADD, and that the real estate sales market for homes is improving. The Debtor filed schedules in this case that provide substantial financial information regarding his assets and debts as of the Petition Date. These are available at the Clerk's Office. In addition to those documents Debtor has prepared monthly operating reports required by the Office of the US Trustee ("OUST") in its office at Suite 9041 of the Bankruptcy Court, and those are available for inspection at their offices and, as to some months, from the Clerk's Office.

From his OUST reports Debtor has prepared an unaudited balance sheet as of February 28, 2010, and an Income Statement and an accrual basis Profit and Loss Statement from the Petition Date through February 28, 2010. They are attached hereto as Exhibits A and B. Debtor does not warrant that this financial information is without any inaccuracy, but avers he has made reasonable efforts to present it fairly and accurately.

III

## SUMMARY OF THE PLAN OF REORGANIZATION

### A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

### B.    Unclassified Claims

Disclosure Statement

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, REINHART has <u>not</u> placed the following claims in a class.

### 1)    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following describes <u>all</u> of the Debtor's §507(a)(1) administrative claims and their treatment under the Plan.  By order entered May 28, 2009 the employment of Pagter and Miller as general counsel to the Debtor was approved. As of February 28, 2010 Pagter and Miller has incurred approximately $30,000 in fees and costs for which it has been paid after properly noticed professional fee statements. Pagter and Miller estimates it will incur an additional $10,000-20,000 through Plan confirmation for an estimated total of unpaid fees and costs due of approximately $5,000-15,000.  There no other known administrative expenses.

### A.    Court Approval of Fees Required:

The Court must rule on all fees listed above before the fees will be owed.  For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question, in this case Pagter and Miller, must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

As indicated above, REINHART will be required to pay no less than an additional

$5,000-15,000 to Pagter and  Miller on the Effective Date unless Pagter and Miller agrees to

be paid later (which it will do), or the Court has not yet ruled on the claim.  As indicated

elsewhere in this Disclosure Statement, Debtor expects to have no less than $25,000 cash on

hand on the Effective Date of the Plan.  The source of the funds to pay such claims will be the

net proceeds of sale of real properties or operations of same, post-petition loan proceeds, or

REINHART's own personal services income from Peninsula.

### 2)    Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes

described by Code Section 507(a)(8).  The Code requires that each holder of such a 507(a)(8)

priority tax claim receive the present value of such claim in deferred cash payments, over a

period not exceeding six years from the date of the assessment of such tax, unless it otherwise

agrees.

The following details all of the Debtor's Section 507(a)(8) priority tax claims and their

treatment under the Plan.

a.        Internal Revenue Service: 2007 income taxes and interest thereon to the Petition Date

of approximately $33,000. REINHART will pay this sum, and any related penalties, with

accrued interest thereon at the IRS' statutory rate, in full at $100/month and from the first

available net sales proceeds of the above real properties, but no later than July 7, 2014.

b.        Franchise Tax Board:  2007 income taxes and interest thereon to the Petition Date of

approximately $25,000. REINHART will pay this sum, and any related penalties,with accrued

interest thereon at the Board's statutory rate, in full from the first available net sales proceeds

of the above real properties, but no later than July 7, 2014.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

c.      Orange County Tax Collector: 2009 business taxes of $312. REINHART will pay this

sum, and any related penalties, with accrued interest thereon at the Collector's statutory rate,

in full at the rate of $50/month from the first available net sales proceeds of the above real

properties, but no later than July 7, 2014.

## C.      Classified Claims and Interests

### 1)      Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The following

lists all classes containing REINHART's secured pre-petition claims and their treatment under

the Plan.

Class 1: Orange County Tax Collector ("OCTC") Claim —secured on various real properties

Classification: Class 1 consists of the OCTC Claim—Secured on Properties 1-8 defined

hereinabove, for pre-petition and post-petition real estate taxes, estimated at $75,000. The

OCTC Claim as to FISHER was paid by Wells Fargo as an advance, and the post-petition

taxes as to 28106-28162 Silverado Canyon Road have been paid by the Debtor through March

22, 2010.

Treatment: Class 1 is impaired under the Plan. Except to the extent that the OCTC agrees to

different treatment, in full satisfaction of Class 1 Claim REINHART shall pay it as follows:

a.      Principal Amount: The OCTC Principal Amount shall be the base taxes assessed by the OCTC as to Properties 1-8.

b.      Interest/Penalties:  Pre-petition and postpetition interest/penalties that have/has accrued or will accrue on the above Principal shall be calculated at the OCTC's statutory rates, or such other rates as shall be determined by the Court or as Debtor and OCTC may agree.

c.      Payments/Maturity Date: Unless otherwise agreed by Debtor and OCTC, or as determined by the Court, the sums due to Class 1 shall be paid as follows:  as to FISHER (aka Property 1), a single payment shall be paid to OCTC from close of escrow for the sale of same, but no later than September 30, 2012; (as to LADD

-17-

Payne and Miller
515 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

(aka Property 2), a single payment shall be paid to OCTC from any new loan placed upon LADD after March 22, 2010, or from a sale of LADD, or any parcelized portion thereof, but in no event shall this date be later than September 30, 2012; as to APN 876-032-05 (aka Property 3) a single payment shall be paid to OCTC from a sale of LADD, or any parcelized portion thereof, but in no event shall this date be later than September 30, 2012; as to 28192-28202 Silverado Canyon Road, Silverado CA/APN 876-032-04 (aka Property 4), a single payment shall be paid to OCTC from a sale of it, but in no event shall this date be later than September 30, 2012; as to 28222 Silverado Canyon Road, Silverado CA/APN 876-032-03 (aka Property 5), a single payment shall be paid to OCTC from a sale of it, but in no event shall this date be later than September 30, 2012; as to APN 876-032-02 (aka Property 6), a single payment shall be paid to OCTC from a sale of LADD, or any parcelized portion thereof, but in no event shall this date be later than September 30, 2012; as to 28106-28192 Silverado Canyon Road, Silverado CA/APN 876-032-04,-05 (aka Property 7), a single payment shall be paid to OCTC from a sale of LADD, or any parcelized portion thereof, but in no event shall this date be later than September 30, 2012; as to APN 876-033-03, a single payment shall be paid to OCTC from a sale of LADD, or any parcelized portion thereof, but in no event shall this date be later than September 30, 2012.

d.   Principal Reduction Payments: Debtor may make a principal reduction payment on or payment in full of the OCTC Claim 1 at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

e.   Retention of Collateral: The validity and priority of the OCTC Claim 1 shall remain in full force and effect following the Effective Date.

Class 2: Commercial Bank of California ("CBC") Claim—Note Secured by 1st Position Deed of Trust on LADD

Classification: Class 2 consists of the CBC Claim—Note Secured by 1st Position Deed of Trust on LADD, defined to be that certain Promissory Note dated May 1, 2008 ("CBC 2008 $1.6MM Note") in the principal amount of $1,600,000 executed by Debtor in favor of CBC, a Note which extended an earlier Promissory Note from December 2005 and is secured by a Construction Deed of Trust dated December 1, 2005 and recorded in the Office of the Orange County Recorder on December 8, 2005 ("CBC $1.6MM TD").

