Stephen F. Lambert  (SBN 113868)
Patrick T. Sullivan (SBN 263613)
LAMBERT & ROGERS, APLC
359 West Madison Avenue, Suite 100
El Cajon, California 92020
Tel: (619) 588-7600/Fax: (619) 588-7889


Attorneys for Plaintiff
COMMERCIAL BANK OF CALIFORNIA


# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| IN RE: | **Case No. : 8:09-bk-16774-TA** |
| CARL H. REINHART, | **OBJECTION OF COMMERCIAL BANK OF CALIFORNIA TO DEBTOR'S DISCLOSURE STATEMENT** |
| Debtor and Debtor-in-Possession | **Date: May 5, 2010** **Time: 10:00 a.m.** **Courtroom 5B** |

Commercial Bank of California ("Bank"), a secured creditor of Carl H. Reinhart, by and through undersigned counsel, hereby objects (the "Objection") to the debtor's *ORIGINAL DISCLOSURE STATEMENT OF DEBTOR, CARL H REINHART, DESCRIBING CHAPTER 11 PLAN DATED MARCH 22, 2010* (the "Disclosure Statement") as follows:

## I.

## INTRODUCTION

A disclosure statement is supposed to provide creditors of the debtor with information sufficient to enable the creditors to understand and analyze the treatment of their claims under the debtor's proposed plan of reorganization. The disclosure statement must be based upon substantiated facts and describe a plan that conforms to the requirements of the Bankruptcy Code in order for the creditors to conduct this analysis. The Disclosure Statement filed by Debtor Carl H. Reinhart (the "Debtor") filed on March 22,

1  2010, contains a fundamental flaw that bars any possibility of approval; it describes a chapter 11 plan or

2  reorganization (the "Plan") that cannon be confirmed as a matter of law.

3  The Court cannot approve the Disclosure Statement because it describes a plan of reorganization

4  (the "Plan") that is not confirmable on its face. The Plan facially is not feasible. Specifically, the plan (1)

5  relies on undetermined refinancing on undisclosed terms and conditions from a source which is not

6  identified;(2) relies on wholly inadequate income from operations; and, (3) contains a speculative, at best,

7  plan for the sale or refinancing of estate property at some indeterminate future date.

8  Moreover, the Disclosure Statement cannot be approved because it fails to provide adequate

9  information to facilitate meaningful voting or confirmation proceedings.  The Disclosure Statement,

10  among other things, (i) lacks adequate information concerning the debtor's ability to make the payments

11  proposed in his Plan; (ii) lacks adequate information concerning the accounting and valuation methods

12  used in the preparation of the Disclosure Statement; and (iii) lacks adequate information concerning the

13  treatment of creditors' claims under a hypothetical Chapter 7 case.

14  ## II.

15  ## ARGUMENT

16  The disclosure statement is the Bankruptcy Code's tool to provide creditors with information to

17  decide how to vote on, and information to decide whether to object to, a plan of reorganization. *See In re*

18  *California Fidelity, Inc.*, 198 B.R. 567, 571 (9th Cir. BAP 1996). Fundamental to the chapter 11 process is

19  full and complete disclosure. *In re Brandon Mills Farms, Ltd.*, 37 B.R. 190, 192 (Bankr. D.N.H. 1991).

20  "Where inaccuracies are so numerous or significant that creditors or interest holders can no longer make

21  an informed judgment about whether to accept or reject the proposed plan of reorganization, approval of

22  the Disclosure Statement must be denied." *In re Cardinal Congregate I*, 121 B.R. 760, 766-67 (Bankr.

23  S.D. Ohio 1990); *see also In re Hirt*, 97 B.R. 981, 983 (Bankr. E.D. Wis. 1989)(denying the approval of a

24  disclosure statement where the document contained numerous inaccuracies and because the debtor failed

25  to provide detailed financial information). Without full disclosure of adequate information, creditors are

26  unable to exercise their voting rights and their rights to object to the confirmation of the Plan.

