**R. GIBSON PAGTER, JR.**
State Bar No. 116450
**PAGTER AND MILLER**
California State Bar No. 116450
525 N. Cabrillo Park Drive, Suite 104
Santa Ana, CA 92701
Telephone: (714) 541-6072
Facsimile:  (714) 541-6897
Email: gibson@pagterandmiller.com

Attorneys for Carl H. Reinhart,
Debtor and Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>CARL H. REINHART,<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Debtor and<br>Debtor-in-Possession. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 8:09-bk-16774 TA<br><br>Chapter 11<br><br>MOTION FOR ORDER<br> (1) APPROVING SECURED FINANCING PURSUANT TO SECTION 364(d);<br>(2) DETERMINING GOOD FAITH FINDING;<br>(3) FINDING 11 U.S.C. §363(c) APPLIES;<br>(4) AUTHORIZING DEBTOR'S USE OF THE FUNDS;<br>(5) AUTHORIZING REASONABLE LOAN COSTS AND LOAN FEES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CARL H. REINHART AND R. GIBSON PAGTER, JR. IN SUPPORT THEREOF<br><br>DATE:  03/02/11<br>TIME:   10:00 A.M.<br>CTRM: 5B |

///

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-1-

Reinhart.g/M-Borrow

**TO THE HONORABLE THEODOR C. ALBERT UNITED STATES BANKRUPTCY JUDGE, AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that Debtor and Debtor-in-Possession, Carl H. Reinhart ("Debtor") will appear in Courtroom 5B of the above-entitled Court located at 411 W. 4th St., Santa Ana, California on 02/23/2011 at 10:00 a.m. and move the Court for an Order (1) Approving Secured Financing Pursuant to Section 364(d); (2) Determining Good Faith finding; (3) Finding 11 U.S.C. §363(c) Applies; (4) Authorizing Debtor's use of the Funds; (5) Authorizing Reasonable Loan Costs and Loan Fees.

This Motion is based upon this Notice and Motion, the Memorandum of Points and Authorities and Declarations attached hereto and the documents and records on file herein.

**PLEASE TAKE FURTHER NOTICE** that pursuant to **Local Bankruptcy Rule 9013-1(a)(7)**: Response to Motion.  Unless the Court orders otherwise, each interested party opposing, joining or responding to the motion shall, file and serve not later than 14 days before the date designated for hearing either: (i) a brief but complete written statement of all reasons in opposition or in support or joinder thereof and answering memorandum of points and authorities, declarations and copies of all photographs and documentary evidence on which the responding party intends to rely.  The opposing papers shall advise the adverse party that any reply to the opposition shall be filed with the Court and served on the opposing party not later than seven (7) calendar days prior to the hearing on the motion.

**PLEASE ALSO TAKE NOTICE** that pursuant to **Local Bankruptcy Rule 9013-1(a)(11)** Papers not timely filed and served may be deemed by the Court to be consent to the granting or denial of the motion, as the case may be.

DATE:  01/19/11                          PAGTER A ND MILLER

                                          _/s/ R. GIBSON PAGTER, JR._
                                          R. GIBSON PAGTER, JR.
                                          Attorneys for Debtor

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-2-

Reinhart.g/M-Borrow

## MEMORANDUM OF POINTS AND AUTHORITIES

## <u>SUMMARY OF PROPOSED RELIEF</u>

Debtor as Debtor in Possession owns real property located at 14311 Ladd Canyon, Silverado CA ("LADD"), a 92-acre **undivided** parcel ("Property") on which a large home ("Residence") is currently under construction but nearly complete.    On the Petition Date the Residence and Property was approximately 70% complete, but now is 80% complete. Debtor proposes to borrow $1,200,000, an amount sufficient to complete the Residence and related infrastructure so it and the Property can be put into a saleable position. Exhibit 1 is a copy of the loan commitment from Lender, and prior to the hearing hereon Debtor will supplement this Motion with copies of a proposed promissory note, deed of trust, and related documents. Debtor intends to complete construction of the Residence, and pave the access road to it, at a cost of $854,155, and to use loan proceeds to cure all delinquent real estate taxes, and to keep them current going forward and to keep all insurance on the Property current as well. Exhibit 2 is a copy of the proposed contractor's current letter of intent to build and the costs to do so. The Property currently is encumbered by liens totaling approximately $2,920,000. Exhibit 3 is a copy of a title report that lists all known trust deeds or Mechanics Liens secured against the Property. In an opinion dated 11/22/2010 this Court valued the Property with the Residence, as-is, at $3,415,000, but the Court also reasoned that if $1,200,000 were invested in to completion of the Residence, the after-completion as-is value would be $4,615,000, that is to say a dollar invested would yield a dollar increase in value.  The loan proposal is summarized below:

George Helland, who is Debtor's and his sister's friend ("Lender"), will loan Debtor $1,200,000, and receive a super-priority lien on the Property ahead of all existing liens, with the

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Reinhart.g/M-Borrow

exception of real estate taxes which will be paid from the new loan. The terms and conditions of the Loan are set forth below.    The following describes the location of certain provisions therein[1]:

Interest rate  <u>5.64%</u>          page 1  paragraph 6

Maturity 18 months from first funding        page 1 paragraph 7

Events of default              page   5-18 (Deed of Trust)

Lien                          page 1, paragraph 3

Borrowing limits              page 1,  paragraph 2

Borrowing conditions          page 1,  paragraph 3-5

Grant super priority lien      page 1, paragraph 3

Distribution of
Loan Proceeds                  page1, paragraphs 4,5, & 9

Lender will act as the fund control to advance on behalf of the Debtor only the funds needed to acquire the loan and complete construction of the Residence and related items on Property.

Based upon the Court's own valuation opinion, the current lienholders currently are adequately protected, and will remain adequately protected after the proposed priming Loan.

<u>STATEMENT OF FACTS</u>

1.    Debtor filed its voluntary emergency Chapter 11 on 07/07/2009 ("Petition Date") and remains in possession of its property.

A.    <u>The Debtor and its Property</u>

---

[1] The page number  references are to pages  included in Exhibit 1.

Reinhart.g/M-Borrow

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

2.      Debtor's major asset consists of the Property and the Residence.   As summarized above, Debtor proposes to borrow up to $1,200,000 to complete the Residence and related infrastructure, a process estimated to take approximately twelve months and that will result in a Certificate of Occupancy from the County of Orange immediately thereafter.

3.      Debtor built the Residence and now intends to sell it upon completion.

4.      Because the Residence is not complete, and sits on a large, 92-acre, presently-unsubdivided parcel, Debtor has not listed the Property for sale.  Once the Residence has been completed to a saleable state, which Debtor estimates will require the expenditure of approximately $50,000 (to complete the roof and entry steps, and to install garage and other doors) over 60 days, Debtor will market the Property for sale.  If the Residence is sold prior to Debtor drawing upon the available loan proceeds, Debtor will cease such draws, and thus only borrow what is minimally needed to sell the Property or, if the Property has been subdivided, sell either the Residence and the remainder raw land, or both.

5.      Debtor requires additional funding to complete the Residence.  Debtor's counsel, R. Gibson Pagter, Jr., has been involved with Debtor in attempting to obtain new funding and negotiating the loan being proposed here.

6.      As-is the Property has a value of $3,415,000; however, when the Residence is complete, it will have a value of $4,615,000.

7.      The Property is encumbered by the following voluntary and involuntary liens:

<u>VOLUNTARY LIENS</u>

| Position | Name | Amount Owed (Debtor's est. as of 1/19/11) | Recording Date |
|---|---|---|---|

Reinhart.g/M-Borrow

-5-

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

| | | | |
|---|---|---|---|
| 1st deed of trust | Comml Bank CA ("CBC") | $1,900,000[2] | 12/8/05 |
| 2nd deed of trust | CBC | $ 465,000 | 6/11/07 |
| 3rd deed of trust | Main Street, LLC | $ 425,000 | 7/20/07 |
| 4th deed of trust | George Helland | $  37,000 | 7/09/09 |
| | Sub-Total | $2,827,000 | |

Copies of CBC's deeds of trust are on file herein as exhibits to the Bank's Motion for Relief From Stay filed herein as Docket No. 39, filed herein on 01/19/2010.

MECHANICS LIENS/Real Property Tax Liens

| Name | Approx. Amount Owed | Lien Date |
|---|---|---|
| Martin Vellandi | $  23,000 | 4/9/09 |
| Orange County Real Property Taxes | $  70,000 | Pre and Post-bankruptcy |
| Sub-Total | $  93,000 | |

LIEN TOTAL    $2,920,000

A copy of the Mechanic's Lien and evidence of the County's tax liens are available from the Clerk's Office, as Claim No. 22 filed by Vellandi on 08/30/2009, and as Claim No. 24 filed by the OC Tax Collector on 09/21/2009.

8.    Both before and after filing this case, with no less than 10 possible lenders including CBC, Debtor has attempted unsuccessfully either to obtain a new loan to replace the existing CBC loans, or to obtain new financing to complete construction of the Residence on the Property. None of the potential lenders ever offered to loan money to Debtor to do so.

---

[2] Debtor has used CBC's account statements, dated 12/17/10, to estimate this sum, and the sum owed on its 2nd position deed of trust.

Reinhart.g/M-Borrow

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Debtor called several institutional lenders, but as the nationwide credit-crunch has taken hold, all such lenders told Debtor not even to apply. The only lender willing to finance Debtor is George Helland.

B.      The Proposed Secured Financing

9.      Debtor proposes to borrow up to $1,200,000 ("Loan") and use the money to: (a) pay all prepetition and postpetition real estate taxes secured on LADD; (b) pay the costs to obtain the Loan; (c) pay ongoing real estate taxes and insurance for the Property; and (d) complete construction of the Residence on the Property, and fund the fees/costs to subdivide the Property.  All Loan proceeds will be controlled by the Lender, arguably like a typical construction loan or line of credit.

10.      The recorded voluntary and involuntary encumbrances on the Property total $2,920,000.  This Court has valued the 'as is' value of the Property at  $3,415,000, but the Court also reasoned that if $1,200,000 were invested in to completion of the Residence, the after-completion as-is value would be $4,615,000, that is to say a dollar invested would yield a dollar increase in value.  At $3,415,000, Debtor has approximately $495,000 in equity.  If Debtor borrows the full $1,200,000, its secured liabilities will increase to $4,120,000;  however, as this Court already concluded, when the Residence is complete, the value of the Property will increase to $4,615,000, i.e., Debtor's equity will still be $495,000, but the Residence and/or the Property will be in a far more saleable and marketable condition.

11.      Debtor has been unable to obtain financing on terms other than those proposed here. Pre-Petition Debtor attempted unsuccessfully to obtain financing sufficient to complete the work and/or to prevent CBC from foreclosing.    [CBC had a foreclosure sale scheduled for the day following the Petition Date.] Pre-petition and post-petition Debtor has approached no less than 10 lenders other than Lender, without success.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-7-

Reinhart.g/M-Borrow

12.     Debtor proposes providing the selected Lender with a lien upon and a first position security interest upon Debtor's Property. This interest shall be entitled to a super-priority lien status, and its claim and the lien securing it shall be deemed priming and senior to all other liens, after payment of all real property taxes due for LADD, through the date the Loan is funded.