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-18-

Disclosure Statement

Treatment: Class 2 is impaired under the Plan. Except to the extent that CBC agrees to different treatment, in full satisfaction of Class 2 Claim the CBC 2008 $1.6 MM Note and the CBC $1.6 MM TD shall be modified as follows:

    f.    Principal Amount: The CBC 2008 $1.6 MM Note shall have a principal amount of $1,600,000.

    g.    Interest:  The pre-petition interest that accrued on the above Principal shall be calculated at the non-default rate set in the CBC 2008 $1.6 MM Note, that is Prime + 1.5% with a floor of 7% simple annual interest, or such other interest rate as shall be determined by the Court or as Debtor and CBC may agree, and any accelerated interest rate shall be disallowed. The post-petition interest rate interest that has accrued, and will accrue on the above Principal until it shall be paid in full as provided in this Plan shall be calculated at the non-default rate set in the CBC 2008 $1.6 MM Note, that is Prime + 1.5% with a floor of 7% simple annual interest, or such other interest rate as shall be determined by the Court or as Debtor and CBC may agree, and any accelerated interest rate shall be disallowed.

    h.    Attorneys' Fees: To the extent such fees and related costs are authorized under the CBC 2008 $1.6 MM Note, they shall be paid when the Principal is paid.

    i.    Payments/Maturity Date: Unless otherwise agreed by Debtor and CBC, or as determined by the Court, a single payment of Principal, Interest, and Attorneys' Fees shall be paid to CBC from the sale of LADD, or any parcelized portion thereof, but in no event shall this date be later than September 30, 2012.

    j.    Principal Reduction Payments: Debtor may make a principal reduction payment on or payment in full of the CBC 2008 $1.6 MM Note, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

    k.    Retention of Collateral: Subject to any superpriority secured loan in the principal sum of up to $1.2 MM that Debtor may obtain against LADD in a position senior to the CBC 2008 $1.6 MM TD prior to or as a part of confirmation of the Plan, the validity and priority of the CBC 2008 $1.6 MM TD shall remain in full force and effect following the Effective Date.

Class 3: California Commercial Bank ("CBC") Claim—Note Secured by 2nd Position Deed of Trust on LADD

Classification: Class 3 consists of the CBC Claim—Note Secured by 2nd Position Deed of Trust on LADD, defined to be that certain Promissory Note dated May 1, 2008 ("CBC 2008 $.4 MM Note") in the principal amount of $400,000 executed by Debtor in favor of CBC, a Note which refinanced an earlier Promissory Note from June 2007 and is secured by a Construction

Payne and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

Deed of Trust dated June 4, 2007 and recorded in the Office of the Orange County Recorder on June 11, 2007 ("CBC $.4 MM TD").

Treatment: Class 3 is impaired under the Plan. Except to the extent that CBC agrees to different treatment, in full satisfaction of Class 3 Claim the CBC 2008 $.4 MM Note  and the CBC $.4 MM TD shall be modified as follows:

l.  Principal Amount: The CBC 2008 $.4 MM Note shall have a principal amount of $400,000.

m.  Interest:  The pre-petition interest that accrued on the above Principal shall be calculated at the non-default rate set in the CBC 2007 $.4 MM Note, that is Prime + 1.5% with a floor of 7% simple annual interest, or such other interest rate as shall be determined by the Court or as Debtor and CBC may agree, and any accelerated interest rate shall be disallowed. The post-petition interest rate interest that has accrued, and will accrue on the above Principal until it shall be paid in full as provided in this Plan shall be calculated at the non-default rate set in the CBC 2007 $.4 MM Note, that is Prime + 1.5% with a floor of 7% simple annual interest, or such other interest rate as shall be determined by the Court or as Debtor and CBC may agree, and any accelerated interest rate shall be disallowed.

n.  Attorneys' Fees: To the extent such fees and related costs are authorized under the CBC 2007 $.4 MM Note, they shall be paid when the Principal is paid.

o.  Payments/Maturity Date: Unless otherwise agreed by Debtor and CBC, or as determined by the Court, a single payment of Principal, Interest, and Attorneys' Fees shall be paid to CBC from the sale of LADD, or any parcelized portion thereof, but in no event shall this date be later than September 30, 2012.

p.  Principal Reduction Payments: Debtor may make a principal reduction payment on or payment in full of the CBC 2007 $.4 MM Note, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

q.  Retention of Collateral: Subject to any superpriority secured loan in the principal sum of up to $1.2 MM that Debtor may obtain against LADD in a position senior to the CBC $.4 MM TD prior to or as a part of confirmation of the Plan, the validity and priority of the CBC $.4 MM TD shall remain in full force and effect following the Effective Date.

Class 4: Wells Fargo Bank ("Wells") Claim—Note Secured by 1st Position Deed of Trust on FISHER

Disclosure Statement

Papler and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Classification: Class 4 consists of the Wells Claim—Note Secured by 1st Position Deed of

Trust on FISHER, defined to be that certain Promissory Note dated March 21, 1997 ("WELLS

Note") in the principal amount of $380,000 executed by Debtor in favor of Wells' predecessor

in interest, a Note secured by a Deed of Trust dated March 21, 1997 and recorded in the Office

of the Orange County Recorder on April 1, 1997 ("WELLS TD").

Treatment: Class 4 is impaired under the Plan. Except to the extent that WELLS agrees to

different treatment, in full satisfaction of the Class 4 Claim the WELLS NOTE and the WELLS

TD shall be modified as follows:

    r.    **Principal Amount:** The WELLS Note shall have a principal amount of $302,675.18.

    s.    **Interest:** The pre-petition and post-petition interest that will accrue and has accrued on the above Principal shall be calculated at the non-default rate set in the WELLS Note, that is currently 3.125% simple annual interest, or such other interest rate as shall be determined by the Court or as Debtor and WELLS may agree, and any accelerated interest rate shall be disallowed.

    t.    **Attorneys' Fees:** To the extent such fees and related costs are authorized under the WELLS, they shall be paid when the Principal is paid.

    u.    **Payments/Maturity Date:** Unless otherwise agreed by Debtor and WELLS, or as determined by the Court, a single payment of Principal, Interest, and Attorneys' Fees shall be paid to WELLS from the sale of FISHER, but in no event shall this date be later than September 30, 2012.

    v.    **Principal Reduction Payments:** Debtor may make a principal reduction payment on or payment in full of the WELLS Note, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

    w.    **Retention of Collateral:** The validity and priority of the WELLS TD shall remain in full force and effect following the Effective Date.

**Class 5:** CCRC Farms LLC ("CCRC") Claim—Note Secured by 1st Position Deed of Property

3, 4, 5, and 6

Classification: Class 5 consists of the CCRC Farms, LLC Claim—Note Secured by 1st

Position Deed of Trust on Property 3, 4, 5, and 6, defined to be a Promissory Note executed by

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-21-

Disclosure Statement

Debtor in favor of CCRC ("CCRC Note"), a Note secured by a Deed of Trust and recorded in the Office of the Orange County Recorder ("CCRC TD").

Treatment: Class 5 is impaired under the Plan. Except to the extent that CCRC agrees to different treatment, in full satisfaction of the Class 5 Claim the CCRC Note and the CCRC TD shall be modified as follows:

x.  Principal Amount: The CCRC Note shall have a principal amount of $570,000.

y.  Interest: The pre-petition and post-petition interest that will accrue and has accrued on the above Principal shall be calculated at the non-default rate set in the CCRC Note, or such other interest rate as shall be determined by the Court or as Debtor and CCRC may agree, and any accelerated interest rate shall be disallowed.

z.  Attorneys' Fees: To the extent such fees and related costs are authorized under the CCRC Note, they shall be paid when the Principal is paid.

aa.  Payments/Maturity Date: Unless otherwise agreed by Debtor and CCRC, or as determined by the Court, a single payment of Principal, Interest, and Attorneys' Fees shall be paid to CCRC from the sale of Property 4 or Property 5, whichever first occurs, but in no event shall this date be later than September 30, 2012. In addition, on the Effective Date, any cash collateral remaining in the Debtor in Possession account for Properties 3, 4, 5, and 6 may be used for any purpose required under the Plan, and after the Effective Date, REINHART shall pay all post-operational rental income from Properties 3, 4, 5, and 6 to CCRC until its Claim is paid in full.

bb.  Principal Reduction Payments: Debtor may make a principal reduction payment on or payment in full of the CCRC Note, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

cc.  Retention of Collateral: The validity and priority of the CCRC TD shall remain in full force and effect following the Effective Date.

Class 6: The Koll Trust ("Koll") Claim—Note Secured by 2nd Position Deed of Property 3, 4, 5, and 6

Classification: Class 6 consists of the KOLL Claim—Note Secured by 2nd Position Deed of Trust on Property 3, 4, 5, 6, and 7, defined to be a Promissory Note executed by Debtor in

-22-

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

favor of KOLL ("KOLL Note"), a Note secured by one or more Deeds of Trust and recorded in the Office of the Orange County Recorder ("CCRC TD").