27

28

1    **A.    The Court Should Not Approve the Disclosure Statement Because the Plan Itself**
2    **Cannot Be Confirmed Because the Plan Is Not Feasible**

3    Bank is mindful of the distinction between issues that are appropriately addressed at the time of the
4    hearing on the disclosure statement and those more typically reserved for plan confirmation. However, it
5    is well established that courts may consider substantive plan issues at the disclosure statement hearing and
6    deny approval to disclosure statements predicated upon facially unconfirmable plans. A court is
7    authorized at a disclosure statement hearing to address legal issues that determine whether a plan can be
8    confirmed. *See, e.g. In re Moorpark Adventure,* 161 B.R. 254, 256-258 (Bankr. C.D. Cal. 1993); *see also*
9    *In re Felicity Assocs., Inc.,* 197 B.R. 12, 14 (Bankr. D.R.I. 1996) ("it has become standard Chapter 11
10   practice that when an objection raises substantive plan issues that are normally addressed at confirmation,
11   it is proper to consider and rule upon such issues prior to confirmation, where the proposed plan is
12   arguably unconfirmable on its face.")[internal citations omitted]; *In re Market Square Inn, Inc.,* 163 B.R.
13   64, 68 (Bankr. W.D.Pa. 1994) ("Where it is clear that a plan of reorganization is not capable of
14   confirmation, it is appropriate to refuse the approval of the disclosure statement.").

15   The proponents of a Chapter 11 plan must show that the plan "has a reasonable probability of
16   success," *In re Acequia, Inc.* 787 F.2d 1352, 1364 (9th Cir. 1986), and is more than a "visionary
17   scheme[]." *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (quotations omitted). In
18   determining whether a plan is "feasible" within the meaning of § 1129(a)(11) courts have identified the
19   following factors as pertinent: "the prospective earnings of the business or its earning power; the
20   soundness and adequacy of the capital structure and working capital for the business which the debtor will
21   engage in post-confirmation; the prospective availability of credit; whether the debtor will have the ability
22   to meet its requirements for capital expenditures; economic and market conditions; the ability of
23   management, and the likelihood that the same management will continue; and any other related factors
24   which would materially reflect on the company's ability to operate successfully and implement its plan."
25   *In re Kemp*, 134 B.R. 413, 416 (Bankr. E.D. Cal. 1991)(quoting *In re Texaco, Inc.*, 84 Bankr. 893, 910
26   (Bankr. S.D.N.Y.).

27   The property identified by debtor in the Disclosure as the "LADD" property appears to constitute
28   almost 50% of the value of this estate. The Disclosure indicates the debtor seeks to refinance the LADD

1    property (p. 10 of Disclosure) but is silent as to the terms and conditions of the loan and the identity of the

2    lender. The Disclosure states an amount of "approximately $1,200,000" and that debtor has "obtained a

3    contractor's estimate of the cost to compete the home", but does not disclose the cost, whether the loan

4    amount is sufficient, nor the time to complete construction. The Disclosure further indicates the debtor

5    intends to pursue the filing of a tentative map with the County of Orange (pp. 10-11 of Disclosure), but is

6    silent as to the time, expense and feasibility of such property division. The Disclosure is similarly silent as

7    to what factors have been considered and whether or not the LADD property is even capable of

8    subdivision at all.

9         The Plan and debtor's intentions are mere speculation as to whether the LADD property, may be

10    subdivided and what the future market value will be. The intentions are no more than a "visionary

11    scheme". Because this property apparently constitutes a substantial portion of the estate (about 50%),

12    without a concrete viable plan as to the LADD property, the Plan as a whole is not feasible.

13    **B.    The Disclosure Statement Does Not Contain "Adequate Information" As Required By**

14    **Section 1125.**

15         Section 1125 requires that prior to the solicitation of acceptances of a plan of reorganization, each

16    impaired claimant and interest holder must receive a disclosure statement that has been previously

17    approved by the court as containing "adequate information." 11 U.S.C. § 1125(b). "Adequate information"

18    is defined as:

19            "[I]nformation of a kind, and in sufficient detail, as far as is reasonably

20            practicable in light of the nature and history of the debtor and the condition
        of the debtor's books and records, that would enable a hypothetical

21            reasonable investor typical of holders of claims or interests of the relevant
        class to make an informed judgment about the plan ..." [11 U.S.C. §

22            1125(a)(1).]