13.     The following are the material terms of the loan proposed by Lender1:

Loan Amount:            The Loan amount shall be up to $1,200,000.

Term:                   The maturity date (the "Maturity Date") shall be eighteen (18) months after the Loan closing date

Payments                are interest only, payable monthly, due on the 1st of each month, but are <u>pre-paid</u> at close of escrow.

Interest and Fees:  (a)   The interest rate shall be 5.64%, fixed over the term of the Loan.

                    (b)   There is no Default Interest Rate .

                    (c)   Lender's fees and costs for title, escrow, and other customary fees, estimated at $11,000, will be deducted at the close of escrow from the loan proceeds.

                    (d)   an amount sufficient to make the required interest payments over the18 month life of the proposed Loan.  The amount of the Interest Reserve is estimated at $101,495. These dollars will be held by Lender in an Interest Reserve account and used to make the required monthly payments.

                    (e)   Debtor may make payments of Principal at any time before it is are due without paying a prepayment penalty.

                    (e)   Debtor shall pay Lender a Loan origination Fee of $21,000.

                    (f)   There are no loan broker fees.

                    (g)   Debtor estimates he will have a $54,325  contingency cushion built in to the Loan, on top of a $30,000 contingency cushion in the construction budget.

Security:               The order approving the Loan entered by the Bankruptcy Court shall grant Lender a lien upon and security interest in all of Debtor's

Reinhart.g/M-Borrow

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

right, title and interest in and to the Property.  All of Debtor's obligations under the Loan shall be entitled to super-priority status, and such claims and the liens securing them shall be deemed priming and senior to all other liens and interests in the Property. <u>The only exception to Lender's super-priority lien shall be the lien of Orange County for unpaid real property taxes</u>.  But all such taxes shall be paid at closing of the Loan.

Events of Default:    Debtor's failure to pay the entire amount due on the Loan on the maturity date or other date on which it is required to make immediate payment in full of the entire amount due

Use of Funds Limitations:    The only limitation on the use of the net Loan proceeds is that they shall be used solely to pay: (a) costs of the Loan; (b) real estate taxes on or insurance for the benefit of the Property and/or the Residence; (c) completion of construction on the Residence; and (d) fees/costs to pursue subdivision of the Property.

Adequate Protection:    The liens currently on the Property are estimated at $2,920,000 including real property taxes.  The value of the Property in 'as is' condition is $3,415,000. If the work on the Residence and the Property is completed the value will be $4,615,000.  All liens junior to the lien to be given to Lender thus are unaffected by the New Loan and are adequately protected.

Loan Documents:    Debtor shall execute and deliver to Lender, and shall cause to be executed and delivered to Lender1, such loan and security agreements, instruments and other documents relating to Lender1's perfection of its security interest as are reasonable and customary for similar loans in connection with the closing of the Loan.

Court Approval:    The Loan is subject to this Court's approval.

Local Bankruptcy Rule 4001-2(b) requires that Debtor identify any provision as indicated below:

(A)    Provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors (i.e., clauses that secure prepetition debt by post-petition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law).  <u>No cross-collateralization protection will be provided.</u>

(B)    Provisions that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or debt or the waiver of claims

Reinhart.g/M-Borrow

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

against the secured creditor.  <u>The proposed financing will NOT bind the estate with respect to the Lender's prepetition or priority of the Lender's prepetition lien or waive any claims against Lender.</u>

(C)    Provisions that seek to waive the estate's rights under 11U.S.C. §506(c).  <u>The proposed financing will not waive the estate's rights under 11 U.S.C. §506(c).</u>

(D)    Provisions that grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§544, 545, 547, 548 or 549. <u>The proposed financing will not grant liens on Debtor's claims under 11 U.S.C. §§544, 545, 547, 548 or 549.</u>

(E)    Provisions that deem prepetition secured debt to be post-petition debt or that use post-petition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. §522(b).  <u>The Lender does not have a prepetition unsecured claim against Debtor, and none of the Loan proceeds will pay any part of Lender's current 4th position deed of trust debt.</u>

(F)    Provisions that provide disparate treatment for the professionals retained by a creditors' committee from that provided for the professionals retained by the debtor with respect to a professional fee carve out.  N<u>o creditor's committee has been appointed. No carve-out provisions are proposed.</u>

(G)    Provisions that prime any secured lien.  Such motions must:
    (i)    Identify the location of any such provision in the proposed form of order, cash collateral stipulation, and/or loan agreement; and
    (ii)    Contain specific justification for priming.
<u>The Loan proposal documents are attached to this Motion.  Both proposals contain priming provisions.  This Motion details the justification for priming.</u>

Federal Rule of Bankruptcy Procedure 4001(c), in pertinent part, requires a description

of the following additional provisions:

**(i)** a grant of priority or a lien on property of the estate under § 364(c) or (d). This Motion does so.

**(ii)** the providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim. The Motion does so.

**(iii)** a determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim. The Motion does not determine the

Reinhart.g/M-Borrow

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim make any such determination, or  any prepetition claim or lien.

**(iv)** a waiver or modification of Code provisions or applicable rules relating to the automatic stay. The Motion proposes no such waiver or modification.

**(v)** a waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364. The Motion proposes no such waiver, modification, extension.

**(vi)** the establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order. The Motion proposes no such deadline or modification.

**(vii)** a waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien. The Motion proposes no such waiver or modification.

**(viii)** a release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action. The Motion proposes no such release, waiver or limitation.

**(ix)** the indemnification of any entity. The Motion proposes no such indemnification.

**(x)** a release, waiver, or limitation of any right under § 506(c). The Motion proposes no such release, waiver or limitation.

**(xi)** the granting of a lien on any claim or cause of action arising under §§ 544,[1] 545, 547, 548, 549, 553 (b), 723 (a), or 724 (a).  The Motion proposes no such grant.

        Prior to the Petition Date, CBC had scheduled a Trustee's sale.  Had CBC foreclosed, no other creditor secured on LADD (other than the lien of real property taxes) would have received payment on its claim.  Debtor submits that the proposed financing is in the best interests of the estate, and in the best interests of all creditors.  All existing secured creditors

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-11-

Reinhart.g/M-Borrow

will be adequately protected both before and after completion of the remaining construction. The Loan proceeds will allow the value of the Property to be significantly enhanced.

## APPLICABLE LAW/DISCUSSION

Section 364(d)(1) of the Bankruptcy Code empowers a bankruptcy court to authorize a debtor to obtain post-petition financing secured by a senior lien against property of the estate:

"(d)(1)   The Court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
         (A) the trustee is unable to obtain such credit otherwise; and
         (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

[See also §364(c)(1); Bankruptcy Rule 4001(c).]

The Sixth Circuit Court of Appeals, in In re Ellilngsen MacLean Oil Co., Inc., 834 F.2d 599 (6th Cir. 1987), cert. denied, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed. 2d 33 (1988) succinctly stated the purpose of Section 364 as follows:

"There are countervailing strong policy reasons to encourage creditors to extend additional postpetition credit to debtors. Chapter 11 envisions the continued operation of a debtor's business, but the need for fresh capital and difficulties in obtaining the capital and wherewithal to run a business are obvious.  Lenders and suppliers are understandably reluctant to do business with a debtor who is in bankruptcy and who may have few, if any, unencumbered assets to offer as collateral.  Section 364 is designed to encourage postpetition financing by authorizing security in the debtor's assets and giving the lender priority over administrative costs.´Id. at 603.

A.    <u>Debtor has been Unable to Obtain Appropriate Financing by any Other Means</u>

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-12-

Reinhart.g/M-Borrow

Under the first prong of this Section, Debtor must establish that it is unable to obtain

credit on any basis other than credit secured by a senior or equal lien on property of the estate

[§364(d)(1)]. It has done so here.

§364(d)(1)(A) reads:

"The court, after notice and a hearing, may authorize the obtaining of credit
or the incurring of debt secured by a senior or equal lien on property of the estate
that is subject to a lien only if –
        (A) the trustee is unable to obtain such credit otherwise."

As set forth herein, Debtor has been unable to obtain financing on an unsecured or a

junior secured basis to do what it seeks to do here. The Court in In re: Reading Tube

Industries, 72 B.R. 329 (Bkrtcy E.D. PA 1987) found:

"The debtor contends that the statute fails to explicitly provide how extensive the
debtor's efforts to obtain credit must be; therefore, the court must make its
decisions on a case by case basis.  We agree.  The debtor cites *In re Showshoe
Co., Inc.,*789 F.2d 1085, 1088 (4th Cir. 1986) for the proposition that 'there is
no duty to seek credit from every possible lender.' Again, we agree. Given the
'time is of the essence' nature of this type of financing, we would not require this
or any debtor to contact a seemingly infinite number of possible lenders.  We do,
however, require the debtor *to make an effort* to carry the burden established in
Section 364(d)." Id. at 332.

The Reading Tube Court noted that courts have found between 2 and 20 attempts may be

sufficient under the particular circumstances of each case, even though it found one attempt

was not sufficient.

The Reading Tube Court found:

"The first prong requires the debtor to demonstrate that less onerous post-petition
financing was unavailable." Id. at 332.

The Court in Defender Drug Stores, Inc., 126 B.R. 76 (Bkrtcy D. Arizona 1991)

recognized the natural reluctance of lenders to extend credit to a company in bankruptcy and

noted:

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-13-

Reinhart.g/M-Borrow

"...Congress designed §364 to provide 'incentives to the creditor to extend
post-petition credit." Id at 81 [Citation Omitted.]

In Matter of Stanley Hotel, Inc., 15 B.R. 660, 663 (D. Colo. 1981) the District Court

affirmed a Bankruptcy Court's order approving senior secured financing under §364(d)(1).  The

Court held that §364(d)(1)(A) was satisfied where at least two banks had "refused to grant

unsecured loans."  Moreover, that the estate may have been able to obtain a small unsecured

loan did not indicate that the estate could have obtained a sufficient loan amount at issue

without granting a senior lien.

The case here is similar.  Pre-petition Debtor attempted unsuccessfully to obtain funding

sufficient to finance completion of construction or to refinance existing liens.  Debtor was facing

foreclosure of the Property by the first trust deed holder when it filed this bankruptcy case.

Post-petition Debtor has attempted to obtain financing and has only found ONE source willing

to lend  on any reasonable terms—the instant Loan.

Without the proposed financing Debtor likely will lose the Property to foreclosure.  If this

happens, it is also likely only CBC will be paid therefrom (and it may credit-bid less than it's

owed on its 1st position deed of trust, and thus generate a large general unsecured claim for its

2nd position deed of trust debt).  On the contrary, if Debtor can complete construction of the

Residence and sell it and/or the Property, all secured creditors will be paid, and general

unsecured and other secured creditors will benefit from the Estate's equity.

Courts generally require evidence that the Debtor has contacted two to four potential

lenders in order to satisfy §364(d)(1)(A).   The Court in In re: Sky Valley, Inc., 100 B.R. 107

(Bkrtcy ND GA 1988) held:

"Anchor Bank argues that Debtor has failed to show that it 'is unable to obtain
such credit otherwise' because Debtor approached only 3 other lenders.
Anchor Bank argues that Debtor's search for lenders must be much more

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Reinhart.g/M-Borrow

exhaustive in order to meet the standard required in §364(d)(1)(A).  Anchor Bank relies on the case of *In re Beker Industries, Corp.* [citation omitted] in which the debtor unsuccessfully approached 35-40 lenders prepetition and approximately 20 lenders post-petition.