Treatment: Class 6 is impaired under the Plan. Except to the extent that KOLL agrees to different treatment, in full satisfaction of the Class 6 Claim the KOLL Note and the KOLL TD shall be modified as follows:

dd.  Principal Amount: The KOLL Note shall have a principal amount of $1,000,000.

ee.  Interest:  The pre-petition and post-petition interest that will accrue and has accrued on the above Principal shall be calculated at the non-default rate set in the KOLL Note, or such other interest rate as shall be determined by the Court or as Debtor and KOLL may agree, and any accelerated interest rate shall be disallowed.

ff.  Attorneys' Fees: To the extent such fees and related costs are authorized under the KOLL Note, they shall be paid when the Principal is paid.

gg.  Payments/Maturity Date: Unless otherwise agreed by Debtor and KOLL, or as determined by the Court, payments of Principal, Interest, and Attorneys' Fees shall be paid to KOLL from the sale of Property 4 or Property 5, whichever first occurs, such that KOLL shall release its deed(s) of trust on whichever parcel 4 or 5 sells first in exchange for all net sales proceeds from same (after costs of sale and payment of the senior liens of OCTC and CCRC), but in no event shall this date be later than September 30, 2012. In addition, on the Effective Date, any cash collateral remaining in the Debtor in Possession account for Properties 3, 4, 5, and 6 may be used for any purpose required under the Plan, and after the Effective Date, REINHART shall pay all post-operational rental income from Properties, 3,4,5, and 6 to KOLL, but only after full payment of the CCRC Claim, until its Claim is paid in full.

hh.  Principal Reduction Payments: Debtor may make a principal reduction payment on or payment in full of the KOLL Note, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

ii.  Retention of Collateral: The validity and priority of the KOLL TD shall remain in full force and effect following the Effective Date.

Class 7: Bob Heinrich ("Heinrich") Claim—Note Secured by 3rd Position Deed of Property 3, 4, 5, 6 and 7

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

Classification: Class 7 consists of the HEINRICH Claim—Note Secured by 3rd Position Deed of Trust on Property 3, 4, 5, 6, and 7, defined to be a Promissory Note executed by Debtor in favor of HEINRICH ("CCRC Note"), a Note secured by one or more Deeds of Trust and recorded in the Office of the Orange County Recorder ("HEINRICH TD").

Treatment: Class 7 is impaired under the Plan. Except to the extent that HEINRICH agrees to different treatment, in full satisfaction of the Class 7 Claim the HEINRICH Note and the HEINRICH TD shall be modified as follows:

jj.  Principal Amount: The HEINRICH Note shall have a principal amount of $350,000.

kk.  Interest: The pre-petition and post-petition interest that will accrue and has accrued on the above Principal shall be calculated at the non-default rate set in the HEINRICH Note, or such other interest rate as shall be determined by the Court or as Debtor and HEINRICH may agree, and any accelerated interest rate shall be disallowed.

ll.  Attorneys' Fees: To the extent such fees and related costs are authorized under the HEINRICH Note, they shall be paid when the Principal is paid.

mm.  Payments/Maturity Date: Unless otherwise agreed by Debtor and HEINRICH, or as determined by the Court, payments of Principal, Interest, and Attorneys' Fees shall be paid to HEINRICH from the sale of Property 4 or Property 5, whichever first occurs, such that HEINRICH shall release its deed(s) of trust on whichever parcel 4 or 5 sells first in exchange for all net sales proceeds from same (after costs of sale and payment of the senior liens of OCTC, CCRC, and KOLL). In addition, on the Effective Date, any cash collateral remaining in the Debtor in Possession account for Properties 3, 4, 5, 6, and may be used for any purpose required under the Plan, and after the Effective Date, REINHART shall pay all post-operational rental income from Properties 3, 4,5, 6 and 7 to HEINRICH, but only after full payment of the CCRC and KOLL Claims, until paid in full.

nn.  Principal Reduction Payments: Debtor may make a principal reduction payment on or payment in full of the HEINRICH Note, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

oo.  Retention of Collateral: The validity and priority of the HEINRICH TD shall remain in full force and effect following the Effective Date.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

Class 8: FRANKLIN CREDIT ("FC") Claim—Note Secured by 2nd Position Deed of Trust on
FISHER

Classification: Class 8 consists of the FC Claim—Note Secured by 2nd Position Deed of Trust
on FISHER, defined to be that certain Promissory Note dated August 22, 1997 ("FC Note") in
the principal amount of $70,000 executed by Debtor in favor of FC's predecessor in interest, a
Note secured by a Deed of Trust of even date and recorded in the Office of the Orange County
Recorder on August 27, 1997 ("FC TD").

Treatment: Class 8 is impaired under the Plan. Except to the extent that FC agrees to different
treatment, in full satisfaction of the Class 8 Claim the FC Note and the FC TD shall be modified
as follows:

oo.    Principal Amount: The FC Note shall have a principal amount of $61,312.62.
pp.    Interest: The pre-petition and post-petition interest that will accrue and has
       accrued on the above Principal shall be calculated at the non-default rate set in
       the FC Note, or such other interest rate as shall be determined by the Court or as
       Debtor and FC may agree, and any accelerated interest rate shall be disallowed.
       Attorneys' Fees: To the extent such fees and related costs are authorized under
       the FC NOTE, they shall be paid when the Principal is paid.
qq.    Payments/Maturity Date: Unless otherwise agreed by Debtor and FC, or as
       determined by the Court, a single payment of Principal, Interest, and Attorneys'
       Fees shall be paid to FC from the sale of FISHER, but in no event shall this date
       be later than September 30, 2012.
rr.    Principal Reduction Payments: Debtor may make a principal reduction payment
       on or payment in full of the FC Note, at his option, at any time prior to the
       Maturity Date, without any prepayment payment penalty or fee.
ss.    Retention of Collateral: The validity and priority of the FC TD shall remain in full
       force and effect following the Effective Date.

Class 9: Best Value Roofing ("BVR") Claim—Mechanic's Lien on FISHER

Classification: Class 9 consists of the BVR Claim— Mechanic's Lien on FISHER ("BVR Lien"),
secured on at least Debtor's 51% interest therein, and possibly the entire property.

Pagter and Miller
325 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

Treatment: Class 9 is impaired under the Plan. Except to the extent that BVR agrees to different treatment, in full satisfaction of the Class 9 Claim the BVR Claim and BVR Lien shall be modified as follows:

uu.    Principal Amount: The BVR Claim shall have a principal amount of $11,000.
vv.    Interest:  NO interest shall be paid to BVR on its claim.
ww.    Attorneys' Fees: NO attorneys' fees or costs shall be paid to BCR on its claim.
xx.    Payments/Maturity Date:  Unless otherwise agreed by Debtor and BVR, or as determined by the Court, a single payment of Principal, Interest, and Attorneys' Fees shall be paid to BVR from the sale of FISHER, but in no event shall this date be later than September 30, 2012.
yy.    Retention of Collateral: The validity and priority of the BVR Lien shall remain in full force and effect following the Effective Date.

Class 10: GEORGE AND ELLEN MINICHIELLO ("GEM") Claim—Note Secured by 4th Position Deed of Trust on FISHER

Classification: Class 10 consists of the GEM Claim—Note Secured by 4th Position Deed of Trust on FISHER, defined to be that certain Promissory Note ("GEM Note") in the principal amount of $50,000 executed by Debtor in favor of GEM, a Note secured only on Debtor's 51% interest in FISHER by a Deed of Trust of even date and recorded in the Office of the Orange County Recorder ("GEM TD").

Treatment: Class 10 is impaired under the Plan. Except to the extent that GEM agrees to different treatment, in full satisfaction of the Class 10 Claim the GEM Note and the GEM TD shall be modified as follows:

zz.    Principal Amount: The GEM Note shall have a principal amount of $50,000.
aaa.    Interest:  The pre-petition and post-petition interest that will accrue and has accrued on the above Principal shall be calculated at the non-default rate set in the GEM, or such other interest rate as shall be determined by the Court or as Debtor and GEM may agree, and any accelerated interest rate shall be disallowed.
bbb.    Attorneys' Fees: To the extent such fees and related costs are authorized under the GEM NOTE, they shall be paid when the Principal is paid.