23         The purpose of a disclosure statement is to provide sufficient information so that a typical investor

24    can make an informed judgment whether to vote for or against the plan. *In re Unichem Corp.*, 72 B.R. 95,

25    97 (Bankr. N.D. Ill. 1987). "Because creditors and the bankruptcy court rely heavily on the debtor's

26    disclosure statement in determining whether to approve a proposed reorganization plan, the importance of

27    full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,

28    81 F.3d 355, 362 (ed Cir. 1996).

1    The disclosure statement must describe all factors known to the plan proponent that may impact

2   the success or failure of the proposals contained in the plan. *See, e.g., In re Beltrami Enters., Inc.*, 191

3   B.R. 303, 304 (Bankr. M.D. Pa. 1995); *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio

4   1990); *In re Stanley Hotel, Inc.*, 13 B.R. 926, 929 (Bankr. D. Colo. 1981). Indeed, Section 1125(a) was

5   amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to increase the

6   required disclosure necessary for a disclosure statement to contain "Adequate Information." "The

7   importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the

8   creditors and court. Given this reliance, "we cannon overemphasize the debtor's obligation to provide

9   sufficient data to satisfy the Code standard of 'adequate information.'" *Kunica v. St. Jean Fin. Inc.*, 233

10   B.R. 46, 54 (S.D.N.Y. 1999)(citing Oneida, 848 F.2d at 417).

11    Several courts have articulated lists of the kinds of information that should be included in a

12   disclosure statement. *In re Pac. Gas & Elec. Co.*, 273 B.R. 795, 808 (Bankr. N.D. Cal. 2002), *rev'd*, 350

13   F.3d 932 (9th Cir. 2003)(stating that disclosure statement typically sets forth a description of the debtor's

14   business, the reasons for financial difficulties, historical and current financial information, material post-

15   petition events, a summary of assets and liabilities, a description of the plan, and the means for

16   effectuating the plan); *In re Diversified Investors Fund XVII*, 91 B.R. 559, 561 (Bankr. CC.D. Cal.

17   1988)(stating that a disclosure statement must contain liquidation analysis); *In re Scioto Valley Mortgage

18   Co.*, 99 B.R. 168 (Bankr. E.D. Ohio 1988); *In re Feretti*, 128 B.R. at 19; *In re U.S. Brass Corp.*, 104 F.3d

19   420, 424 (Bankr. E.D.Tex. 1996). the factors outlined in *In re Scioto Valley* are frequently cited in

20   treatises as constituting benchmark minimum disclosure requirements. *See Collier on Bankruptcy* P

21   1125.02[b][2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Among the required disclosure

22   subjects are: (1) the accounting and valuation methods used to produce the financial information in the

23   disclosure statement; (2) the compensation to be paid to any insiders, directors and/or officers of the

24   Debtor; (3) detailed information about the Debtor's ability to make the payments proposed in the plan; (4)

25   an estimate of all administrative expenses, including attorneys' fees and accounting fees; (5) the

26   collectability of any accounts receivable; (6) any financial information, valuations or pro forma

27   projections that would be relevant to creditors' determinations of whether to accept or reject the plan; (7)

28   the actual or projected value that can be obtained from avoidable transfers; (8) the existence, likelihood,

1    and possible success of no bankruptcy litigation; and (9) the relationship of the Debtor with affiliates. 88

2    B.R. at 171-72. If the disclosure statement does not contain adequate information within the meaning of

3    section 1125 of the Bankruptcy code, then the plan it describes is not eligible for confirmation due to

4    section 1129(a)(2) of the Bankruptcy Code.

5         As more fully set forth below, the disclosure Statement fails to satisfy even the minimum

6    disclosure requirements of Section 1125. Because the Disclosure Statement does not provide creditors

7    with "adequate information", enabling them to make an informed judgment about the Plan, approval

8    should be denied.