"In the instant case, however, it would be unrealistic and unnecessary to require Debtor to conduct such an exhaustive search for financing.  Debtor's property is a resort complex valued at approximately $10.5 to $12 million and is located in the North Georgia mountains.  By the nature of the instant proceeding, it is clear that Debtor suffers some financial stress and has little or no unencumbered property.  In such a circumstance, a potentially interested lender is likely either; (a) to hold a pre-petition security interest in Debtor's property and thus, is already at risk; or (b) to do business in the community surrounding the resort and, thus, is interested in preserving community land values by preserving Debtor's resort….In the instant case, Debtor approached both pools of potential lenders unsuccessfully, excepting the proposed offer from Bank South now before the court.  Therefore, this court finds Debtor is unable to obtain credit otherwise." Id at 113. [citations omitted.]

Here, Debtor approached more than 10 lenders pre-petition and post-petition seeking takeout or construction financing.  Debtor was unsuccessful, but for Lender. Debtor has no meaningful unencumbered property to use as collateral for a loan and only by offering a senior lien can Debtor obtain funds in an amount sufficient to complete the work on the Residence.

Debtor has met its burden of proof of the first prong of §364(d)(a)(A) that it is "unable to obtain credit otherwise".

B.    Secured Creditors Are Adequately Protected

The second prong of 11 U.S.C. §364(d)(1) requires a debtor to show that the interests of the holders of  existing liens on the property are adequately protected.

As noted above Debtor has an ample equity cushion in the Property.  After giving Lender a super-priority lien, all remaining lienholders are protected by an equity cushion of $495,000 or more: i.e.,  between approximately 39.05% loan to value [mechanic's lienholder, $2.813 MM/$4.615MM] to 39.55% [Main St, $2.79 MM/$4.615MM] to 48.8% [CBC, 2nd, $2.365

-15-

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

MM/$4.615MM], to 58.83% [CBC, 1st, $1.9/$4,615MM] , based on an 'as is' as-completed

value of $4,615,000.   The Court in In re: Sky Valley, Inc., supra. found:

> "In the case of *In re Dunes Casino Hotel*, 69 B.R. 784 (Bankr D.N.J. 1986), the
> court found an equity cushion, based on a debt of approximately $17.5 million
> and collateral valued at a minimum of $26.2 million was alone adequate
> protection, especially in view of the relatively small amount, approximately $700,000,of
> the superpriority load the debtor sought." Id. at 114.

Debtor has met its burden of demonstrating that secured creditors are now and, after

the new Loan, will be adequately protected.

## THE TERMS OF THE TRANSACTION(S) ARE FAIR AND REASONABLE

The Debtor further submits that a loan is necessary to preserve the assets of the estate;

and the terms of the both of the proposed transactions are fair, reasonable and adequate,

given the circumstances of the Debtor/borrower and the proposed Lender.

The financing proposed herein is the result of a significant amount of determined effort

by the Debtor and it represents the most favorable financing currently available    Debtor

believes that the proposed secured financing is necessary to preserve the assets of the estate,

and that the terms of the transaction are fair and reasonable.

## LENDER IS ENTITLED TO A FINDING UNDER SECTION 364(e)

Section 364(e) provides entities that extend credit in good faith are entitled to certain

protections as follows:

> "(e) The reversal or modification on appeal of an authorization under this
> section to obtain credit or incur debt, or of a grant under this section of
> a priority or a lien, does not affect the validity of any debt so incurred, or
> any priority or lien so granted, to an entity that extended such credit in
> good faith, whether or not such entity knew of the pendency of the appeal,
> unless such authorization and the incurring of such debt, or the granting
> of such priority or lien, were stayed pending appeal."

Reinhart.g/M-Borrow

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

The purpose of 364(e) is to overcome a good faith lender's reluctance to extend financing in a bankruptcy context by permitting reliance on a bankruptcy judge's authorization. In re: Cooper Commons, LLC, 430 f.3d 1215 (9th Cir. 2005) citing Matter of EDC Holding Company, 676 F.2d 945, 947 (7th Cir. 1982).

As set forth in In re: Adams Apple, Inc.,829 F.2d 1484 (9th Cir. 1987):

"The Bankruptcy Code does not provide a definition of good faith.  Nonetheless, we have held in the context of foreclosure sales that to determine good faith we look to the integrity of an actor's conduct during the proceedings.  Misconduct defeating good faith includes 'fraud, collusion… or an attempt to take grossly unfair advantage of other[s]'  A creditor fails to act in good faith if it acts for an improper purpose.  Knowledge of the illegality of a transaction also defeats good faith."  Id. at 1489 [Citations omitted.]

Here there has been no fraud, collusion nor an attempt to take unfair advantage of others. The Loan was negotiated at arms length and in good faith.  Although Lender arguably is insider of the Debtor and a pre-petition creditor, those facts seem irrelevant.  Therefore, the proposed financing option constitutes a good faith transaction in accordance with 11 U.S.C. §364(e).

## THE COURT SHOULD AUTHORIZE DEBTOR TO USE THE LOAN PROCEEDS TO COMPLETE AND MAINTAIN THE PROPERTY AND/OR RESIDENCE

Section 363(c)(1) provides:

"If the business of the debtor is authorized to be operated…and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."

Debtor's proposed use of the funds here is not outside the ordinary course of Debtor's business.  Debtor's business as to this Property was and is to purchase it, build a Residence on that Property, and put the Residence and/or Property, or both, up for sale.  Here, Debtor

Reinhart.g/M-Borrow

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

proposes to use the bulk of then funds from the Loan to accomplish this business purpose; i.e. complete the work on the Property and Residence, put it/them up for sale and sell it/them. Other than for the costs associated with the Loan, and real estate taxes and insuarnec and subdivision fees/costs, Debtor does not propose to use the proceeds of the Loan for any other purpose.

Pursuant to the terms offered by Lender the net proceeds of the Loan will be distributed to Debtor to complete the Residence and/or for the benefit of the Property or the Residence.

## THE ORDER SHOULD BE EFFECTIVE IMMEDIATELY UPON ENTRY

The Bankruptcy Rules provide that limited categories of orders are subject to an automatic fourteen day stay unless the court orders otherwise. Orders outside specific categories are not subject to a stay, and are effective immediately upon entry. The Court in In re: Hill, 305 B.R. 100 (Bkrtcy M.D. Florida 2003) stated:

> "The Debtor filed a Motion to Alter or Amend within ten days of the entry of the Order of Dismissal. He seeks a determination of the Court that Fed.R.Civ.P. 629a) ("Rule 62") applies to stay the effect of this Order. Rule 62 provides that, except in certain receivership, patent and injunction cases, "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry". Bankruptcy Rule 7062 applies Rule 62 to adversary proceedings. Prior to the 1999 amendments to the Federal Bankruptcy Rules of Procedure, rule 62 applied to both adversaries and contested matters alike, with some specific exceptions. The Editor's Comment to Bankruptcy Rule 7062 states:
>
> 'Effective December 1 1999, the Rules were amended to delete these exceptions from Rule 7062 and to amend Rule 9014 to delete the application of Rule 7062 from contested matters. Certain contested matters were deemed to need the ten day stay, however, and thus the following Rules were amended to include such a stay: 3020(e) (Chapter 11 confirmation), 4001(a)(3) (relief from stay), 6004(g) (use, sale or lease of property, other than cash collateral) and 6006(d) (assignment of executory contracts). Otherwise Rule 62 only applies only [sic] to adversary proceedings unless the court orders differently.'" Id. at 245.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-18-

Reinhart.g/M-Borrow

Debtor is losing "daylight" time to build and to list the Residence and Property for sale, and submits there should be no  stay applicable to any Order entered on this Motion.

<u>THE COURT SHOULD AUTHORIZE THE PAYMENT OF
REASONABLE LOAN COSTS ASSOCIATED WITH THE LOAN</u>

Debtor submits that the allowance and payment of these fees and costs is reasonable and allowable under 11 U.S.C. §503(b).

<u>CONCLUSION</u>

Based on the foregoing Debtor requests that the Court enter an order (1) Approving Secured Financing Pursuant to Section 364(d) and approving the loan proposal of Lender; (2) Determining Good Faith finding; (3) Finding 11 U.S.C. §363(e) Applies; (4) Authorizing Debtor's use of the Funds; (5) Authorizing Reasonable Loan Costs and Loan Fees.

DATE:  01/19/2011                              PAGTER AND MILLER


                                               _/s/ R. GIBSON PAGTER, JR.
_                                              R. GIBSON PAGTER, JR.
                                               Attorneys for Debtor

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Reinhart.g/M-Borrow                            -19-

## DECLARATION OF CARL H. REINHART

I, Carl H Reinhart, declare:

1.      I am the Debtor and Debtor-in-Possession in the above-entitled case.  The facts contained herein are true and correct and of my personal knowledge.  I am a skilled commercial real estate broker with 24 years of full-time experience in this field.  In approximately the past three years, I have been the real estate broker and/or agent in the sale of numerous commercial properties and residential houses in various communities including, but not limited to, Orange, Lake Forest, Costa Mesa, Huntington Beach, Norco, Newport Beach, and Ontario, California.  I also have been the real estate broker and/or agent in the leasing of numerous  commercial properties in communities including, but not limited to Rancho Santa Margarita, Anaheim, Irvine and Ontario, California.   I have been a managing member of LLCs that have renovated apartment buildings and other residential properties, and also obtained entitlements to build residential properties.

2.      I commenced the instant voluntary Chapter 11 case on 7/7/2009 ("Petition Date").

3.      My bankruptcy estate is/I am the owner of real property located at 14311 Ladd Canyon, Silverado CA ("LADD"), a 92-acre **undivided** parcel ("Property") on which a large home ("Residence") is currently under construction but nearly complete.    On the Petition Date the Residence on Property was approximately 70% complete, but is now 80% complete. I propose to borrow $1,200,000, an amount I have concluded is sufficient to complete the Residence and related infrastructure so it and the Property can be put into a saleable position. Attached hereto as Exhibit 1 is a true and correct copy of a loan commitment I have received from George Helland, my sister's friend who also loaned me $35,000 immediately pre-petition on a 4th position deed of trust basis against Ladd so I could hire counsel herein ("Lender"). The

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Reinhart.g/M-Borrow

basic terms and conditions of the Loan are set forth in this document.   I seek to complete

construction of the Residence and pave the access road to it, at an estimated cost of

$854,155, and to use the loan proceeds to cure all delinquent real estate taxes and to keep

them current going forward, to continue my work to subdivide the Property,  and to keep all

insurance on the Property current as well. Attached hereto as Exhibit 2 is a true and correct

copy of my proposed contractor's current letter of intent to build and the costs to do so. The

Property currently is encumbered by liens totaling approximately $2,500,000. Exhibit 3 is a true

and correct copy of a preliminary title report I obtained in May 2010 that lists all known trust

deeds or Mechanics Liens secured against the Property.