-26-

Fagen and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6602

bbb.  Payments/Maturity Date: Unless otherwise agreed by Debtor and GEM, or as determined by the Court, a single payment of Principal, Interest, and Attorneys' Fees shall be paid to GEM from the sale of FISHER, but in no event shall this date be later than September 30, 2012.

ccc.  Principal Reduction Payments: Debtor may make a principal reduction payment on or payment in full of the GEM Note, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

ddd.  Retention of Collateral: The validity and priority of the GEM TD shall remain in full force and effect following the Effective Date.

Class 11: GEORGE HELLAND ("HELLAND" ) Claim—Note Secured by 7th Position Deed of Trust on FISHER

Classification: Class 11 consists of the HELLAND Claim—Note Secured by 7th Position Deed of Trust on FISHER, defined to be that certain Promissory Note ("HELLAND Note") in the principal amount of $35,000 executed by Debtor in favor of HELLAND, a Note secured by a Deed of Trust on Debtor's 51% interest in FISHER of even date and recorded in the Office of the Orange County Recorder ("HELLAND TD").

Treatment: Class 11 is impaired under the Plan. Except to the extent that HELLAND agrees to different treatment, in full satisfaction of the Class 11 Claim the HELLAND Note and the HELLAND TD shall be modified as follows:

eee.  Principal Amount: The HELLAND Note shall have a principal amount of $35,000.

fff.  Interest: The pre-petition and post-petition interest that will accrue and has accrued on the above Principal shall be calculated at the non-default rate set in the HELLAND NOTE, or such other interest rate as shall be determined by the Court or as Debtor and HELLAND may agree, and any accelerated interest rate shall be disallowed.

ggg.  Attorneys' Fees: To the extent such fees and related costs are authorized under the HELLAND NOTE, they shall be paid when the Principal is paid.

hhh.  Payments/Maturity Date: Unless otherwise agreed by Debtor and HELLAND, or as determined by the Court, a single payment of Principal, Interest, and Attorneys' Fees shall be paid to HELLAND from the sale of FISHER, but in no event shall this date be later than September 30, 2012.

-27-

Disclosure Statement

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

iii.    <u>Principal Reduction Payments</u>: Debtor may make a principal reduction payment on or payment in full of the HELLAND Note, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

jjj.    <u>Retention of Collateral</u>: The validity and priority of the HELLAND TD shall remain in full force and effect following the Effective Date.

Classification: Class 12.1 consists of the RH Meine Trust ("RHMT") Claim—Note Secured by 3rd Position Deeds of Trust on FISHER, defined to be one or more Promissory Notes ("RHMT $100K Note") in the principal amount of $100,000 executed by Debtor in favor of RHMT, a Note secured by a Deed of Trust on 100% of FISHER of even date and recorded in the Office of the Orange County Recorder ("RHMT $100K TD").

Treatment: Class 12.1 is impaired under the Plan. Except to the extent that RHMT agrees to different treatment, in full satisfaction of the Class 12.1 Claim the RHMT $100K NOTE and the RHMT $100K TD shall be modified as follows:

kkk.    <u>Principal Amount:</u> The RHMT $100K Note shall have a principal amount of $100,000.

lll.    <u>Interest:</u> The pre-petition and post-petition interest that will accrue and has accrued on the above Principal shall be calculated at the non-default rate set in the RHMT $100K NOTE, or such other interest rate as shall be determined by the Court or as Debtor and RHMT may agree, and any accelerated interest rate shall be disallowed.

mmm. <u>Attorneys' Fees</u>: To the extent such fees and related costs are authorized under the RHMT $100K NOTE, they shall be paid when the Principal is paid.

nnn.    <u>Payments/Maturity Date</u>: Unless otherwise agreed by Debtor and RHMT, or as determined by the Court, a single payment of Principal, Interest, and Attorneys' Fees shall be paid to RHMT from the sale of FISHER, but in no event shall this date be later than September 30, 2012.

ooo.    <u>Principal Reduction Payments</u>: Debtor may make a principal reduction payment on or payment in full of the RHMT $100K NOTE, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

ppp.    <u>Retention of Collateral</u>: The validity and priority of the RHMT $100K TD shall remain in full force and effect following the Effective Date.

Classification: Class 12.2 consists of the RH Meine Trust ("RHMT") Claim—Note Secured by 5th Position Deed of Trust on FISHER, defined to be a Promissory Note ("RHMT $93K Note")

Payer and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

in the principal amount of $93,000 executed by Debtor in favor of RHMT, a Note secured by a Deed of Trust on Debtor's 51% interest in FISHER of even date and recorded in the Office of the Orange County Recorder ("RHMT $93K TD").

Treatment: Class 12.2 is impaired under the Plan. Except to the extent that RHMT agrees to different treatment, in full satisfaction of the Class 12.2 Claim the RHMT $93K NOTE and the RHMT $93K TD shall be modified as follows:

    qqq.   Principal Amount: The RHMT $93K Note shall have a principal amount of $93,000.

    rrr.   Interest: The pre-petition and post-petition interest that will accrue and has accrued on the above Principal shall be calculated at the non-default rate set in the RHMT $93K NOTE, or such other interest rate as shall be determined by the Court or as Debtor and RHMT may agree, and any accelerated interest rate shall be disallowed.

    sss.   Attorneys' Fees: To the extent such fees and related costs are authorized under the RHMT $93K NOTE, they shall be paid when the Principal is paid.

    ttt.   Payments/Maturity Date: Unless otherwise agreed by Debtor and RHMT, or as determined by the Court, a single payment of Principal, Interest, and Attorneys' Fees shall be paid to RHMT from the sale of FISHER, but in no event shall this date be later than September 30, 2012.

    uuu.   Principal Reduction Payments: Debtor may make a principal reduction payment on or payment in full of the RHMT $93K NOTE, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

    vvv.   Retention of Collateral: The validity and priority of the RHMT $93K TD shall remain in full force and effect following the Effective Date.

Classification: Class 13 consists of the First Franklin Financial Corporation ("FFFC") Claim— Note Secured by 1st Position Deed of Trust on Property 7/28106-28192 Silverado Canyon Road, Silverado, CA, defined to be a Promissory Note ("FFFC Note") in the principal amounts of $480,000 executed by Debtor in favor of FFFC in July 2005, a Note secured by a Deed of Trust of even date and recorded in the Office of the Orange County Recorder ("FFFC TD").

Pagter and Miller
325 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

Treatment: Class 13 is impaired under the Plan. Except to the extent that FFFC agrees to different treatment, in full satisfaction of the Class 13 Claim the FFFC Note and the FFFC TD shall be modified as follows:

xxx.  Principal Amount: The FFFC Note shall have a principal amount of $470,646.89.

yyy.  Interest: The pre-petition and post-petition interest that will accrue and has accrued on the above Principal shall be calculated at the non-default rate set in the FFFC NOTE, or such other interest rate as shall be determined by the Court or as Debtor and FFFC may agree, and any accelerated interest rate shall be disallowed.

zzz.  Attorneys' Fees: To the extent such fees and related costs are authorized under the FFFC NOTE, they shall be paid when the Principal is paid.

aaaa.  Payments/Maturity Date: Unless otherwise agreed by Debtor and FFFC, or as determined by the Court, the FFFC Note shall be amended and restructured to provide for payments, as follows: (i) starting on the 1st calendar day of the first full month after the Effective Date, a monthly payment of $1,500, for 12 months; (2) $2,000/month for the next 12 months; (iii) $2,500/month for the next 12 months; $3,000 for the next 12 months; (iv) $3,500 for the next 72 months; and (vi) a balloon payment on the 120th month after the Effective Date. In addition, on the Effective Date, any cash collateral remaining in the Debtor in Possession account for Property 7 forthwith shall be paid to FFFC, and that account closed.

bbbb.  Principal Reduction Payments: Debtor may make a principal reduction payment on or payment in full of the FFFC Note, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

cccc.  Retention of Collateral: The validity and priority of the FFFC TD shall remain in full force and effect following the Effective Date.