9        **1.**      **The Disclosure Statement Lacks Adequate Information Concerning Debtor's Ability**

10            **to Make the Payments Proposed by the Plan and Fails to Disclose Insider**

11            **Compensation**

12        Although the debtor disclaims any compensation for acting as disbursing agent and seeks to serve

13   as such without bond (p. 37 of Disclosure), the Disclosure is entirely silent as to what compensation

14   debtor will receive. Debtor has shown that in the past eight months since the filing of the petition he has

15   cumulatively lost $372,437.30 (p.1 of Exhibit "B" to Disclosure). Adding back the non-cash allowance for

16   depreciation and amortization, and the continued deferral of all interest expense accruals, debtor only

17   shows a cumulative net income of $17,226.70, or little more than $2,150 per month.  This is hardly

18   sufficient to make the payments contemplated by the Plan.

19       **2.**      **The Disclosure Statement Lacks Adequate Information Concerning the Terms of the**

20            **Proposed Refinancing of the LADD Property**

21        In the case of the LADD property, debtor claims the home, after subdivision on a five-acre parcel

22   "should be valued at $4,500,000 and the home, on the full 92 acres, should be valued at $7,000,000" (p. 11

23   of Disclosure).  Debtor values the LADD property at $4,700,000 in his Schedule A. The Disclosure is

24   silent as to the cost of completion of improvements and the cost of subdivision.  The Disclosure is

25   similarly silent

26        Without this information, the Disclosure provides little more than debtor's "wish list" for dealing

27   with the LADD property.

28

1

2

### 3.    The Disclosure Statement Lacks Adequate Information Concerning the Accounting

### and Valuation Methods Used in the Preparation of the Disclosure Statement

*In re Scioto Valley*, *supra*, 99 B.R. 168, lists as one category of required disclosures, "any financial

information, valuations or pro formal projections that would be relevant to creditors' determinations of

whether to accept or reject the plan." Courts have denied the approval of disclosure statements where real

property valuations contained therein lack factual basis. *In re Reilly*, 71 B.R. 132, 135 (Bankr. D. Mont.

1987).

Here, Debtor has stated the value of its "Current Assets", presumably including his real property

holdings, as a lump sum of "$10,201,500.00" and total assets of "$10,283,353.17"(p. 2 of Exhibit "B" to

Disclosure) . Debtor lists the valuation of all of his assets at the time of filing of $9,230,439 (Summary of

Schedules). Debtor shows a cumulative post-petition loss of "<$372,437.30>" (p. 1 of Exhibit "B" to

Disclosure). Even allowing for the non-cash depreciation and amortization allowance of "$180,000", the

increase in the valuation of the assets is not explained. There is no information concerning the

methodology or the process debtor used in arriving at these values. Neither are the individual properties

identified and valued in the Disclosure.  Without this information, a determination cannot be made of the

feasibility of the Plan.

### 4.    The Disclosure Statement Lacks Adequate Information Concerning the Treatment of

### Creditors' Claims Under a Hypothetical Chapter 7 Case

Debtor concludes, without foundation that he is proposing a plan "that will pay all [creditors] at

least 105% of their allowed claims" (p. 42 of Disclosure) and "estimates that all creditors would receive no

better treatment." (*id.*). These conclusions are entirely without analysis or support.  No detailed financial

information is provided.  No basis for valuation data is provided and the numbers simply "don't add up".

Debtor indicates that it will bile a liquidation analysis "prior to the hearing on the Disclosure

Statement" (p. 47 of Disclosure).  This is admission by debtor that this Disclosure Statement is fatally

defective as it lacks the requisite analysis.  Bank respectfully submits that this Disclosure Statement

should be denied approval on this basis alone.

1

### III.

2

### __CONCLUSION__

3      Accordingly, Bank respectfully requests that based upon the foregoing concerns of feasibility of

4  the Plan and lack of adequate information provided in the Disclosure Statement, the Court deny approval

5  of the proposed Disclosure Statement and grant such other relief that is just and proper.