　　　4.　　　Based upon my experience in projects under construction, and my familiarity with

the condition of the residence and Property at issue here,  I anticipate completion of the work

on the Residence and the Property that will bring it to a marketable phase will require

approximately 60 days, at a cost of $50,000, but to bring the Residence to 100% completion

will require 12 months and $854,155, to result in a Certificate of Occupancy from the County of

Orange, immediately thereafter.

5.　　The Property is encumbered by the following voluntary and involuntary liens:

VOLUNTARY LIENS

| Position | Name | Amount Owed (Debtor's est. as of 1/19/11) | Recording Date |
|---|---|---|---|
| 1st deed of trust | Comml Bank CA ("CBC") | $1,900,000[3] | 12/8/05 |
| 2nd  deed of trust | CBC | $ 465,000 | 6/11/07 |
| 3rd deed of trust | Main Street, LLC | $ 425,000 | 7/20/07 |

---

[3] I have used CBC's account statements, dated 12/17/10, to estimate this sum, and the sum owed on its 2nd position deed of trust.

Reinhart.g/M-Borrow

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

| 4th deed of trust | George Helland | $ 37,000 | 7/09/09 |
|---|---|---|---|

Sub-Total                              $2,827,000

Copies of the deeds of trust are on file herein as exhibits to the Bank's Motion for Relief From Stay filed herein as Docket No. 39, filed herein on 01/19/2010.

MECHANICS LIENS/Real Property Tax Liens

| Name | Approx. Amount Owed | Lien Date |
|---|---|---|
| Martin Vellandi | $ 23,000 | 4/9/09 |
| Orange County Real Property Taxes | $ 70,000 | Pre and Post-bankruptcy |
| Sub-Total | $ 93,000 | |

LIEN TOTAL      $2,920,000

A copy of the Mechanic's Lien and evidence of the County's tax liens are available from the Clerk's Office, as Claim No. 22 filed by Vellandi on 08/30/2009 and as Claim No. 24 filed by Vellandi on 09/21/2009.

8.      Both before and after filing this case, with no less than 10 possible lenders including CBC, I attempted unsuccessfully either to obtain a new loan to replace the existing CBC loans, or to obtain new financing to complete construction of the Residence on the Property.  None of the potential lenders ever offered to loan money to me to do so.  I called several institutional lenders, but as the nationwide credit-crunch has taken hold, all such lenders told me not even to apply. The only lender willing to finance me is George Helland.

9.      I bought the Property and now intend to build the Residence on it, and to sell it and any subdivisible parcels thereon upon completion.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Reinhart.g/M-Borrow

10.     I seek to borrow up to $1,200,000 ("Loan") and use the money to: (a) pay all prepetition and postpetition real estate taxes secured on LADD; (b) pays the costs to obtain the Loan; (c) pay ongoing real estate taxes and insurance for the Property; and (d) complete construction of the Residence on the Property, and fund the fees/costs to subdivide the Property.  All Loan proceeds will be controlled by the Lender, arguably like a typical construction loan or line of credit.

11.     Once the Residence has been completed to a saleable state, which I estimate will require the expenditure of approximately $50,000 (to complete the roof and entry steps, and to install garage and other doors) over 60 days, I will market the Property for sale.  If the Residence is sold prior to my drawing upon the available loan proceeds, such that no further draw is needed, I will cease such draws, and thus only borrow what is minimally needed to sell the Property or, if the Property has been subdivided, sell either the Residence and the remainder raw land, or both.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 01/19/11 at Orange County, California.

CARL REINHART

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana CA
92701
(714) 541-6072

Reinhart.g/M-Borrow

-23-

## DECLARATION OF R. GIBSON PAGTER, JR.

I, R. Gibson Pagter, Jr., declare:

1.      I am an attorney licensed to practice before this Court.  I am a shareholder of Pagter and Miller, attorneys of record for Debtor in the above-entitled matter.  The facts contained herein are true and correct and of my personal knowledge.

2.      I have been involved with Debtor in attempting to obtain new funding and in negotiating the loan proposed here.  I have been involved in Debtor's financing attempts both before and after the bankruptcy was filed, including a meeting with CBC's senior lending personnel at its office just before the Petition Date.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on 01/19/2011 at Santa Ana, California.


  /s/    R. GIBSON PAGTER
R. GIBSON PAGTER, JR.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

Reinhart.g/M-Borrow

-24-

## DECLARATION OF GEORGE HELLAND

I, George Helland, declare:

1.      I am over 18 years of age and the long time friend of Carl H Reinhart's sister.. The facts contained herein are true and correct and of my personal knowledge. I have read the foregoing Motion and know its contents.

2.      In order to assist CARL in filing the instant bankruptcy case, I loaned him $35,000 on a 4th position basis secured upon LADD.

3.      I am willing and able, subject to final approval from my own lenders which I anticipate to be forthcoming immediately after this Court approves the proposed Loan,  to loan Carl H Reinhart /his bankruptcy estate the sum of $1,200,000. Attached hereto as Exhibit 1 is a true and correct copy of my loan commitment to do so.

4.      I understand Carl intends to use the money to: (a) pay all prepetition and postpetition real estate taxes secured on LADD; (b) pays my costs to obtain the Loan, estimated to be $101,295 for a loan origination fee, plus $30,000 for the 1.6 points and related fees I will incur to fund the loan; (c) pay ongoing real estate taxes and insurance for the Property; and (d) pay $854,155 to complete construction of the Residence on the Property, and fund the fees/costs to subdivide the Property.  I will control all Loan proceeds, arguably like a typical construction loan or line of credit. By my calculations, my origination fee would be 1.75% of $1.2MM = $21,000, and prepaid interest would be ($1.2MM x $.0564/18 months =) $101,520. I also estimate my escrow and legal fees, and title insurance and other normal fees for real estate loans will be $15,000.  Based upon

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-25-

Reinhart.g/M-Borrow

my review of the County's real estate tax claim, I estimate its ongoing real estate taxes would be $30,000 for 18 months, while insurance for the Property would be $29,000 for 18 months (based upon the current premium rate). By my calculations, here is how the Loan Proceeds would be disbursed, if the Loan is fully drawn:

|  | | |
|---|---|---|
| $1,200,000 | | |
| - | $ 101,520 | Prepaid interest |
| - | $ 21,000 | origination fee |
| - | $ 70,000 | real estate taxes (pre and post bankruptcy) |
| - | $ 15,000 | my title, escrow, legal, and misc fees/costs |
| - | $ 29,000 | post-closing insurance on Property |
| - | $ 30,000 | post-closing real estate taxes |
| - | $ 25,000 | post-closing fees/costs for subdivision work |
| - | $ 854,155 | cost to construct Residence |

REMAINDER/Contingency:  $54,325.

5.     I understand that once the Residence has been completed to a saleable state, which Carl estimates will require the expenditure of approximately $50,000 (to complete the roof and entry steps, and install garage and other doors) over 60 days, he will market the Property for sale.  If the Residence or a part of Property can be sold prior to Carl's drawing upon the available loan proceeds, such that no further draw is needed, he will cease such draws and I will cease funding them.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on 01/19/2011 in California.

GEORGE HELLAND

**GEORGE HELLAND**
2626 29TH Street
San Diego, California 92104
619-283-3139

January 18, 2011

Mr. Carl H. Reinhart
Post Office Box 4476
Irvine, CA  92616

**RE: Commitment for Loan Secured by Property at 14311 Ladd Canyon Road,
Silverado, CA.**

Dear Carl:

This letter pertains to our discussions regarding my providing a loan to you for the
completion of the residence located at 14311 Ladd Canyon Road, Silverado, CA, APN
105-051-11, (the "Property.")    I have inspected the property, reviewed valuations of the
property, and I am prepared to provide a loan to you on the following terms:

1) The Lender will be George Helland.
2) The amount of the loan will be $1,200,000.
3) The loan will be secured by a first deed of trust on the above property.
   The existing liens on the Property may continue to exist on a subordinated
   basis.
4) There will be an origination fee equal to one and three-quarters of one
   percent (1.75%) of the above loan amount.
5) The Borrower will pay the costs of escrow, title insurance, legal, and other
   normal fees associated with my making of the above loan.  Such costs will
   be paid from the Borrower's loan proceeds, concurrent with initial
   funding.
6) The loan will bear interest on the entire loan amount, payable interest
   only, at an annual rate of 5.64% percent per annum.  The Maturity Date,
   unless extended as provided below, is to be eighteen months from the date
   of initial funding by Lender.  Interest only payments will be due monthly
   and an amount equal to the interest due for the full term of the loan will be
   held by the lender in an account (the "Reserve Account") upon loan
   closing.   Interest payments will be drawn from the Reserve Account by
   the lender on a monthly basis, in arrears.
7) The loan shall have an initial term of eighteen (18) months.  Borrower
   shall have an option (the "Option,") providing he is not in default under
   the Loan at the date of exercise of the Option, to extend the Maturity Date
   for an additional six months.  In the event that Borrower elects to exercise
   the Option, Borrower shall so notify Lender in writing at least thirty days
   prior to the then-scheduled Maturity Date. In the event that the Borrower

EXHIBIT 1
Page 27

Mr. Carl H. Reinhart
January 18, 2011, Page 2
14311 Ladd Canyon Road Loan

exercises the Option, the Lender shall debit the Loan account in the amount of $6,000 as an Extension Fee, and from the remaining

8)   undisbursed loan proceeds, shall increase the balance of the Reserve Account accordingly. There will be no penalty for early payoff of the loan–i. e., no prepayment penalty.

9)   Borrower has delivered to Lender a detailed budget for completion of construction at the Property (the "Budget.") The Budget specifies line items for all remaining construction and related costs, including, but not limited to required property taxes and insurance premiums. Upon closing of the loan escrow, loan proceeds will be held by the lender in a reserve account at a federally-insured financial institution selected by Lender and disbursed directly by Lender to contractors, subcontractors and vendor and other bonafide payees in amounts not to exceed line items scheduled in the Budget, except that, Lender, at its sole discretion, and upon request from Borrower, may elect to approve modifications to budgeted line items. Borrower's acceptance of the Loan is contingent on approval of the U.S. Bankruptcy Court. The Lender is to fund the Loan within sixty (60) days of the above approval.

10)   Upon completion of the term of the loan or upon default under the terms of the note, Borrower agrees not to contest foreclosure which Lender will have the right to pursue.

11)   Borrower agrees to contract with a general contractor licensed by the state of California for the performance of construction work specified in the Budget.

The terms offered above are valid for 45 days from the date of this letter. Thereafter, the rate and pricing is subject to change based on my cost of funds.

Call me if you have questions.

Very truly yours,

George Helland

EXHIBIT 1
Page 28

# MICHAEL McDONALD

## GENERAL CONTRACTOR
### CUSTOM HOMES & REMODELS
Lic.# B405218

January 18, 2011

Mr. Carl H. Reinhart
Post Office Box 4476
Irvine, CA 92616

Dear Mr. Reinhart:

Thank you for the opportunity to make a presentation to you and your associates for my firm to complete the construction of your single-family home located at 14311 Ladd Canyon Road, Silverado, California. The home has a truly outstanding design and is situated on an exceptional site, and I would welcome the opportunity to complete it for you.