Class 14: Agricredit ("AG") Claim—Note Secured by 1st Position lien on a 428-C Backhoe

Classification: Class 14 consists of the AG Claim—Note Secured by 1st Position Deed of Trust on FISHER, defined to be that certain Refinancing Agreement dated March 2009 ("AG Note") in the principal amount of $11,148.21 executed by Debtor in favor of AG, secured by a UC-1 from April 2006 on a 428-C backhoe ("AG LIEN").

Treatment: Class 14 is impaired under the Plan. Except to the extent that AG agrees to different treatment, in full satisfaction of the Class 4 Claim the AG Note and the AG LIEN shall be modified as follows:

-30-

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

dddd. <u>Principal Amount:</u> The AG Note shall have a principal amount of $11,008.

eeee. <u>Interest:</u> The pre-petition and post-petition interest that will accrue and has accrued on the above Principal shall be calculated at the non-default rate set in the AG Note, or such other interest rate as shall be determined by the Court or as Debtor and AG may agree, and any accelerated interest rate shall be disallowed.

ffff. <u>Attorneys' Fees:</u> To the extent such fees and related costs are authorized under the AG NOTE, they shall be paid when the Principal is paid.

gggg. <u>Payments/Maturity Date:</u> Unless otherwise agreed by Debtor and AG, or as determined by the Court, a single payment of all sums required to cure any default due to AG on the AG NOTE shall be paid to AG from the sale of FISHER, but in no event shall this date be later than September 30, 2012, and thereafter DEBTOR shall pay the AG NOTE according to its terms.

hhhh. <u>Principal Reduction Payments:</u> Debtor may make a principal reduction payment on or payment in full of the AG Note, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

iiii. <u>Retention of Collateral:</u> The validity and priority of the AG LIEN shall remain in full force and effect following the Effective Date.

<u>Class 15:</u> Plumbing Customs, fka West Coast Plumbing and Martin Vellandi ("WCP") Claim—April 2009 Mechanic's Lien on LADD

Classification: Class 15 consists of the WCP Claim regarding disputed work performed at and goods supplied to LADD in 2006-2008. 1997 ("WCP CLAIM"), a claim secured by a mechanic's lien recorded in April 2009 in the Office of the Orange County Recorder on April 1, 1997 ("WCP LIEN").

Treatment: Class 15 is impaired under the Plan. Except to the extent that WCP agrees to different treatment, in full satisfaction of the Class 15 Claim the WCP CLAIM and the WCP LIEN shall be modified as follows:

jjjj. <u>Principal Amount:</u> The WCP CLAIM shall have a principal amount of $13,000, only.

kkkk. <u>Interest:</u> The pre-petition and post-petition interest that will accrue and has accrued on the above Principal shall be calculated at 5% simple annual interest, or such other interest rate as shall be determined by the Court or as Debtor and WCP may agree, and any accelerated interest rate shall be disallowed.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

llll.    Attorneys' Fees: To the extent such fees and related costs are authorized under the WCP CLAIM  or applicable non-bankruptcy law, they shall be paid when the Principal is paid.

mmmm.    Payments/Maturity Date: Unless otherwise agreed by Debtor and WCP, or as determined by the Court, a single payment of Principal, Interest, and Attorneys' Fees shall be paid to WCP from the sale of LADD, but in no event shall this date be later than September 30, 2012.

nnnn.   Principal Reduction Payments: Debtor may make a principal reduction payment on or payment in full of the WCP CLAIM, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

oooo.   Retention of Collateral: WCP LIEN shall remain in full force and effect following the Effective Date.

Class 16: W.B. Contento ("WBC") Claim—Winnebago Lien

Classification: Class 16 consists of the WBC Claim regarding a purchase money loan to buy a 2002 Winnebago ("WBC Note"), secured by a lien on it filed with the DMV ("WBC LIEN").

Treatment: Class 16 is impaired under the Plan. Except to the extent that WBC agrees to different treatment, in full satisfaction of the Class 16 Claim the WBC Note and the WBC LIEN shall be modified as follows:

pppp.   Principal Amount: The WBP Note shall have a principal amount of $32,000.

qqqq.   Interest:  The pre-petition and post-petition interest that will accrue and has accrued on the above Principal shall be calculated at 10% simple annual interest, or such other interest rate as shall be determined by the Court or as Debtor and WBC may agree, and any accelerated interest rate shall be disallowed.

rrrr.    Attorneys' Fees: To the extent such fees and related costs are authorized under the WBC NOTE or applicable non-bankruptcy law, they shall be paid when the Principal is paid.

ssss.   Payments/Maturity Date: Unless otherwise agreed by Debtor and WBC, or as determined by the Court, a single payment of Principal, Interest, and Attorneys' Fees shall be paid to WBC from the sale of LADD, but in no event shall this date be later than September 30, 2012.

tttt.    Principal Reduction Payments: Debtor may make a principal reduction payment on or payment in full of the WBC Note, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

Class 17: Main Street Santa Ana LLC ("MAIN") Claim—Note Secured by 3rd Position Deed of Trust on LADD

Classification: Class 17 consists of the MAIN Claim—Note Secured by 3rd Position Deed of Trust on LADD, defined to be a certain Promissory Note or guarantee ("MAIN Note") in the principal amount of $400,000 executed by Debtor in favor of MAIN, a Note which secured by a Deed of Trust recorded in the Office of the Orange County Recorder ("MAIN TD").

Treatment: Class 17 is impaired under the Plan. Except to the extent that MAIN agrees to different treatment, in full satisfaction of its Class 17 Claim the MAIN Note  and the MAIN TD shall be modified as follows:

uuuu. Principal Amount: The MAIN Note shall have a principal amount of $400,000.

vvvv. Interest:  The pre-petition interest that accrued on the above Principal shall be calculated at the non-default rate set in the MAIN NOTE, or such other interest rate as shall be determined by the Court or as Debtor and MAIN may agree, and any accelerated interest rate shall be disallowed. The post-petition interest rate interest that has accrued, and will accrue on the above Principal until it shall be paid in full as provided in this Plan shall be calculated at the non-default rate set in the MAIN Note, or such other interest rate as shall be determined by the Court or as Debtor and MAIN may agree, and any accelerated interest rate shall be disallowed.

wwww.        Attorneys' Fees: To the extent such fees and related costs are authorized under the MAIN Note, they shall be paid when the Principal is paid.

xxxx. Payments/Maturity Date: Unless otherwise agreed by Debtor and MAIN, or as determined by the Court, a single payment of Principal, Interest, and Attorneys' Fees shall be paid to MAIN from the sale of LADD, or any parcelized portion thereof, but in no event shall this date be later than September 30, 2012.

yyyy. Principal Reduction Payments: Debtor may make a principal reduction payment on or payment in full of the MAIN Note, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

zzzz. Retention of Collateral: Subject to any superpriority secured loan in the principal sum of up to $1.2 MM that Debtor may obtain against LADD in a position senior to the MAIN NOTE prior to or as a part of confirmation of the Plan, the validity and priority of the MAIN TD shall remain in full force and effect following the Effective Date.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

Class 18: Main Street Santa Ana LLC ("MAIN LLC") Claim—Note Secured by 1st Position Deed of Trust on Property 8

Classification: Class 18 consists of the MAIN Claim—Note Secured by 1st Position Deed of Trust on Property 8, defined to be a certain Promissory Note ("MAIN LLC Note") in the principal amount of $37,500 executed by Debtor in favor of MAIN LLC, a Note secured by a Deed of Trust recorded in the Office of the Orange County Recorder ("MAIN LLC TD").