6  Dated: April 21, 2010                              LAMBERT & ROGERS, APLC

7

8                                          By:        _____*/s/ Patrick T. Sullivan*_____
                                                      Patrick T. Sullivan, Esq.
9                                                     Attorneys for Secured Creditor
10                                                    COMMERCIAL BANK OF CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| In re:  CARL H. REINHART | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER  8:09-bk-16774-TA |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Lambert & Rogers, APLC, 359 West Madison Avenue, Suite 100, El Cajon, CA 92020

A true and correct copy of the foregoing document described **OBJECTION OF COMMERCIAL BANK OF CALIFORNIA TO DEBTOR'S DISCLOSURE STATEMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 21, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

R G Pagter on behalf of Debtor Carl H. Reinhart: Gibson@pagterandmiller.com; pandm@pagterandmiller.com pagterandmiller@yahoo.com
Nancy S Goldenberg on behalf of U.S. Trustee Unites States Trustee (SA): nancy.goldenberg@usdoj.gov
United States Trustee (SA): ustpregion16.sa.ecf@usdoj.gov
Evan C Borges on behalf of Interested Party Courtesy NEF: eborges@irell.com; bblythe@irell.com
Christopher M McDermott on behalf of Creditor First Franklin Financial Corporation: ecfcacb@pitedduncan.com
John D. Schlotter on behalf of Interested Party Courtesy NEF: bkmail@mrdefault.com
David A Tilem on behalf of Creditor Sandra Larsen: davidtilem@tilemlaw.com; malissamurguia@tilemlaw.com
marcycarman@tilemlaw.com; ldiaz@tilemlaw.com; dianachau@tilemlaw.com

☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On April 21, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Carl Heinz Reinhart, P.O. Box 4476, Irvine, CA 92616
Hon. Theodor C. Albert, U.S. Bankruptcy Court-Central District of California, 411 West Fourth Street, Suite 5085, Santa Ana, CA 92701-4593

X☐ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I   served   the   following   person(s)   and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

April 21, 2010   Patrick T. Sullivan                              /s/ Patrick T. Sullivan

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:  CARL H. REINHART | CHAPTER  11 |
|---|---|
| Debtor(s). | CASE NUMBER  8:09-bk-16774-TA |

TWENTY LARGEST UNSECURED CREDITORS

American Express
Attn Managing Agent
P.O. Box 981535
El Paso, TX 79998

Citi Bank
Attn Managing Agent
P.O. Box 6000
The Lakes, NV 89163

Ganahl Lumber
P.O. Box 31
Anaheim, CA 92815

Lincoln Wholesale Electric Co.
Attn Managing Agent
1451-A Lincoln Blvd
Santa Monica, CA 90401

Michael Lanphere, Esq.
Lanphere Law Group PC
400 N Tustin Ave Ste 225
Santa Ana, CA 92705

WB Contento
P.O. Box 6397
Santa Ana, CA 92701

Capital One
Attn Managing Agent
P.O. Box 30273
Salt Lake City, UT 84130

Eoin L. Kreditor, Esq.
Friedman Stroffe & Gerard PC
19800 MacArthur Blvd #100
Irvine, CA 92612

George Helland
2626 29th Street
San Diego, CA 92104

Marguerite Reinhart
18800 Florida St #333
Huntington Beach, CA92648

Peninsula Investment RE Broker
Attn Managing Agent
P.O. Box 14130
Irvine, CA 92623

Wells Fargo Bank
Attn Managing Agent
P.O. Box 10347
Des Moines, IA 50306

Chase
Attn Managing Agent
P.O. Box 15298
Wilmington, DE 19850

Franchise Tax Board
Special Procedures Branch
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Michael Britt
28435 Zurita
Mission Viejo, CA 92692

Union Bank of California
Attn Managing Agent
Wilcox, AZ 85643

Yocum-Bladwin Development
Attn Managing Agent
3299 Horseless Carriage Dr
Norco, CA 92860

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                 F 9013-3.1