I have now met with you and your associates on several occasions to discuss the plans and design concept. I have inspected the existing physical condition of the house with a licensed architect and on multiple occasions with potential sub-contractors. I have also met at the property with an inspector from the County of Orange Building Department so that I have a clear understanding of the construction that has been completed as well as the scope of the remaining construction. As a result, I have great confidence that my enclosed projected budget for the completion of the house is accurate and achievable.

If you elect to contract with me for my firm to complete the construction of the house, I am prepared to commence such construction within thirty days of the execution of a contract, and I can likely begin some of the preliminary work prior to the above thirty days. I understand that you are in the process of obtaining additional financing for the remaining construction, and that any agreement is subject to your approval of the agreement and obtaining the financing.

I look forward to the opportunity to work with you in the completion of the above project.

Sincerely,

Michael McDonald

| Project: | Reinhart/Nichols Residence | | | | | |
| | 14311 Ladd Canyon | | | | | |
| | Silverado Canyon, CA | | | | | |
| Phone # | | | | | | |
| | | | | | | |
| | | **Cost to Complete** | | | | |
| | | | | | | |
| Description | | Cost | | | | Cost to Complete |
| | | | | | | |
| **Permits/ inspection fees** | allowance | $3,000.00 | | | | $3,000.00 |
| | | | | | | |
| **Geo or soil reports** | allowance | $3,000.00 | | | | $3,000.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **Septic tank to house poc** | | $1,000.00 | | | | $1,000.00 |
| | | | | | | |
| | | | | | | |
| **Portable toilet** | | $800.00 | | | | $800.00 |
| | | | | | | |
| **Grading/excavation, landscape allowance** | | $35,000.00 | | | | $35,000.00 |
| | | | | | | |
| | | | | | | |
| **Dumpster and haul away** | | $3,000.00 | | | | $3,000.00 |
| | | | $45,800.00 | | | |
| | | | | | | |
| **Concrete** | Driveway 800 sf allowance | $10,000.00 | | | | $10,000.00 |
| **Concrete** | landings | $2,000.00 | | | | $2,000.00 |
| **Concrete** | front steps allowance | $5,000.00 | | | | $5,000.00 |
| | | | $17,000.00 | | | |
| | | | | | | |
| **Asphalt from gate to house** | | $20,000.00 | | | | $20,000.00 |
| **Asphalt from gate to existing end of road** | | $80,000.00 | | | | $80,000.00 |
| | | | $100,000 | | | |
| **Lumber Rough** | Material allowance | $5,000.00 | | | | $5,000.00 |
| | | | | | | |
| | | | | | | |
| **Carpentry Rough** | Pick up work allowance | $10,000.00 | | | | $10,000.00 |
| | | | | | | |
| **Siding & trim** | Installation | $10,000.00 | | | | $10,000.00 |
| **Hardware Rough** | Material allowance | $1,000.00 | | | | $1,000.00 |
| | | | $26,000.00 | | | |

EXHIBIT 2
Page 30

| Description | | Cost | | | Cost to Complete |
|---|---|---|---|---|---|
| Doors | Knotty alder | $5,000.00 | | | $5,000.00 |
| Entry door | installation | $1,000.00 | | | $1,000.00 |
| Finish Material | baseboard and casing | $7,500.00 | | | $7,500.00 |
| | | | | | |
| Carpentry Finish | doors and trim labor | $28,000.00 | | | $28,000.00 |
| | | | | | |
| | | | | | |
| Door hardware | allowance | $5,000.00 | | | $5,000.00 |
| Bath hardware | allowance | $3,000.00 | | | $3,000.00 |
| Cabinet Hardware | allowance | $2,000.00 | | | $2,000.00 |
| | | | $51,500.00 | | |
| | | | | | |
| Skylights | installation in roofing | | | | |
| Window repairs | allowance | $5,000.00 | | | $5,000.00 |
| | | | $5,000.00 | | |
| | | | | | |
| | | | | | |
| Plumbing Rough | Repairs | $4,000.00 | | | $4,000.00 |
| Plumbing Rough | water main to house poc | $3,500.00 | | | $3,500.00 |
| Plumbing Rough | fire water tank | $8,000.00 | | | $8,000.00 |
| Plumbing Rough | Domestic tank | $5,000.00 | | | $5,000.00 |
| Fire Sprinklers | per plan original contract | $9,000.00 | | | $9,000.00 |
| | | | $29,500.00 | | |
| | | | | | |
| Hot mop showers | | $1,000.00 | | | $1,000.00 |
| | | | $1,000.00 | | |
| Electrical | Per plans | $15,000.00 | | | $15,000.00 |
| Electrical | Main panel | $3,800.00 | | | $3,800.00 |
| Electrical | Audio video | $10,000.00 | | | $10,000.00 |
| Electrical | Underground utilities | $25,000.00 | | | $25,000.00 |
| | | | | | |
| | | | | | |
| Electrical | Fixtures | $10,000.00 | | | $10,000.00 |
| | | | $63,800.00 | | |
| | | | | | |
| HVAC | 2, 5Ton 100KBTU furnaces | $21,580.00 | | | $21,580.00 |
| | | | | | |
| | | | | | |
| Sheet Metal | flashing misc. | $500.00 | | | $500.00 |
| Sheet Metal | Hood vent installation | $600.00 | | | $600.00 |
| Sheet Metal | Bathrooms, dryer | $1,200.00 | | | $1,200.00 |
| | | | | | |
| | | | | | |
| Roofing | labor | $12,000.00 | | | $12,000.00 |
| Roofing | caulking, screws, felt, misc. | $5,000.00 | | | $5,000.00 |
| | | | | | |
| Stone Decking | | $10,000.00 | | | $10,000.00 |
| Waterproof decks | | $5,000.00 | | | $5,000.00 |
| | | | | | |
| Insulation | Title-24 | $4,795.00 | | | $4,795.00 |
| Insulation | Interior walls/ceilings | $1,500.00 | | | $1,500.00 |
| | | | | | |
| Stone veneer | Fireplace facing interior | $7,500.00 | | | $7,500.00 |

EXHIBIT 2
Page 31

| Description | | Cost | | | Cost to Complete |
|---|---|---|---|---|---|
| Stone veneer | Fireplace facing interior | $3,000.00 | | | $3,000.00 |
| Stone veneer | entry stairway allowance | $10,000.00 | | | $10,000.00 |
| | | | | | |
| Drywall | | $32,270.00 | | | $32,270.00 |
| Interior Wood Paneling | | $10,000.00 | | | $10,000.00 |
| | | | | | |
| | | | | | |
| Raingutters | | $5,000.00 | | | $5,000.00 |
| | | | | | |
| Dumbwaiter | | $6,000.00 | | | $6,000.00 |
| | | | | | |
| Stairway railings | interior allowance | $1,000.00 | | | $1,000.00 |
| | | | | | |
| Painting | interior | $20,000.00 | | | $20,000.00 |
| Painting | exterior | $16,800.00 | | | $16,800.00 |
| Painting | cabinets | $5,000.00 | | | $5,000.00 |
| | | | $178,745.00 | | |
| Tile and stone | | | | | |
| Kitchen counter | slab allowance | $4,088.00 | | | $4,088.00 |
| Kitchen counter | fabrication,mitered apron | $7,429.00 | | | $7,429.00 |
| Kitchen counter | backsplash labor | $2,200.00 | | | $2,200.00 |
| Kitchen counter | sealer | $275.00 | | | $275.00 |
| Laundry room counter | slab allowance incl. | $0.00 | | | $0.00 |
| Laundry room counter | fabrication, bullnose | $410.00 | | | $410.00 |
| Bath 1 counter | slab allowance incl. | $0.00 | | | $0.00 |
| Bath 1 counter | fabrication, bullnose | $791.00 | | | $791.00 |
| Bath 1 counter | backsplash incl. | $0.00 | | | $0.00 |
| Bath 1 tub surround | tile labor | $4,410.00 | | | $4,410.00 |
| Bath 1 floor | tile labor | $945.00 | | | $945.00 |
| Bath 2 counter | slab allowance incl. | $0.00 | | | $0.00 |
| Bath 2 counter | fabrication, bullnose | $663.00 | | | $663.00 |
| Bath 2 counter | backsplash | $0.00 | | | $0.00 |
| Bath 2 shower | tile labor | $5,130.00 | | | $5,130.00 |
| Bath 2 floor | tile labor | $750.00 | | | $750.00 |
| Master bath counters | slab allowance | $818.00 | | | $818.00 |
| Master bath counters | fabrication | $1,373.00 | | | $1,373.00 |
| Master bath counters | backsplash incl. | $0.00 | | | $0.00 |
| Master bath shower | tile labor | $6,795.00 | | | $6,795.00 |
| Master bath tub deck | slab allowance | $818.00 | | | $818.00 |
| Master bath tub deck | fabrication, bullnose | $1,377.00 | | | $1,377.00 |
| Master bath tub deck | riser and splash tile labor | $2,500.00 | | | $2,500.00 |
| Master bath floor | tile labor | $1,290.00 | | | $1,290.00 |
| 2nd level master deck | stone installation | $3,000.00 | | | $3,000.00 |
| 2nd level back deck | stone installation | $2,500.00 | | | $2,500.00 |
| Entry | stone installation | $8,240.00 | | | $8,240.00 |
| Front porch | stone installation | $3,000.00 | | | $3,000.00 |
| Porch BR 1 | stone installation | $3,000.00 | | | $3,000.00 |
| Back porches main level | stone installation | $6,000.00 | | | $6,000.00 |
| | | | | | |
| Lower level hall/steps | tile labor | $1,650.00 | | | $1,650.00 |
| | | | | | |
| | | | | | |
| Stone material | allowance | $20,000.00 | | | $20,000.00 |
| Total | | | $89,452.00 | | |

EXHIBIT 2
Page 32

| Description | | Cost | | | Cost to Complete |
|---|---|---|---|---|---|
| Cabinets | | | | | |
| Kitchen | Knotty alder | $22,750.00 | | | $22,750.00 |
| Bath 1 | Knotty alder | $1,975.00 | | | $1,975.00 |
| Bath 2 | Knotty alder | $1,175.00 | | | $1,175.00 |
| Master Bath | Knotty alder | $5,475.00 | | | $5,475.00 |
| | | | | | |
| Laundry room | Knotty alder | $2,500.00 | | | $2,500.00 |
| | | | $33,875.00 | | |
| Fireplace | Family room | $2,500.00 | | | $2,500.00 |
| Fireplace | Great room | $2,500.00 | | | $2,500.00 |
| | | | $5,000.00 | | |
| | | | | | |
| | | | | | |
| Mirrors | | $3,000.00 | | | $3,000.00 |
| | | | | | |
| Bath 1 shower door | | $1,200.00 | | | $1,200.00 |
| Bath 2 shower door | | $1,000.00 | | | $1,000.00 |
| Master bath shower door | | $950.00 | | | $950.00 |
| | | | $6,150.00 | | |
| Deck railings | exterior allowance | $4,000.00 | | | $4,000.00 |
| | | | $4,000.00 | | |
| Garage Door | 3 doors allowance | $12,000.00 | | | $12,000.00 |
| Garage Door | 3 coats sikkens finish | $1,600.00 | | | $1,600.00 |
| | | | $13,600.00 | | |
| Wood floor kitchen, great room, dining, porch | | $21,533.00 | | | $21,533.00 |
| | | | | | |
| Carpet BR 1, BR2, Master, FR | | $14,500.00 | | | $14,500.00 |
| | | | $36,033.00 | | |
| Appliances | | $5,000.00 | | | $5,000.00 |
| Appliance installation | | $1,200.00 | | | $1,200.00 |
| | | | $6,200.00 | | |
| Site Clean Up | | $5,000.00 | | | $5,000.00 |
| | | | | | |
| Sand bags/plastic etc. | | $3,000.00 | | | $3,000.00 |
| | | | | | |
| Final Cleaning | | $3,500.00 | | | $3,500.00 |
| | | | $11,500.00 | | |
| Contingency | | $30,000.00 | | | $30,000.00 |
| | | | | | |
| Contractor Fee (Overhead and profit) | | $100,000.00 | | | $100,000.00 |
| | | | $130,000.00 | | |
| | | | | | |
| Total proposed contract amount | | $854,155.00 | $854,155.00 | | $854,155.00 |