Treatment: Class 18 is impaired under the Plan. Except to the extent that MAIN LLC agrees to different treatment, in full satisfaction of its Class 18 Claim the MAIN LLC Note  and the MAIN LLC TD shall be modified as follows:

zzzz.   Principal Amount: The MAIN LLC NOTE shall have a principal amount of $37,500.

aaaaa.   Interest:  The pre-petition interest that accrued on the above Principal shall be calculated at the non-default rate set in the MAIN LLC NOTE, or such other interest rate as shall be determined by the Court or as Debtor and MAIN LLC may agree, and any accelerated interest rate shall be disallowed. The post-petition interest rate interest that has accrued, and will accrue on the above Principal until it shall be paid in full as provided in this Plan shall be calculated at the non-default rate set in the MAIN LLC NOTE, or such other interest rate as shall be determined by the Court or as Debtor and MAIN LLC may agree, and any accelerated interest rate shall be disallowed.

bbbbb.   Attorneys' Fees: To the extent such fees and related costs are authorized under the MAIN LLC Note, they shall be paid when the Principal is paid.

ccccc. Payments/Maturity Date: Unless otherwise agreed by Debtor and MAIN, or as determined by the Court, a single payment of Principal, Interest, and Attorneys' Fees shall be paid to MAIN LLC from the sale of LADD, or any parcelized portion thereof, but in no event shall this date be later than September 30, 2012.

ddddd.   Principal Reduction Payments: Debtor may make a principal reduction payment on or payment in full of the MAIN LLC Note, at his option, at any time prior to the Maturity Date, without any prepayment payment penalty or fee.

eeeee.   Retention of Collateral: The validity and priority of the MAIN TD shall remain in full force and effect following the Effective Date.

## 2)    Classes of Priority of Unsecured Claims

Disclosure Statement

Rayter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 543-6072

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), (7), (8), (9), and (10) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claimholders may vote to accept deferred cash payments of a value as of the Effective Date, equal to the allowed amount of such claims.

The following lists all classes containing REINHART's 507(a)(3-10) claims:

REINHART has no priority unsecured claims pursuant to 507(a)(3-7 or 9-10), but he does have  the following 507(a)(8) claims:

a.      Internal Revenue Service:  Filed at $57,062, but estimated by REINHART at less. Unless this claim dispute is resolved, and unless the IRS and Debtor otherwise agree or this Court orders differently, REINHART intends to file an objection to same, but will pay 100% of the principal balance of IRS' allowed claim, and all prepetition and postpetition statutory interest thereon at the IRS' normal rate(s),  at the rate of at least $100/month starting 30 days after the Effective Date of the Plan, with any balance due being paid in full no later than July 6, 2014, and shall be paid in full prior to or contemporaneously with the payment of the claims of any allowed  general unsecured creditors.

b      CA Franchise Tax Board:  Filed at $17,972, but estimated by REINHART at less. Unless this claim dispute is resolved, and unless the FTB and Debtor otherwise agree or this Court orders differently, REINHART intends to file an objection to same, but will pay 100% of the principal balance of IRS' allowed claim, and all prepetition and postpetition statutory interest thereon at the FTB's normal rate(s),  at the rate of at least $100/month starting 30 days after the Effective Date of the Plan, with any balance due being paid in full no

Disclosure Statement

later than July 6, 2014, and shall be paid in full prior to or contemporaneously with the payment

of the claims of any allowed general unsecured creditors.

**3)    Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code

Section 507(a). The following chart identifies this Plan's treatment of the class containing <u>all</u> of

REINHART's general unsecured claims.    Attached to this Disclosure Statement is a list of

each unsecured creditor and its allowed claim amount.

| CLASS | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|-------|-------------|----------------|-----------|
| 19 | General Unsecured claims = Approx. 33 claims<br><br>Total amount of claims = approx.<br><br>$400,000 | Y | Pymt Interval – 1 pmt at close of escrow from the first available net sales proceeds of the above real properties, but no later than September 30, 2012.<br>Interest rate 5%<br>Total Payout =approx. $450,000 |

**4)    Class(es) of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the

Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor

are interest holders.  If the Debtor is a partnership, the interest holders include both general

and limited partners.  If the Debtor is an individual, the Debtor is the interest holder. The

following chart identifies the Plan's treatment of the class of interest holders.

| Class | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|-------|-------------|----------------|-----------|
| **20** | Interest holder –<br><br>CARL H Reinhart | N | After all other classes of creditors, administrative claims, and taxes have been paid in full, the class 18 claimholder will retain all properties and receive whatever sums remain |

Papier and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

D.   **Means of Effectuating the Plan**

1)   **Funding for the Plan**

The Plan will be funded by operations, sale and/or refinance of the above-described real properties, as well as REINHART's post-bankruptcy earnings.

2)   **Post-Confirmation Management**

**REINHART** will remain in control of the Debtor and all estate assets.

3)   **Disbursing Agent**

REINHART shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan, other than payments to be made through any escrow in connection with the sale of any real property.   The Disbursing Agent shall serve without bond and shall not be compensated for distribution services rendered. The net proceeds of sale or refinance will be maintained in a segregated interest-bearing account ("Fund").  The Fund will be used for payments required under the Plan.

E.   **Risk Factors**

The proposed Plan has at least he following risks:  REINHART may be unable to complete and sell LADD and a lender secured thereon may foreclose on it. If LADD is foreclosed, this Plan may not be completed. REINHART may be unable to sell FISHER at a price sufficient to pay all debt secured thereon. REINHART may be unable to sell Property 4 and 5 described above.

F.   **Other Provisions of the Plan**

1)   **Executory Contracts and Unexpired Leases**

REINHART is not a party to any executory contracts, but is the lessor to Canyon Market under an unexpired lease. Upon Confirmation of the Plan REINHART will assume that lease. All other unexpired leases are month to month.

2)   **Governmental Regulation**

Debtor is not subject to governmental regulatory commission approval of its rates.

G.   **Tax Consequences of Plan**

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

1   CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY

2   AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS,

3   ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is

4   intended solely for the purpose of alerting readers abut possible tax issues this Plan may

5   present to the Debtor. REINHART CANNOT AND DOES NOT represent that the tax

6   consequences contained below are the only tax consequences of the Plan because the Tax

7   Code embodies many complicated rules which make it difficult to state completely and

8   accurately all the tax implications of any action.

9       The following are the tax consequences which the Plan will have on the Debtor's tax

10  liability: REINHART anticipates that neither the sale of FISHER nor a 5 acre part of LADD with

11  the home on it will trigger any tax consequences to the estate, and the sale of the other real

12  properties will result the same way, or generate sufficient funds to pay all required income

13  taxes thereon, as well as pay all creditors in full.

14  **H    Objections to Claims**

15      REINHART shall have 180 days after confirmation of the Plan to file any objection to

16  any claim that he may have.

17                                     IV.

18                  CONFIRMATION REQUIREMENTS AND PROCEDURES

19      PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN

20  SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

21  CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following

22  discussion is intended solely for the purpose of alerting readers about basic confirmation

23  issues, which they may wish to consider, as well as certain deadlines for filing claims.

24  REINHART CANNOT AND DOES NOT represent that the discussion contained below is a

25  complete summary of the law on this topic.

26      Many requirements must be met before the Court can confirm a Plan. Some of the

27  requirements include that the Plan must be proposed in good faith, acceptance of the Plan,

28  whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7

Papfer and Miller
525 N Calvalin
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

liquidation, and whether the Plan is feasible. These requirements are not the only
requirements for confirmation.

## A.    Who May Vote or Object

### 1)    Who May object to Confirmation of the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or
interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2)
classified in an impaired class.

a)    What is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an allowed claim or interest
to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a
party in interest brings a motion objecting to the claim. When an objection to a claim or
interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless
the Court, after notice and hearing, either overrules the objection or allows the claim or interest
for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE will be
approximately May 25, 2010. A creditor or interest holder may have an allowed claim or
interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if
(1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed,
contingent or unliquidated, and (2) no party in interest has objected to the claim. An interest is
deemed allowed if it is scheduled and no party in interest has objected to the interest.    See
the foregoing pages to determine if your claim or interest has been characterized.

b)    What is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class
that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or
contractual rights of the members of that class. For example, a class comprised of general
unsecured claims is  impaired if the Plan fails to pay the members of that class 100% of what
they are owed.

Pagter and Miller
525 N Cabrallo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-39-

Disclosure Statement

In this case, REINHART believes that all classes of creditors are impaired and that almost all claims will be allowed as filed. As such, every creditor in every class of claims is allowed to vote. Parties who dispute REINHART's characterization of his/her/its/their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that REINHART incorrectly has characterized the class.

c)    Who is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed: (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2) and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HVE A RIGHT TO OBJECT TO CONFIRMATION OF THE PLAN.

d)    Who can Vote in More than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

e)    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section IV.A.8.

f)    Votes Necessary for a Class to Accept the Plan

-40-

Frandzel Robins
525 N Cahuenga
Park Drive
Suite 304
Santa Ana, CA
92701
(714) 541-6073

Disclosure Statement

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

g)      Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown". The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. §1129(b) and applicable case law.

h)      Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The party proposing this Plan, REINHART, asks the Court to confirm this Plan by cramdown on impaired classes, if such classes are determined to exist, and if any of these classes do not vote to accept the Plan.