EXHIBIT 2
Page 33



**Stewart Title of California, Inc**
2010 Main Street, Suite 250
Irvine, CA 92614
(949) 476-0777  Phone

# PRELIMINARY REPORT

Order Number       :  269949
Title Unit Number   :  7037

Buyer/Borrower Name:   :
Seller Name:           :  Carl Reinhart

Property Address:  14311 Ladd Canyon Road (Silverado Area), County of Orange, California

In response to the above referenced application for a Policy of Title Insurance, Stewart Title of California, Inc. hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referenced to as an Exception on Schedule B or not excluded from coverage pursuant to the printed Schedules, Conditions, and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on covered Risks of said policy or policies are set forth in Exhibit A attached. The policy to be issued may contain an arbitration clause.  When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.  Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limits of Liability for certain coverages are also set forth in Exhibit A.  Copies of the policy forms should be read. They are available from the office which issued this report.

Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.

It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.

This report, (and any supplements or amendments thereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance a binder or commitment should be requested.

Dated as of: May 19, 2010 at 7:30 a.m.

**Update No. 1**

James Prasch, Title Officer

**When replying, please contact James Prasch, Title Officer**

# PRELIMINARY REPORT

**The form of Policy of Title Insurance contemplated by this report is:**

☐  California Land Title Association Standard Coverage Policy

☐ American Land Title Association Owners Policy

☐ American Land Title Association Residential Title Insurance Policy

☐ American Land Title Association Loan Policy

☒ CLTA/ALTA Homeowners Policy

☐ ALTA Short Form Residential Loan Policy (06/16/07)

☒ 2006 ALTA Loan Policy

# SCHEDULE A

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

A fee as to Parcel(s) 1.  An easement more particularly described below as to Parcel(s) 2.

**Title to said estate or interest at the date hereof is vested in:**

Carl H. Reinhart, a single man, subject to proceedings pending in the bankruptcy court where a petition for relief was filed by Carl H. Reinhart, Debtor, date of filing July 7, 2009, in the United States Bankruptcy Court for the Central District, Case No. 8:09-bk-16774-TA, disclosed by Notice recorded July 7, 2009 as Inst. No. 2009-359195, Official Records.

# LEGAL DESCRIPTION

**The land referred to herein is situated in the State of California, County of Orange, Unincorporated Area, and described as follows:**

PARCEL 1:

BEGINNING AT THE NORTH QUARTER CORNER OF SECTION 8 TOWNSHIP 5 SOUTH, RANGE 7 WEST, SAN BERNARDINO MERIDIAN; THENCE WESTERLY ALONG THE NORTH LINE OF SAID SECTION, 2635.05 FEET TO THE NORTHWEST CORNER THEREOF; THENCE SOUTH 0 DEGREES 10' EAST ALONG THE WEST LINE OF SAID SECTION, 1795.3i FEET TO THE NORTHWEST CORNER OF THE LAND DESCRIBED IN THE DEED TO CHARLES R. LINER AND WIFE, RECORDED JUNE 5, 1941 IN BOOK 1099, PAGE 11 OF OFFICIAL RECORDS OF SAID ORANGE COUNTY; THENCE SOUTH 79 DEGREES 35' 30" EAST ALONG THE NORTHERLY LINE OF SAID LAND; 1019.77 FEET TO THE SOUTHWEST CORNER OF THE LAND DESCRIBED IN THE DEED TO HOWARD G. GEISSLER AND WIFE, RECORDED MAY 15, 1957 IN BOOK 3908, PAGE 261 OF OFFICIAL RECORDS; THENCE ALONG THE BOUNDARY OF SAID GEISSLER LAND, NORTH 5 DEGREES 54' 48" EAST 281.10 FEET AND SOUTH 79 DEGREES 35' 30" EAST 148.70 FEET TO THE SOUTHWEST CORNER OF THE LAND DESCRIBED IN THE DEED TO CHARLES E. JOHNSON AND WIFE, RECORDED AUGUST 23, 1955 IN BOOK 3184, PAGE 216 OF SAID OFFICIAL RECORDS; THENCE ALONG THE BOUNDARY OF SAID LAST MENTIONED LAND, NORTH 11 DEGREES 05' 50" EAST 151.35 FEET, SOUTH 83 DEGREES 55' 20" EAST 210.13 FEET, AND SOUTH 84 DEGREES 27' 10" EAST 55.24 FEET TO THE NORTHWEST CORNER OF THE LAND DESCRIBED IN THE DEED TO EVERETT L. JOHNSON, RECORDED MAY 20, 1960 IN BOOK 5253, PAGE 253 OF SAID OFFICIAL RECORDS; THENCE ALONG THE NORTHERLY LINE OF SAID LAST MENTIONED LAND, SOUTH 74 DEGREES 57' 00" EAST 149.11 FEET TO THE WESTERLY LINE OF THE LAND DESCRIBED IN THE DEED TO CHESTER C. LYMAN AND WIFE, RECORDED AUGUST 23, 1955 IN BOOK 3184, PAGE 217 OF SAID OFFICIAL RECORDS; THENCE ALONG SAID WESTERLY LINE, NORTH 22 DEGREES 30' 00" EAST 121.19 FEET TO AN ANGLE POINT IN THE WESTERLY BOUNDARY OF THE LAND DESCRIBED IN THE DEED TO SAID LYMAN, RECORDED FEBRUARY 10, 1956 IN BOOK 3393, PAGE 474 OF SAID OFFICIAL RECORDS; THENCE NORTH 5 DEGREES 46' 40" EAST 164.26 FEET TO THE SOUTHWESTERLY LINE OF THE LAND DESCRIBED IN THE DEED TO SAID LYMAN, RECORDED OCTOBER 28, 1959 IN BOOK 4945, PAGE 216 OF SAID OFFICIAL RECORDS; THENCE ALONG THE BOUNDARY OF SAID LAST MENTIONED LAND, THE FOLLOWING COURSES AND DISTANCES: NORTH 70 DEGREES 45' 20" WEST 15.01 FEET; NORTH 21 DEGREES 16' 40" EAST 209.85 FEET; NORTH 12 DEGREES 16' 40" EAST 43.00 FEET; SOUTH 84 DEGREES 33' 20" EAST 239.46 FEET; AND SOUTH 89 DEGREES 27' 50" EAST 343.04 FEET TO THE NORTHWESTERLY CORNER OF THE LAND DESCRIBED IN THE DEED CHARLES E. JOHNSON AND WIFE, RECORDED JANUARY 10, 1957 IN BOOK 3765, PAGE 550 OF SAID OFFICIAL RECORDS; THENCE EASTERLY ALONG THE NORTH LINE OF SAID LAST MENTIONED LAND, 312.21 FEET TO THE EAST LINE OF THE WEST HALF OF SAID SECTION 8; THENCE NORTH ALONG THE SAID EAST LINE, 1149.58 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, ½ OIL, GAS, MINERALS AND HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID LAND, BUT WITHOUT THE RIGHT OF SURFACE ENTRY UPON ALL AND ANY PORTION OF SAID LAND FOR THE PURPOSE OF EXPLORING, BORING, DRILLING, MINING, PROSPECTING, REFINING OR MARKETING SAID SUBSTANCES, AS RESERVED IN DEED RECORDED JANUARY 26, 1979 IN BOOK 13014, PAGE 1494 OF OFFICIAL RECORDS.

File Number: 269949

PARCEL 2:

AN EASEMENT FOR INGRESS AND EGRESS OVER THAT PORTION OF SAID SECTION 8 LYING WITHIN THOSE CERTAIN 30-FOOT STRIPS OF LAND DESCRIBED IN DEEDS RECORDED DECEMBER 14, 1956 IN BOOK 3743, PAGE 435, AND RECORDED MARCH 3, 1958 IN BOOK 4216, PAGE 6, BOTH OF OFFICIAL RECORDS OF SAID ORANGE COUNTY; EXCEPTING THEREFROM THAT PORTION INCLUDED WITHIN THE ABOVE DESCRIBED PARCEL 1.

APN: 105-051-11

(End of Legal Description)

File Number: 269949

# SCHEDULE B

**At the date hereof, exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy or policies would be as follows:**

**Taxes:**

A.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes, to be levied for the fiscal year 2010 – 2011.

B.  General and Special City and/or County taxes, including any personal property taxes and any assessments collected with taxes, for the fiscal year 2009 - 2010:

| | |
|---|---|
| 1st Installment: | $10,198.48 Delinquent |
| Penalty: | $ 1,019.85 |
| 2nd Installment: | $10,198.48 Delinquent |
| Penalty: | $ 1,042.85 |
| Parcel No.: | 105-051-11 |
| Code Area: | 76-168 |

C.  Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2008 - 2009:

Amounts to redeem for the above stated fiscal year (and subsequent years, if any) are:

| | |
|---|---|
| Amount: | $25,488.96 |
| By: | May 31, 2010 |
| Amount: | $25,790.75 |
| By: | June 30, 2010 |

D.  The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California.

E.  Assessments, if any, for Community Facility Districts affecting said land which may exist by virtue of assessment maps or notices filed by said districts.  Said assessments are collected with the County Taxes.

**Exceptions:**

1.  Water rights, claims or title to water in or under said land, whether or not shown by the public records.

2.  Any accrued water or mineral rights, as provided and reserved in the patent of said land, a copy of which was recorded March 28, 1901 in Book 1, Page 189 of Patents in the office of the County recorder of Orange County, California.

3.  Rights of way across the herein described land for ditches, canals and incidental purposes constructed by the authority of the United State, as excepted in the above mentioned patent.

4.  The right to construct, maintain and use a private road over a strip of said land 15 feet in width, together with the right of slopes for cuts and fills beyond the limits of said 15-foot strip, as conveyed

to Henry Pitcher and wife by deeds recorded May 21, 1942 in Book 1148, Page 98 of Official
Records, and August 25, 1953 in Book 2562, Page 422, of Official Records/

5.  An easement for the purpose shown below and rights incidental thereto as set forth in a document:
    Grantee:        Southern California Edison Company
    Purpose:        pole lines
    Recorded:       November 29, 1950 in Book 2108, Page 204, of Official Records

    Said matter affects a portion of said land as more particularly described in said document.

6.  An easement for the purpose shown below and rights incidental thereto as set forth in a document:
    Grantee:        Henry Pitcher and wife
    Purpose:        road
    Recorded:       December 14, 1956 in Book 3743, Page 435, of Official Records

    Said matter affects a portion of said land as more particularly described in said document.