Please note that the proposed Plan treatment described by this Disclosure Statement cannot be crammed down on the following classes: NONE. AS A RESULT, IF ANY OF THESE CLASSES DO NOT VOTE TO ACCEPT THE PLAN, THE PLAN WILL NOT BE CONFIRMED.

B.    **Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test" which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the

28

Payler and Mallca
935 N Cabrillo
Park Drive
Suite 314
Santa Ana, CA
92701
(714) 541-6072

-41-

Disclosure Statement

1  amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7
2  of the Bankruptcy Code.

3       In a Chapter 7 case, a Debtor's assets are usually sold by a Chapter 7 Trustee.
4  Secured creditors are paid first from the sales proceeds of properties on which the secured
5  creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid
6  from any remaining sales proceeds, according to their rights to priority. Unsecured creditors
7  with the same priority share in proportion to the amount of their allowed claim in relationship to
8  the amount of total allowed unsecured claims. Finally, interest holders receive the balance
9  that remains after all creditors are paid, if any.

10      For the Court to be able to confirm this Plan, the Court must find that all creditors and
11 interest holders who do not accept the Plan will receive at least as much under the Plan as
12 such holders would receive under a Chapter 7 liquidation. REINHART maintains that this
13 requirement is met here for the following reasons: REINHART is proposing a Plan that will pay
14 all at least 105% of their allowed claims. If the case were converted and a Chapter 7 Trustee
15 administered the estate's assets, REINHART estimates that all creditors would receive no
16 better treatment.

17 C.    **Feasibility**

18      Another requirement for confirmation involves the feasibility of the Plan, which means
19 that confirmation of the Plan is not likely to be followed by the liquidation, or the need for
20 further financial reorganization, of the Debtor or any successor to the Debtor under the Plan,
21 unless such liquidation or reorganization is proposed in the Plan. Liquidation or refinance of
22 various real properties is proposed in the Plan.

23      There are at least two important aspects of a feasibility analysis. The first aspect
24 considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan
25 to pay all the claims and expenses which are entitled to be paid on such date. REINHART
26 maintains that this aspect of feasibility is satisfied as illustrated here:

27      Cash Debtor will have on hand by the Effective Date          >$25,000
28      Est. Administrative Claims                                   $5,000-15,000

Pepler and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

Other Plan Payments due on the
    Effective Date                                  None Known

Balance After paying these amounts            >$10,000-20,000

      The sources of the cash Debtor expects to have on hand by the Effective Date are cash on hand in DIP accounts, proceeds of sale/refinance and operations of real properties, and income from Peninsula. The second aspect considers whether REINHART will have enough cash over the life of the Plan to make the required Plan payments, and REINHART anticipates he will, from all of the above sources. Past and/or projected Financial statements will be filed as a supplement to this Disclosure Statement prior to the hearing on approval of same.

      In summary the Plan proposes to pay over 100% to all creditors. As the above valuation indicates, Debtor expects to have sufficient funds to pay all allowed claims, administrative costs and any post-confirmation taxes in full.

      Debtor's proposed Plan is feasible.

V.

EFFECT OF CONFIRMATION OF PLAN

A.1.   **Discharge**

      Notwithstanding any other provision of the Plan or the Bankruptcy Code on the Confirmation Date, the Debtor shall be discharged of all claims, liens, obligations and charges of any kind existing or arising prior to the Effective Date, and the Confirmation Order shall operate as a discharge pursuant to, and to the fully extent provided in and permitted by Section 1141(d) of the Bankruptcy Code, of any and all debts of, claims against, and liens on the Debtor and its assets or property, which debts claims, and liens arose at any time before the entry of the Confirmation Order. The discharge of the Debtor shall be effective on the Effective Date of the Confirmation Order as to each claim, regardless of whether a Proof of

Disclosure Statement

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Claim was filed, whether the Claims is a n Allowed Claim or whether the holder votes to accept the Plan.

### A.2.   Permanent Satisfaction and Injunction

The rights afforded herein, and the treatment of all claims and interests set forth herein, shall be in full exchange for, and in complete satisfaction, discharge and release of, all claims and interests of any kind or nature whatsoever, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising or accruing, whether or not yet due, prior to the Effective Date, including without limitation any claims, or interest on claims, accruing on or after the Debtor's Petition Date, against the Debtor, the Estate, or any assets or property of either of the foregoing.  Except as, and to the extent, expressly provided in the Plan (a) all such claims against the Debtor, the Estate or any assets or property of either of the foregoing, shall be deemed fully and finally satisfied, discharged and released; and (b) all personals  shall be fully and finally barred, enjoined and precluded from asserting against Debtor or any of its respective assets, any such claims or interests, or any other claims or interests based upon any act or omission, transaction, agreement, right, privilege, duty entitlement, obligation or other event or activity of any kind or nature whatsoever that occurred prior to the Effective Date.

### A.3.   Exculpation

Upon the occurrence of the Effective Date, the Debtor and its agents and professionals (including counsel to the Debtor) shall be deemed to have no liability for any act or omission following the Petition Date in connection with relating to, or arising out of, the Debtor, the Bankruptcy Case, the administration of the Plan or the Disclosure Statement, or the property to be distributed under the Plan.  Nothing in this section shall be construed to release or

Disclosure Statement

Payne and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

exculpate any entity from fraud, gross negligence, willful misconduct, malpractice, criminal

conduct, ultra vires acts or to discharge the Debtor prior to the receipt of its discharge pursuant

to the Plan.

**B.    Revesting of Property in the Debtor**

All non-exempt property of the Estate shall revest in Debtor only after all creditors

provided for herein are paid as provided for under the Plan.

**C.    Modification of the Plan**

REINHART may modify the Plan at any time before confirmation.  However, the Court

may require a new disclosure statement and/or revoting on the Plan.

REINHART may also seek to modify the Plan at any time after confirmation only if (1)

the Plan has not been substantially consummated and (2) the Court authorizes the proposed

modifications after notice and a hearing.

**D.    Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, REINHART shall file a

status report with the Court explaining what progress has been made toward consummation of

the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty

largest unsecured creditors, and those parties who have requested special notice.  Further

status reports shall be filed every 120 days and served on the same entities until this case is

closed.

**E.    Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. §1930(a)(6) to date of confirmation shall be

paid to the United States Trustee on or before the Effective Date of the Plan.  Quarterly fees

accruing under 28 U.S.C. §1930(a)(6) after confirmation shall be paid to the United States

-45-

Disclosure Statement

Trustee in accordance with 28 U.S.C. §1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to Chapter 7.

**F.     Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders the case converted to a Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**G.     Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, REINHART, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Date: March 22, 2010

_____
CARL H. REINHART

_____
R. Gibson Pagter, Jr.
Pagter and Miller
Attorneys for CARL H. REINHART

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

## EXHIBIT A - LIST OF ALL ASSETS

See attached list of personal property assets. A lost of real property assets will be filed at a later date.

## EXHIBIT B – FINANCIAL STATEMENTS

See attached unaudited balance sheet and income statement (accrual basis) as of February 28 2010. A set of post-Plan projections will be filed prior to the hearing on the Disclosure Statement

## EXHIBIT C – UNEXPIRED LEASES TO BE ASSUMED

Canyon Market Lease.

## EXHIBIT D – EXECUTORY CONTRACTS TO BE ASSUMED

None.

## EXHIBIT E – LIQUIDATION ANALYSIS

This will be filed prior to the hearing on the Disclosure Statement

## EXHIBIT F – LIST OF ADMINISTRATIVE EXPENSE CLAIMS

Pagter and Miller, general counsel to Debtor. Fees and costs allowed to Date: $0. Paid to Date: Pre-petition retainer received $35,500; Applied to pre-petition services $5,925.80. Paid after properly noticed Professional Fee Statements as of March 22, 2010 approx. $25,000. Estimated fees and costs incurred and to be incurred through Plan confirmation: approx. $20,000.

## EXHIBIT G – LIST OF PRIORITY UNSECURED CLAIMS

|        | Claim as Filed | Claim, according to Debtor |
|--------|----------------|----------------------------|
| IRS    | $57,062        | $33,000 (approx.)          |
| FTB    | $17,972        | $10,000 (approx.)          |
| OC Tax | $   331        | $   331                    |

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Disclosure Statement

1

2

3

EXHIBIT H – LIST OF GENERAL UNSECURED CLAIMS

4

All unsecured Claims are in class 19, all are impaired.  No objections have been filed

5

and REINHART anticipates he may object to one or more of such unsecured claims.

6

7

CREDITOR'S NAME        CLAIM as filed OR SCHEDULED        Whether DISPUTED

8

A list of all such creditors will be filed at a later date.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-48-

Disclosure Statement

# EXHIBIT
# A

**CARL H. REINHART**
**PERSONAL PROPERTY INVENTORY AS OF 3/22/10**

|  | Value | Loans | Equity |
|---|---|---|---|
| Vehicles |  |  |  |
| Automobiles |  |  |  |
| 1991 Toyota Land Cruiser | $ 2,000 | 0 | $ 2,000 |
| 1996 Lexus LS400 | 4,000 | 0 | 4,000 |
| 1994 Chevrolet Corvette | 8,000 | 0 | 8,000 |
| Recreational Vehicles |  |  |  |
| 1995 Winnebago Rialta | 10,000 | 0 | 10,000 |
| 2002 Winnebago 35' Adventurer | 32,000 | 32,000 | 0 |
|  |  |  |  |
| Construction Equipment and Supplies |  |  |  |
| Vehicles |  |  |  |
| Caterpillar 426C Backhoe | 22,500 | 12,000 | 10,500 |
| Vermeer 6" Brush Chipper | 3,000 | 0 | 3,000 |
| John Deere Mowing Tractor | 1,000 | 0 | 1,000 |
| Storage Facilities |  |  |  |
| (2) 40' Storage Containers | 3,000 | 0 | 3,000 |
| Construction Tools | 2,000 | 0 | 2,000 |
| Reclaimed Materials, Antique Barn | 15,000 | 0 | 15,000 |
| Miscellaneous | 2,000 | 0 | 2,000 |
|  |  |  |  |
| Household Furnishings |  |  |  |
| Furniture | 10,000 | 0 | 10,000 |
| Computers/Printers | 2,000 | 0 | 2,000 |
| Refrigerators/Freezers | 1,500 | 0 | 1,500 |
| Art | 3,000 | 0 | 3,000 |
| Clothing, Personal Items | 2,000 | 0 | 2,000 |
|  |  |  |  |
| Claim for Substandard Services, Fraud against Webber-Huddleston, Inc. et. al. | 300,000 | 0 | 300,000 |
|  |  |  |  |
| Total | $423,000 | $ 44,000 | $379,000 |

*Gradey Bond, Co of Org*   10,000   0   10,000
*Cash on in their repmts check*   2,000   0   2,000
*Retirement Account*   439   0   439
*Loss Carry Forward -US.*   50,000   0   50,000

*485,439*   *441,439*

EXHIBIT    A
PAGE    1    OF    1

# EXHIBIT B

## IX. PROFIT AND LOSS STATEMENT
### (ACCRUAL BASIS ONLY)

|  | Current Month | Cumulative Post-Petition |
|---|---|---|
| Sales/Revenue: | | |
| Gross Sales/Revenue | 13,508.98 | 91,163.02 |
| Less: Returns/Discounts | o | |
| Net Sales/Revenue | 13,508.98 0.00 | 91,163.02 0.00 |
| | | |
| Cost of Goods Sold: | | |
| Beginning Inventory at cost | | |
| Purchases | | |
| Less: Ending Inventory at cost | | |
| Cost of Goods Sold (COGS) | 0.00 | 0.00 |
| | | |
| Gross Profit | 13,508.98 0.00 | 91,163.02 0.00 |
| | | |
| Other Operating Income (Itemize) | 6,531.76 | 29,603.36 |
| FROM RENTAL PROPERTIES, SEE PGS 3a,3b,3c | | |
| Operating Expenses: | | |
| Payroll - Insiders | | |
| Payroll - Other Employees | | |
| Payroll Taxes | | |
| Other Taxes (Itemize) | | |
| Depreciation and Amortization | 15,000.00 | 180,000.00 |
| Rent Expense - Real Property | 1,248.46 | 9,987.68 |
| Lease Expense - Personal Property | | |
| Insurance | 2385.00 | 19,064.00 |
| Real Property Taxes | 4166.00 | 33,328.00 |
| Telephone and Utilities | 950.00 | 8510.00 |
| Repairs and Maintenance | 800.00 | 4400.00 |
| Travel and Entertainment (Itemize) | 400.00 | 2700.00 |
| Miscellaneous Operating Expenses (Itemize) AUTO | 850.00 | 6550.00 |
| Total Operating Expenses | 25,797.46 0.00 | 204,539.68 0.00 |
| Net Gain/(Loss) from Operations | (12,288.48) 0.00 | (83,773.30) 0.00 |
| | | |
| Non-Operating Income: | | |
| Interest Income | | |
| Net Gain on Sale of Assets (Itemize) | | |
| Other (Itemize) | | |
| Total Non-Operating income | 0 0.00 | 0 0.00 |
| | | |
| Non-Operating Expenses: | | |
| Interest Expense | 33,708.00 | 269,664.00 |
| Legal and Professional (Itemize) ATTORNEY | 5,000.00 | 19,000.00 |
| Other (Itemize) | | |
| Total Non-Operating Expenses | 38,708.00 0.00 | 288,664.00 0.00 |
| NET INCOME/(LOSS) | (50,996.48) 0.00 | (372,437.30) 0.00 |

(Attach exhibit listing all itemizations required above)

EXHIBIT B
PAGE 1 OF 2

# X. BALANCE SHEET
## (ACCRUAL BASIS ONLY)

| ASSETS | Current Month End | |
|---|---|---|
| Current Assets: | 10,201,500.00 | |
| Unrestricted Cash | 874.32 | |
| Restricted Cash | 21,978.85 | |
| Accounts Receivable | 6,500.00 | |
| Inventory | | |
| Notes Receivable | | |
| Prepaid Expenses | 10,000.00 | |
| Other (Itemize) | 36,500.00 | |
| Total Current Assets | | 10,283,353.17  0.00 |
| | | |
| Property, Plant, and Equipment | | |
| Accumulated Depreciation/Depletion | | |
| Net Property, Plant, and Equipment | | 0  0.00 |
| | | |
| Other Assets (Net of Amortization): | | |
| Due from Insiders | | |
| Other (Itemize) | | |
| Total Other Assets | | 0  0.00 |
| TOTAL ASSETS | | 10,283,353.17  0.00 |
| | | |
| LIABILITIES | | |
| Post-petition Liabilities: | | |
| Accounts Payable | 2,500.00 | |
| Taxes Payable | | |
| Notes Payable | | |
| Professional fees | | |
| Secured Debt | 318,692.00 | |
| Other (Itemize) UNSECURED DEBT | 55,000.00 | |
| Total Post-petition Liabilities | | 376,192.00  0.00 |
| | | |
| Pre-petition Liabilities: | | |
| Secured Liabilities | 5,593,130.00 | |
| Priority Liabilities | | |
| Unsecured Liabilities | 462,960.00 | |
| Other (Itemize) | | |
| Total Pre-petition Liabilities | | 6,056,090.00  0.00 |
| TOTAL LIABILITIES | | 6,432,282.00  0.00 |
| | | |
| EQUITY: | | |
| Pre-petition Owners' Equity | 4,195,760.03 | |
| Post-petition Profit/(Loss) | (376,192.00) | |
| Direct Charges to Equity | 0 | |
| TOTAL EQUITY | | 3,819,568.03  0.00 |
| | | |
| TOTAL LIABILITIES & EQUITY | | 10,251,850.03  0.00 |

EXHIBIT B

PAGE 2 OF 2