7.  An easement for the purpose shown below and rights incidental thereto as set forth in a document:
    Grantee:        Howard G. Geissler and wife
    Purpose:        installation and maintenance of a pipe line
    Recorded:       May 15, 1957 in Book 3908, Page 261, of Official Records

    Said matter affects a portion of said land as more particularly described in said document.

8.  An easement for the purpose shown below and rights incidental thereto as set forth in a document:
    Grantee:        Chester C. Lyman and wide
    Purpose:        ingress, egress
    Recorded:       March 3, 1958 in Book 4216, Page 6, of Official Records

    Said matter affects a portion of said land as more particularly described in said document.

9.  An easement for the purpose shown below and rights incidental thereto as set forth in a document:
    Grantee:        Chester C. Lyman and wife
    Purpose:        roads
    Recorded:       October 28, 1959 in Book 4945, Page 216, of Official Records
    Affects:        said land

10. The effect of a map purporting to show the herein described and other land recorded in Book 12,
    Page 2; in Book 32, Page 21; and in Book 47, Page 26, all of record of Surveys.

11. An easement for the purpose shown below and rights incidental thereto as set forth in a document:
    Purpose:        road purpose, ingress, egress
    Recorded:       August 30, 1972 in Book 10303, Page 112, of Official Records
    Affects:        said land

12. An easement for the purpose shown below and rights incidental thereto as set forth in a document:
    Purpose:        road
    Recorded:       January 26, 1979 in Book 13014, Page 499, of Official Records
    Affects:        a strip of land 15.00 feet wide

13. An easement for the purpose shown below and rights incidental thereto as set forth in a document:
    Grantee:        Everett L. Johnson

Purpose:              either or both underground lines, conduits
Recorded:             in Book 13325, Page 1926, of Official Records

Said matter affects a portion of said land as more particularly described in said document.

and recorded May 20, 1960 in Book 5253, Page 253, of Official Records.

14.   An easement for the purpose shown below and rights incidental thereto as set forth in a document:
      Purpose:              either or both underground lines, conduits
      Recorded:             February 18, 1981 in Book 13947, Page 977, of Official Records

      Said matter affects a portion of said land as more particularly described in said document.

15.   An easement for the purpose shown below and rights incidental thereto as set forth in a document:
      Grantee:              Southern California Edison Company
      Purpose:              public utilities easement
      Recorded:             February 3, 1986, as Instrument No. 86-046365, Official Records
      Affects:              a portion of the land

16.   A Construction Deed of Trust to secure an indebtedness in the amount shown below, and any other
      obligations secured thereby:
      Amount:               $1,600,000.00
      Dated:                December 1, 2005
      Trustor:              Carl H. Reinhart, a single man
      Trustee:              Commercial Bank of California
      Beneficiary:          Commercial Bank of California
      Recorded:             December 8, 2005 as Instrument/File No. 2005000981608
                            of Official Records

      A Notice of default recorded March 4, 2009 as Instrument/File No. 2009000099925 of Official
      Records.

17.   Financing Statement executed by Reinhart, Carl H. to Commercial Bank of California recorded
      December 8, 2005, as Instrument/File No. 2005000981609, of Official Records.

18.   The matters contained in an instrument entitled "Notice of Permissive Use" dated May 26, 2006, by
      and between Carl H. Reinhart upon the terms therein provided recorded May 26, 2006 as
      Instrument/File No. 2006000358557 of Official Records.

19.   Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations
      secured thereby:
      Amount:               $400,000.00
      Dated:                June 4, 2007
      Trustor:              Carl H. Reinhart, a single man
      Trustee:              Commercial Bank of California
      Beneficiary:          Commercial Bank of California
      Recorded:             June 11, 2007 as Instrument/File No. 2007000371321
                            of Official Records

      A Notice of default recorded March 4, 2009 as Instrument/File No. 2009000099926 of Official
      Records.

A Notice of Trustee's Sale recorded June 4, 2009 as Instrument/File No. 2009000286580 of Official Records.

20.   Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $400,000.00 |
| Dated: | July 20, 2007 |
| Trustor: | Carl H. Reinhart, a single man |
| Trustee: | First American Title Company, a California corporation |
| Beneficiary: | Main Street-Santa Ana, LLC, a Delaware Limited Liability Company |
| Recorded: | July 31, 2007 as Instrument/File No. 2007000478126 of Official Records |

21.   A claim of Mechanic's Lien recorded April 9, 2009 as Instrument/File No. 2009000172702 of Official Records, by Martin Vellandi, Claimant, in the amount of $25,500.00, and any other amounts due thereunder.

A notice of pendency of action to foreclose a mechanic's lien filed by Martin Vellandi, individually and doing business as Plumbing Customs f/k/a West Coast Plumbing Plaintiff, against Carl H. Reinhart, an individual; Nancy Nichols, an individual; and does 1 through 10, inclusive Defendant, Case No. 30-2009-00282655, in the Superior Court of Orange County, recorded July 17, 2009 as Instrument/File No. 2009000384356 of Official Records.

22.   Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $35,000.00 |
| Dated: | July 6, 2009 |
| Trustor: | Carl H. Reinhart |
| Trustee: | First American Title Insurance Company, a California corporation |
| Beneficiary: | George Helland |
| Recorded: | July 7, 2009 as Instrument/File No. 2009000358778 of Official Records |

(End of Exceptions)

File Number:  269949

# NOTES AND REQUIREMENTS

A. Residential Rate

B. There are no conveyances affecting said land, recorded with the County Recorder within 24 months of the date of this report.

C. The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement 116, indicating that there is located on said land a Single Family Residence known as 14311 Ladd Canyon Road (Silverado Area), County of Orange, California, to an extended coverage policy.

D. None of the items in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an ALTA Loan Policy, when issued.

E. Please be aware many lenders are now requiring any request for up-dated information, confirmation of figures and the pay-off check be from the title company to which the demand was sent or which was noted on the demand as the title company in the transaction. Therefore, this company will require any demands for existing liens be directed to "Stewart Title of California, Inc." or at least noted thereon as the title company that will be insuring the proposed transaction. Please be sure such demands also reference our order number as well as your escrow number.

F. Additional Requirements for "Short Sale" Transactions in which a lender will accept less than the outstanding balance of its loan as full satisfaction of the obligation:

The Company will require, prior to the issuance of a policy of title insurance, evidence that the first-position trust deed holder has received and acknowledged all payments to be made to subordinate-position lien holders, regardless of whether such payments are to be made from proceeds or from contributions by real estate brokers and/or buyers in the subject transaction, or from other third-party sources. Evidence shall include but not be limited to: (a) a written demand from the first-position trust deed holder acknowledging and approving payments to subordinate-position lien holders from proceeds and otherwise; or (b) a supplemental letter or amended demand from the first-position lien holder acknowledging payments to be made to subordinate lien holders from sources other than proceeds (including broker commissions and additional buyer deposits).

G. We will require a Statement of Information from the parties named below in order to complete this report, based on the effect of documents, proceedings, liens, decrees, or other matter which do not specifically describe said land, but which, if any do exist, may affect the title or impose liens or encumbrances thereon.

Parties: All

(Note: The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file).

# CALIFORNIA "GOOD FUNDS" LAW

California Insurance Code Section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement. Funds received by Stewart Title of California, Inc. via wire transfer may be disbursed upon receipt. Funds received via cashier's checks or teller checks drawn on a California Bank may be disbursed on the next business day after the day of deposit. If funds are received by any other means, recording and/or disbursement may be delayed, and you should contact your title or escrow officer. All escrow and sub-escrow funds received will be deposited with other escrow funds in one or more non-interest bearing escrow accounts in a financial institution selected by Stewart Title of California, Inc.. Stewart Title of California, Inc. may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and Stewart Title of California, Inc. shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by Stewart Title of California, Inc.. Such benefits shall be deemed additional compensation to Stewart Title of California, Inc. for its services in connection with the escrow or sub-escrow.

If any check submitted is dishonored upon presentation for payment, you are authorized to notify all principals and/or their respective agents of such nonpayment.

# Wire Instructions

If you anticipate having funds wired to Stewart Title of California, Inc., our wiring information is as follows:

Additional Note: Direct wire transfers to:

City National Bank
5601 E. Slauson Avenue
City of Commerce, CA 90040

Routing Number: 122016066
Credit to Stewart Title of California, Inc.
Account Number: 013 218811
Reference Order Number: 269949
Title Unit Number.: 2865
Title Officer Name: James Prasch

When instructing the financial institution to wire funds, it is very important that you reference Stewart Title of California, Inc.'s order number.

Should you have any questions in this regard please contact your title officer immediately.

File Number: 269949

**Order No.** 269949

## AVAILABLE DISCOUNTS DISCLOSURE STATEMENT

This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") is pleased to inform you that upon proper qualification, there are premium discounts available upon the purchase of title insurance covering improved property with a one to four family residential dwelling.

Such discounts apply to and include:

Property located within an area proclaimed a state or federal disaster area;

Property purchased from a foreclosing beneficiary or successful bidder at a foreclosure sale;

Property being refinanced.

Please talk with your escrow or title officer to determine your qualification for any of these discounts.

CLTA Preliminary Report Form

## EXHIBIT A (Revised 11-17-04)

## CLTA PRELIMINARY REPORT FORM (Revised 11-17-06)

## SCHEDULE B

## CLTA PRELIMINARY REPORT FORM
## LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS

## CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE POLICY – 1990
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.     Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.     Defects, liens, encumbrances, adverse claims or other matters:
(a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
(b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
(c) resulting in no loss or damage to the insured claimant;
(d) attaching or created subsequent to Date of Policy; or
(e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.     Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.     Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.     Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

## EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.     Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
      Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.     Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.     Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

Rev. 02-05-10

EXHIBIT 3
Page 45

CLTA Preliminary Report Form

4.      Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.      (a)  Unpatented mining claims;  (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof;  (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
The following matters are expressly excluded from the coverage of this policy and the company will not pay loss or damage, costs, attorneys' fees, or expenses, which arise by reason of:

## CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (10/22/03)
## ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1.      Governmental police power, and the existence or violation of any law or government regulation.  This includes ordinances, laws and regulations concerning:
        a. building
        b. zoning
        c. Land use
        d. improvements on the Land
        e. Land division
        f. environmental protection
This Exclusion does not apply to violations or the enforcement of these matters if notice of the violation or enforcement appears in the Public Records at the Policy Date.
This Exclusion does not limit the coverage described in Covered Risk 14, 15, 16, 17 or 24.
2.      The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes.  This Exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at the Policy Date.
3.      The right to take the Land by condemning it, unless:
        a. a notice of exercising the right appears in the Public Records at the Policy Date; or
        b. the taking happened before the Policy Date and is binding on You if You bought the Land without Knowing of the taking.
4.      Risks:
        a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
        b. that are Known to You at the Policy Date, but not to Us, unless they appear in the Public Records at the Policy Date;
        c. that result in no loss to You; or
        d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.d, 22, 23, 24 or 25.
5.      Failure to pay value for Your Title.
6.      Lack of a right:
        a. to any Land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
        b. in streets, alleys, or waterways that touch the Land.
This Exclusion does not limit the coverage described in Covered Risk 11 or 18.

LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
*      For Covered Risk 14, 15, 16 and 18, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 14: | 1% of Policy Amount or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 15: | 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 16: | 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 18: | 1% of Policy Amount or $2,500.00 (whichever is less) | $5,000.00 |

## AMERICAN LAND TITLE ASSOCIATION
## RESIDENTIAL TITLE INSURANCE POLICY (6-1-87)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:

Rev. 02-05-10

EXHIBIT 3
Page 46

CLTA Preliminary Report Form

1.      Governmental police power, and the existence or violation of any law or government regulation.  This includes building and zoning ordinances and also laws and regulations concerning:
- land use
- improvements on the land
- land division
- environmental protection

This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.
This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.

2.      The right to take the land by condemning it, unless:
- a notice of exercising the right appears in the public records
- on the Policy Date
- the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking

3.      Title Risks:
- that are created, allowed, or agreed to by you
- that are known to you, but not to us, on the Policy Date -- unless they appeared in the public records
- that result in no loss to you
- that first affect your title after the Policy Date -- this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks

4.      Failure to pay value for your title.

5.      Lack of a right:
- to any land outside the area specifically described and referred to in Item 3 of Schedule A

OR
- in streets, alleys, or waterways that touch your land

This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

## AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (10-17-92)
## WITH ALTA ENDORSEMENT - FORM 1 COVERAGE

The following matters are expressly excluded from the coverage of this policy and the company will not pay loss or damage, costs, attorney's fees or expenses which arise by reason of:

1.      (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at date of policy.
(b) Any governmental police power not excluded by (a) above, except to the  extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at date of policy.

2.      Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at date of policy, but not excluding from coverage any taking which has occurred prior to date of policy which would be binding on the rights of a purchaser for value without knowledge.

3.      Defects, liens, encumbrances, adverse claims or other matters:
(a) created, suffered, assumed or agreed to by the insured claimant;
(b) Not known to the company, not recorded in the public records at date of policy, but known to the insured claimant and not disclosed in writing to the company by the insured claimant prior to the date the insured claimant became an insured under this policy;
(c) resulting in no loss or damage to the insured claimant;
(d) attaching or created subsequent to date of policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material or to the extent insurance is afforded herein as to the assessments for street improvements under construction or completed at date of policy); or
(e) resulting in loss or damage, which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4.      Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at date of policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5.      Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.      Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to date of policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at date of policy the insured has advanced or is obligated to advance.

CLTA Preliminary Report Form

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
    I. The transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
    II. The subordination of the interest of the insured mortgagee as a result of the application of the doctrine or equitable subordination; or
    III. The transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
        (a) to timely recorded the instrument of transfer; or
        (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

The above policy forms may be issued to afford either standard coverage or extended coverage. In addition to the above exclusions from coverage, the exceptions from coverage in a standard coverage policy will include the following General Exceptions:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
Proceedings by a public agency which may result in taxes or assessments or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or by making inquiry of persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) unpatented mining claims; (b) reservations or exceptions in patents or in acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

## 2006 ALTA LOAN POLICY (06-17-06)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.     (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)    the occupancy, use, or enjoyment of the Land;
    (ii)   the character, dimensions, or location of any improvement erected on the Land;
    (iii)  the subdivision of land; or
    (iv)  environmental protection;
        or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)   Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed, or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
(a) a fraudulent conveyance or fraudulent transfer, or

Rev. 02-05-10

EXHIBIT 3
Page 48

CLTA Preliminary Report Form

(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.        Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

## AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY (10-17-92)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the company will not pay loss or damage, cost, attorneys' fees or expenses, which arise by reason of:

1.        (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at date of policy. (B) any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at date of policy.

2.        Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at date of policy, but not excluding from coverage any taking which has occurred prior to date of policy which would be binding on the rights of a purchaser for value without knowledge.

3.        Defects, liens, encumbrances, adverse claims or other matters:
(A)   Created, suffered, assumed or agreed to by the insured claimant;
(B)   Not known to the company, not recorded in the public records at date of policy, but known to the insured claimant and not disclosed in writing to the company by the insured claimant prior to the date the insured claimant became an insured under this policy;
(C)   Resulting in no loss or damage to the insured claimant;
(D)   Attaching or created subsequent to date of policy; or
(E)   Resulting in loss or damage, which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

4.        Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors rights laws, that is based on:
I.        The transaction creating the estate or interest insured by this policy    being deemed a fraudulent conveyance or fraudulent transfer; or
II.       The transaction creating the estate or interest insured by this policy being deemed a preferential transfer except where the preferential transfer results from the failure:
(A)   To timely record the instrument of transfer; or
(B)   of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

The above policy forms may be issued to afford either standard coverage or extended coverage. In addition to the above exclusions from coverage, the exceptions from coverage in a standard coverage policy will include the following general exceptions:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.        Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.        Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or by making inquiry of persons in possession thereof.

3.        Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4.        Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.        (a) unpatented mining claims; (b) reservations or exceptions in patents or in acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

## 2006 ALTA OWNER'S POLICY (06-17-06)

Rev. 02-05-10

EXHIBIT 3
Page 49

CLTA Preliminary Report Form

# EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

 (i)  the occupancy, use, or enjoyment of the Land;
 (ii)  the character, dimensions, or location of any improvement erected on the Land;
 (iii)  the subdivision of land; or
 (iv)  environmental protection;
 or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

 (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

 (a) created, suffered, assumed, or agreed to by the Insured Claimant;
 (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
 (c) resulting in no loss or damage to the Insured Claimant;
 (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
 (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

 (a) a fraudulent conveyance or fraudulent transfer; or
 (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

# ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (10/13/01)
# EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the Land; (iii) a separation in ownership or a change in the dimensions or areas of the Land or any parcel of which the Land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that s notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 12, 13, 14, and 16 of this policy.

 (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 12, 13, 14, and 16 of this policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the Public Records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without Knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

 (a) created, suffered, assumed or agreed to by the Insured Claimant;
 (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
 (c) resulting In no loss or damage to the Insured Claimant;
 (d) attaching or created subsequent to Date of Policy (this paragraph does not limit the coverage provided under Covered Risks 8, 16, 18, 19, 20, 21, 22, 23, 24, 25 and 26); or
 (e) resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the Land is situated.

5.  Invalidity or unenforceability of the lien of the Insured Mortgage, or claim thereof, which arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, except as provided in Covered Risk 27, or any consumer credit protection or truth in lending law.

6.  Real property taxes or assessments of any governmental authority which become a lien on the Land subsequent to Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 7, 8(e) and 26.

Rev. 02-05-10

EXHIBIT 3
Page 50

CLTA Preliminary Report Form

7.    Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This exclusion does not limit the coverage provided in Covered Risk 8.

8.    Lack of priority of the lien of the Insured Mortgage as to each and every advance made after Date of Policy, and all interest charged thereon, over liens, encumbrances and other matters affecting the title, the existence of which are Known to the Insured at:

    (a) The time of the advance; or

    (b) The time a modification is made to the terms of the Insured Mortgage which changes the rate of interest charged, if the rate of Interest is greater as a result of the modification than it would have been before the modification.  This exclusion does not limit the coverage provided in Covered Risk 8.

9.    The failure of the residential structure, or any portion thereof to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at Date of Policy.

## WHAT DO THE STEWART TITLE COMPANIES DO WITH YOUR PERSONAL INFORMATION?

Federal and applicable state law and regulations give consumers the right to limit some but not all sharing. Federal and applicable state law regulations also require us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand how we use your personal information. This privacy notice is distributed on behalf of the Stewart Title Guaranty Company and its affiliates (the Stewart Title Companies), pursuant to Title V of the Gramm-Leach-Bliley Act (GLBA).

The types of personal information we collect and share depend on the product or service that you have sought through us. This information can include social security numbers and driver's license number.

All financial companies, such as the Stewart Title Companies, need to share customers' personal information to run their everyday business—to process transactions and maintain customer accounts. In the section below, we list the reasons that we can share customers' personal information; the reasons that we choose to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Do we share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**— to process your transactions and maintain your account. This may include running the business and managing customer accounts, such as processing transactions, mailing, and auditing services, and responding to court orders and legal investigations. | Yes | No |
| **For our marketing purposes**— to offer our products and services to you. | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes**— information about your transactions and experiences. Affiliates are companies related by common ownership or control. They can be financial and nonfinancial companies. *Our affiliates may include companies with a Stewart name; financial companies, such as Stewart Title Company* | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness. | No | We don't share |
| **For our affiliates to market to you** | Yes | No |
| **For nonaffiliates to market to you.** Nonaffiliates are companies not related by common ownership or control. They can be financial and nonfinancial companies. | No | We don't share |

We may disclose your personal information to our affiliates or to nonaffiliates as permitted by law. If you request a transaction with a nonaffiliate, such as a third party insurance company, we will disclose your personal information to that nonaffiliate. [We do not control their subsequent use of information, and suggest you refer to their privacy notices.]

| Sharing practices | |
|---|---|
| **How often do the Stewart Title Companies notify me about their practices?** | We must notify you about our sharing practices when you request a transaction. |
| **How do the Stewart Title Companies protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal and state law. These measures include computer, file, and building safeguards. |
| **How do the Stewart Title Companies collect my personal information?** | We collect your personal information, for example, when you<br>• request insurance-related services<br>• provide such information to us<br><br>We also collect your personal information from others, such as the real estate agent or lender involved in your transaction, credit reporting agencies, affiliates or other companies. |
| **What sharing can I limit?** | Although federal and state law give you the right to limit sharing (e.g., opt out) in certain instances, we do not share your personal information in those instances. |

| **Contact Us** | If you have any questions about this privacy notice, please contact us at: Stewart Title Guaranty Company, 1980 Post Oak Blvd., Privacy Officer, Houston, Texas 77056 |
|---|---|

EXHIBIT 3
Page 52

File No.: 269949

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

Date:        May 28, 2010

To :        _____

Property:    14311 Ladd Canyon Road (Silverado Area)
County of Orange, California 92676

From:        Stewart Title of California, Inc.

This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") has a business
relationship with Stewart Solutions, LLC, DBA – Stewart Specialty Insurance Services, LLC ("Stewart
Insurance"). Stewart Information Services Corporation owns 100% of Stewart Insurance and Stewart
Title of California. Because of this relationship, this referral may provide Stewart Title a financial or
other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are
NOT required to use the listed provider(s) as a condition for purchase, sale, or refinance of the subject
Property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS
AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE
THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE
SERVICES.

| *Stewart Insurance Settlement Service* | *Charge or range of charges* |
|---|---|
| Hazard Insurance | $400.00 to $6,500.00 |
| Home Warranty | $255.00 to $ 780.00 |
| Natural Hazard Disclosure Report | $ 42.50 to    149.50 |

ACKNOWLEDGMENT

I/we have read this disclosure form, and understand that Stewart Title is referring me/us to purchase the
above-described settlement service(s) and may receive a financial or other benefit as the result of this
referral.

_____
Signature

_____
Signature

Order Number: 7037-269949 - ABA Disclosure Title

EXHIBIT 3
Page 53



EXHIBIT 3
Page 54

Description: Orange,CA Assessor Map 105.5 Page: 1 of 1
Order: oc Comment: