1
**R. GIBSON PAGTER, JR.**
California State Bar No. 116450
**PAGTER AND MILLER**
2
525 N. Cabrillo Park Drive, Suite 104
Santa Ana, CA 92701
3
Telephone: (714) 541-6072
Facsimile:  (714) 541-6897
4
Email: gibson@pagterandmiller.com

5
Attorneys for Carl Reinhart

6

7              IN THE UNITED STATES BANKRUPTCY COURT

8         CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

9
In re:                                    )   Case No. 8:09-bk-16774-TA
                                          )
10
CARL REINHART,                            )   Chapter 11
                                          )
11                                        )   MOTION BY DEBTOR FOR ORDER (1)
                                          )   APPROVING SALE OF REAL PROPERTY
12                                        )   [19312 Fisher Lane, North Tustin, CA 92705]
                                          )   (2) APPROVING OVERBID PROCEDURES;
13                                        )   (3) APPROVING DISTRIBUTION OF SALE
                                          )   PROCEEDS; (4) APPROVING
14                                        )   COMPENSATION OF REAL ESTATE
                                          )   AGENTS; MEMORANDUM OF POINTS AND
15                                        )   AUTHORITIES; AND DECLARATION OF
                                          )   CARL REINHART AND MILAGROS ELHAJ
16                                        )   IN SUPPORT THEREOF
                                          )
17                                        )
                                          )
18                                        )
                                          )   Date:  4/26/11
19                                        )   Time:  10:00 AM
                                          )   Ctrm:  5A
20                                        )
              Debtor and                  )
21            Debtor-in-Possession.       )
                                          )
22 _____  )

23

24

25

26

27

28
Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana. CA
92701
(714) 541-6072

-1-

M-Sale-Fisher

# TABLE OF CONTENTS

Summary ............................................................................................ 4

    Background Information ............................................................ 4

    The Property to be Sold ........................................................... 4

    The Proposed Sale of the Property is for Fair Market Value ............................... 6

    Sale Terms ........................................................................... 7

    The Overbid Procedure ........................................................... 7

    Benefit to the Estate ............................................................... 8

    Proposed Distribution of Sale Proceeds ....................................... 9

    Determination of Good Faith Purchaser ...................................... 10

Memorandum of Points and Authorities ............................................... 11

    I.    The Court May Authorize the Sale of Property
        When There Is a Good Faith Purchaser ................................. 11

    II.   The Bankruptcy Court Has the Authority to
        Implement the Overbidding Procedures ................................. 12

Conclusion .................................................................................. 13

Declaration of Carl Reinhart ............................................................ 14

Declaration of Milagros Elhaj ...........................................................

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

M-Sale-Fisher

# TABLE OF AUTHORITIES

## CASES                                                                    Page(s)

*In re Crown Corporation*
679 F.2d 774 (9th Cir. 1982) ............................................................. 13

*In re industrial Valley Refrig. & Air Cond. Supplies Inc.,*
77 B.R. 15 (Bankr. E.D. Pa. 1987) ....................................................... 12

## STATUTES

11 U.S.C §101(31) ........................................................................ 10

11 U.S.C. §105(a) ........................................................................ 13

11 U.S.C. §363(b) .......................................................................... 4

11 U.S.C. §363(b)(1) ............................................................. 11,12,13

11 U.S.C. §363(f)(4) ...................................................................... 4

11 U.S.C. §363(m) .................................................................... 10,11

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

M-Sale-Fisher

TO THE HONORABLE THEDOR ALBERT, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL INTERESTED PARTIES:

Carl Reinhart, ("Debtor") hereby moves the Court for an Order: (a) approving the sale of the estate's 50.66% interest in the real property located at 19312 Fisher Lane, North Tustin, California 92705 ("Property"), pursuant to 11 U.S.C. Section 363(b) and (f)(4) subject to overbid, free of all liens and encumbrances; (b) compensation of Buyer's real estate agent; and (c) the distribution of the sale proceeds.

## SUMMARY

1.     Subject to Court approval, the Debtor and his co-owners have accepted an offer from Milagros Elhaj ("Buyer") to purchase 100% of the Property for the amount of $1,075,000, subject to overbid.  A copy of the purchase and sale transaction documents are attached hereto as Exhibit "1." In the Debtor's business judgment, the sale of the Property for $1,075,000 is for fair market value.

## BACKGROUND INFORMATION

2.     This case was commenced by the filing of a voluntary Chapter 11 petition on July 2009 ("Petition Date").  Debtor is the debtor in possession.

## THE PROPERTY TO BE SOLD

3.     Debtor holds title to 50.66% of the Property.  He acquired a 100% interest in the Property in 1991, but in April 2001 he sold a 49.34% interest in it to George M and Ellen E Minichello ("Co-Owners"), subject to the 3 then-existing deeds of trust (in favor of Wells Fargo now at approximately $302,000, Franklin now at approximately $63,000, and Meine now at approximately $100,000), and leased back from them the 49.34% interest. Co-Owners consent

Papter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-4-

M-Sale-Fisher

to this sale. Copies of these sale/leaseback documents are attached to Debtor's declaration as Exhibit "2." After this transaction, Debtor further encumbered his interest in the Property with a 4th deed of trust in favor of Co-Owners in the current approximate amount of $50,000, a 5th deed of trust in favor of R.H. Meine/his trust for $112,000, and suffered a mechanic's lien to be recorded against it for work done to the Property in the approximate current amount of $13,000.

4.    On 3/14/11 Debtor filed an amended claim of exemption in the property in the amount of $50,000. No party filed any objection to this claim. Debtor has agreed to waive his homestead in order to provide more cash to his estate.

5.    On or about 2/11/11 Debtor, Co-Owners, and Buyer executed a Residential Agreement and Joint Escrow Instructions ("Fisher RPA") for sale of the Property, copies of which are attached as **Exhibit "1".** In this transaction, Buyer is buying Fisher, and using $139,000 in credit from his sale of a separate property, located on Andover in Costa Mesa, CA, to acquire Fisher, along with cash and a new loan. Debtor will NOT own any part of Andover, but will receive estimated net cash proceeds of approximately $73,000, after payment of all liens against his interest in the Fisher property and after accounting for all capital improvements by and between Debtor and Co-Owners. Copies of a summary by Debtor of his ownership of the Fisher property, the liens, thereon, and an estimated closing statement are attached hereto as Exhibit "3."

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

M-Sale-Fisher

-5-

## THE PROPOSED SALE OF THE PROPERTY IS

## FOR FAIR MARKET VALUE

6.      Debtor, a real estate broker, has reviewed comparable sales in the area and determined that $1,075,000 is a fair market value.  Debtor, through his company, Peninsula Investment Real Estate Brokerage, also actively marketed the property since approximately mid-2010. The instant offer is the only one ever received.

## SALE TERMS

7.      The Fisher RPA is for the amount of $1,075,000.  The Buyer has deposited $5,000 in escrow.  The Fisher RPA and its escrow instructions provide, in pertinent part, as follows:

        a.      The Buyer acknowledges that he is buying the Property as is and where is without warranties of any kind, express or implied, being given by Debtor or his agents concerning the condition of the Property or the quality of title;

        b.      The Buyer is aware the offer is contingent upon Bankruptcy Court approval; and

        c.      The Buyer has no contingencies in this transaction, except as to obtaining loan approval for financing, which he has satisfied.

        d.      Buyer will pay $76,000 cash, pay $860,000 with a new first position loan; and provide $139,000 in net equity in a separate piece of real property, located at 2429 Andover Place, Costa Mesa, CA ("CM Property"). After setoffs by and between Debtor and the Co-Owners, for their respective capital improvements to Fisher, detailed in Debtor's

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-6-

M-Sale-Fisher

Declaration below, the Co-Owners will receive title to the CM Property subject to liens thereon, and the Debtor and his estate will receive approximately $73,000.

### THE OVERBID PROCEDURE

8.    In order to obtain the highest and best offer for the benefit of the creditors of the estate, Debtor proposes that the foregoing offer be subject to overbid.  Notice is being provided of the opportunity for overbidding to all interested parties in this matter.

9.    Debtor requests that the Court approve the following overbid procedure:

d.    Only Qualified Bidders may submit an overbid.  A "Qualified Bidder" is one who provides a financial statement and such business and banking references as are required by Debtor's reasonable discretion, sufficient to assure Debtor of the bidder's ability (based on availability of financing experience or other conditions) to consummate the purchase of the Property, AND one who can consummate the purchase of the property on the same, terms and conditions, other than price, as those proposed in the Offer.

e.    Each bid must be <u>received</u> by the Debtor's counsel no later than <u>three (3) business days</u> prior to the hearing on this Motion.

f.    The initial overbid must exceed the purchase offer by a minimum of then Thousand U.S. dollars ($10,000).  Each subsequent bid must then be in increments of $5,000.

g.    Each bid must be all cash, non-contingent, and on the same terms and conditions, other than price, as those proposed in the Offer.

h.    Each bidder must match all terms and conditions of the original bid.  Thus, an "earnest money" deposit of at least $5,000.00 payable to "Pagter and Miller" Client Trust Account, must be received by Debtor's counsel by no later than <u>three (3) business days</u> prior to the hearing on this Motion.  This deposit must be in cash, cashier's check, or certified check,

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

M-Sale-Fisher

and must be deposited so that Debtor will have access to said funds no later than three (3) business days prior to the hearing on this Motion.

10.    The foregoing procedures will provide for an orderly completion of the sale of the Property by permitting all bidders to compete on similar terms, and will allow interested parties and the Court to compare competing bids in order to realize the highest benefit for the estate.

11.    Debtor proposes to pay a commission to Buyer's broker of 3.5%, such that 3.5% of $1,075,000 = $38,750, or more if there is an overbid. To maximize the estate's recovery, Debtor has waived the 3% commission otherwise due to due to Peninsula.

## BENEFIT TO THE ESTATE

12.    The sale of the Property will benefit the estate as follows:

| Item | Amount | Total |
|------|--------|-------|
| Sale Price | | $1,075,000.00 |
| Costs of Sale (3.5% commission) | $ 38,750 | |
| Termite/Misc (estimated) | $  9,000 | |
| 1st TD Secured Creditor | $302,000 | |
| 2nd TD Secured Creditor (Huntington NB) | $ 63,000 | |
| 3rd TD Secured Creditor (Meine) | $100,000 | |
| Capital Improvements by Reinhart | $155,000 | |
| Capital Improvements by Co-Owners | $ 40,000 | $  367,350 |
| | | |
| 50.66% of $367,350 equity to Reinhart | | $186,049 |
| 4th TD to Minichello | $ 60,000 | |
| 5th TD to Meine | $112,000 | |
| Mechanic's Lien to Best Value | $ 13,000 | |
| Real Estate Taxes | $ 24,000 | |
| Interest on 1st TD | $ 19,000 | |
| Interest on 2nd TD | $ 15,000 | |
| Interest on 3rd TD | $ 25,000 | |
| | | |
| After adding back the above $155,000, Net to Reinhart/Estate | | $  73,049 |
| | | |
| | | |

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

M-Sale-Fisher

Of course, the sale will benefit the Co-Owners, who should net approximately $231, 201 ($40,000 capital improvements + $181,201 for 49.34% equity + $60,000 4th TD repayment), although $139,000 of this recovery will be in the form of a $139,000 equity position in the CM Property.

## PROPOSED DISTRIBUTION OF SALE PROCEEDS

13.    The Trustee seeks authority for distribution of sale proceeds as follows:

    i.    For normal closing costs, estimated at $9,000.

    j.    To the 1st trust deed holder, Wells Fargo, the amount of approximately $321,000 of the net sale proceeds, pursuant to its demand in escrow, and subject to Debtor's review and approval prior to distribution.

    k.    To the 2nd trust deed holder, Huntington N.B/Franklin, the amount of approximately $78,000 of the net sale proceeds, pursuant to its demand in escrow, and subject to Debtor's review and approval prior to distribution.

    k-1    To the 3rd trust deed holder, Meine, the amount of approximately $112,000 of the net sale proceeds, pursuant to its demand in escrow, and subject to Debtor's review and approval prior to distribution.

    l.    To the 4th trust deed holder, Minichello, the amount of approximately $60,000 of the net sale proceeds, pursuant to its demand in escrow, and subject to Debtor's review and approval prior to distribution.

    m.    To the 5th trust deed holder, Meine, the amount of approximately $112,000 of the net sale proceeds, pursuant to its demand in escrow, and subject to Debtor's review and approval prior to distribution.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

M-Sale-Fisher

n.      To Best Value, the mechanic's lien holder, the amount of approximately

$13,000 of the net sale proceeds, pursuant to its demand in escrow, and subject to Debtor's

review and approval prior to distribution.

o.      To the O.C. Tax Collector the sum of approximately $24,000 of the net sale

proceeds, pursuant to its demand in escrow, and subject to Debtor's review and approval prior

to distribution.

p.      To the successful Buyer's Real Estate Agent, an amount not greater than

3.5% of the sale price.

q.      To Co-Owners, the CM Property and approximately $142,201 in cash, in

exchange for its execution of documents in escrow effecting transfer of the Property to Buyer

and a release of all claims and liens against Debtor and his estate.

r.      The remaining net proceeds of approximately $73,049, to the Debtor as Debtor in

Possession.

## DETERMINATION OF GOOD FAITH PURCHASER

14.     Debtor further seeks an Order determining that the proposed Buyer is a

"good faith purchaser" within the context of 11 U.S.C. Section 363(m), such that any appeal of

the Order granting this Motion, even if successful, will not affect the validity of the sale unless a

stay pending appeal is obtained.

15.     The proposed Buyer participated in the negotiation of the Fisher RPA

and the CM Property deal.  The proposed Buyer is not an "insider" as that term is defined in 11

U.S.C. Section 101(31), in that he is not a relative or general partner of the Debtor, nor is the

Debtor his partner, director, officer, or a person in control of Debtor.

16.     There is no relationship between Debtor and the proposed Buyer, and the Buyer

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-10-

M-Sale-Fisher

is not an insider of the Debtor. Thus, the proposed sale is an arms-length transaction and is in

good faith.

17.     The Fisher RPA was an arms-length transaction negotiated in good faith

between the parties.

**WHEREFORE,** Debtor requests that the Court enter an Order:

1.      Approving the sale of the Property to the Buyer or a higher overbidder.

2.      Authorizing the distribution of the net proceeds as set forth above.

3.      Determining the ultimate Buyer is a "good faith purchaser" under 11 U.S.C.

Section 363(m);

4.      Authorizing Debtor to sign any and all documents necessary, and to

undertake any non-material amendments and modifications necessary, to complete the sale to

the highest qualified bidder without further notice, hearing or Court order; and

5.      For such other and further orders as the Court deems just and proper.


DATED: 3/29/11                          **PAGTER AND MILLER**

                                        By: /s/ R. Gibson Pagter, Jr.
                                            R. Gibson Pagter, Jr.,
                                            Attorney for Carl Reinhart


**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**THE COURT MAY AUTHORIZE THE SALE OF PROPERTY WHEN THERE IS A**

**GOOD FAITH PURCHASER**

11 U.S.C. Section 363(b)(1) provides that "the trustee, after notice and a hearing, may

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072      M-Sale-Fisher

use, sell or lease, other than in the ordinary course of business, property of the estate." The sale proposed is outside the ordinary course of business in that it is the sale of a significant asset of the estate. A trustee must show that: (1) a "sound business purpose justified the sale"; (2) "accurate and reasonable notice" of the sale was provided; (3) the "price to be paid is adequate, i.e., fair and reasonable"; (4) "good faith, i.e., the absence of any lucrative deals with insiders, is present." *See In re Industrial Valley Refrig. & Air Cond. Supplies Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987). As discussed below, the proposed sale of the Subject Property confirms with each of these requirements:

1.      There is a sound business purpose, in that this is a Chapter 11 case and the sale of the Property will allow liquidation of an estate asset for the benefit of the estate and its creditors.

2.      Notice of the Sale and of the hearing is being provided to all creditors, and a Local Rule notice is being filed with the Clerk

3.      The Debtor believes that, under the circumstances, the proposed sale represents the best purchase price that can be expected.

4.      As is shown by the Declaration of Carl Reinhart, he has fully investigated the value of the Property is for fair market value. Thus, the sale is in good faith.

III.

## THE BANKRUPTCY COURT HAS THE AUTHORITY TO IMPLEMENT THE OVERBIDDING PROCEDURES

Implementation of the bidding procedures is an action outside of the ordinary course of business. Bankruptcy Code Section 363(b)(1) provides that a trustee "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

M-Sale-Fisher

-12-

estate." Further, under Bankruptcy Code Section 105(a), "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Thus, pursuant to Bankruptcy Code Section 363(b)(1) and 105(a), this Court may authorize the implementation of overbidding procedures.

The Ninth Circuit, in a case under the Bankruptcy Act, recognized the power of a bankruptcy court to issue orders determining the terms and conditions for overbids with respect to a sale of estate assets. [*In re Crown Corporation,* 679 F.2d 774 (9th Cir. 1982).] The *Crown Corporation* decision also approves of an order requiring and setting the amount of potential overbidder's deposits and authorized courts to determine the disposition of such deposits. *Id.*

The overbid procedures proposed in this matter will ensure that the Property will generate the greatest possible value to the estate. The procedure also places appropriate checks upon overbidders to ensure that only qualified bids are considered.

## CONCLUSION

Based upon the foregoing, Debtor respectfully requests that the Motion be granted.

DATED:    4/2/11                    **PAGTER AND MILLER**
                                    By: /s/ R. Gibson Pagter, Jr.
                                    R. Gibson Pagter, Jr.,
                                    Attorney for Carl Reinhart

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

M-Sale-Fisher

-13-

## DECLARATION OF CARL REINHART

I Carl Reinhart, declare as follows:

1.      I am the Debtor and Debtor in Possession in this Bankruptcy case.  The facts contained herein are true and correct and of my own personal knowledge. I am a licensed real estate broker and I, through my bankruptcy estate, own Peninsula Real Estate Brokerage, the listing broker for the proposed sale herein.

1.1      This case was commenced by the filing of a voluntary Chapter 11 petition on July 2009 ("Petition Date").

1.2      I first acquired a 100% interest in the real property located at 19312 Fisher Lane, North Tustin, California 92705 ("Property" or "Fisher") in or about 1991, and lived there continuously from 1991 through mid-2010. Subject to Court approval, I and my co-owners have accepted an offer from Milagros Elhaj ("Buyer") to purchase 100% of the Property for the amount of $1,075,000, subject to overbid.  A true and correct copy of the purchase and sale transaction documents are attached hereto as Exhibit "1." In my business judgment, as a licensed real estate broker and as owner of the Property, the sale of the Property for $1,075,000 is for fair market value.

2.      This case was commenced by the filing of a voluntary Chapter 11 petition on July 2009 ("Petition Date").  I am the debtor and debtor in possession.

## THE PROPERTY TO BE SOLD

3.      I hold title to 50.66% of the Property.  I acquired a 100% interest in the Property in 1991, but in April 2001 sold a 49.34% interest in it to George M and Ellen E Minichello ("Co-Owners"), subject to the 3 then-existing deeds of trust (in favor of Wells Fargo now at approximately $302,000, Huntington N.B./Franklin now at approximately $63,000, and Meine

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-14-

M-Sale-Fisher

now at approximately $100,000), and leased back from them the 49.34% interest. Co-Owners

consent to this sale. Copies of these sale/leaseback documents are attached to Debtor's

declaration as Exhibit "2." Under this deal I agreed to keep all real estate taxes current and

pay all accrued interest on the 1st, 2nd, and 3rd position notes secured by deeds of trust on

Fisher at the time of the sale. After this transaction, I further encumbered my interest in the

Property with a 4th deed of trust in favor of Co-Owners in the original approximate amount of

$25,000 (but on which I now owe approximately $60,000, after additional advances made

under the note and TD), and suffered a mechanic's lien to be recorded against it for work done

to the Property in the approximate current amount of $13,000.

4.    On 3/14/11 I filed an amended claim of exemption in the property in the

amount of $50,000. No party filed any objection to this claim. A copy of this amended

Schedule C is attached hereto as **Exhibit "3"**. **I** agree to waive my homestead exemption, if I

can use the $50,000 proceeds to help fund a new loan from George Helland or a third party I

approve to finish the completion of the home under construction on the real property located at

14311 Ladd Canyon in this case, in order to provide more cash to my estate.

5.    On or about 2/11/11 I and Co-Owners and Buyer executed a Residential

Agreement and Joint Escrow Instructions ("Fisher RPA") for sale of the Property, copies of

which are attached as **Exhibit "1"**. In this transaction, Buyer is buying Fisher, and using

$139,000 in credit from his sale of a separate property, located on Andover in Costa Mesa,

CA, to acquire Fisher, along with cash and a new loan. I will NOT own any part of Andover, but

will receive estimated net cash proceeds of approximately $73,000, after payment of all liens

against my interest in the Fisher property and after accounting for all capital improvements by

and between myself and Co-Owners. Copies of a summary I prepared that explains the history

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

M-Sale-Fisher

of my ownership of the Fisher property, the liens thereon, and an estimated closing statement are attached hereto as Exhibit "3." I personally have expended, pre-petition and post-petition, $155,000 in capital improvements to the Property, whereas the Co-Owners have invested only $40,000 toward same.

6.    I have reviewed comparable sales in the area and determined that $1,075,000 is a fair market value. I, through my company, Peninsula Investment Real Estate Brokerage, also actively marketed the property since approximately mid-2010. The instant offer is the only one ever received.

## THE OVERBID PROCEDURE

8.    In order to obtain the highest and best offer for the benefit of the creditors of the estate, I propose that the foregoing offer be subject to overbid.  Notice is being provided of the opportunity for overbidding to all interested parties in this matter. My requested overbid procedure is set forth above in the body of this Motion.

9.    I propose to pay a commission to Buyer's broker of 3%, such that 3% of $1,075,000 = $32,250, or more if there is an overbid. To maximize the estate's recovery, I waived the 3% commission otherwise due to Peninsula.

## BENEFIT TO THE ESTATE

10.    The sale of the Property will benefit the estate as follows, all of which numbers I have calculated and estimated for purposes of this Motion, after reviewing all relevant promissory notes, tax bills, mechanic's liens, and similar documents:

Papter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana. CA
92701
(714) 541-6072

-16-

M-Sale-Fisher

| Item | Amount | Total |
|------|--------|-------|
| Sale Price | | $1,075,000.00 |
| Costs of Sale (3.5% commission) | $ 38,750 | |
| Termite/Misc (estimated) | $  9,000 | |
| 1st TD Secured Creditor (Wells Fargo) | $302,000 | |
| 2nd TD Secured Creditor (Huntington NB) | $ 63,000 | |
| 3rd TD Secured Creditor (Meine) | $100,000 | |
| Capital Improvements by Reinhart | $155,000 | |
| Capital Improvements by Co-Owners | $ 40,000 | $  367,350 |
| | | |
| 50.66% of $367,350 equity to Reinhart | | $186,049 |
| 4th TD to Minichello | $ 60,000 | |
| 5th TD to Meine | $112,000 | |
| Mechanic's Lien to Best Value | $ 13,000 | |
| Real Estate Taxes | $ 24,000 | |
| Interest on 1st TD | $ 19,000 | |
| Interest on 2nd TD | $ 15,000 | |
| Interest on 3rd TD | $ 25,000 | |
| | | |
| After adding back the above $155,000, Net to Reinhart/Estate | | $  73,049 |
| | | |
| | | |

Of course, the sale will benefit the Co-Owners, who should net approximately $231, 201

($40,000 capital improvements + $181,201 for 49.34% equity + $60,000 4th TD repayment),

although $139,000 of this recovery will be in the form of a $139,000 equity position in the CM

Property.

## PROPOSED DISTRIBUTION OF SALE PROCEEDS

11.    I seek authority for distribution of sale proceeds as follows:

k.      For normal closing costs, estimated at $9,000.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana. CA
92701
(714) 541-6072

M-Sale-Fisher

l.      To the 1st trust deed holder, Wells Fargo, the amount of approximately $321,000 of the net sale proceeds, pursuant to its demand in escrow, and subject to Debtor's review and approval prior to distribution.

m.      To the 2nd trust deed holder, Franklin, the amount of approximately $78,000 of the net sale proceeds, pursuant to its demand in escrow, and subject to Debtor's review and approval prior to distribution.

n.      To the 3rd trust deed holder, Meine, the amount of approximately $125,000 of the net sale proceeds, pursuant to its demand in escrow, and subject to Debtor's review and approval prior to distribution.

o.      To the 4th trust deed holder, Minichello, the amount of approximately $60,000 of the net sale proceeds, pursuant to its demand in escrow, and subject to Debtor's review and approval prior to distribution.

p.      To the 5th trust deed holder, Meine, the amount of approximately $112,000 of the net sale proceeds, pursuant to its demand in escrow, and subject to Debtor's review and approval prior to distribution.

q.      To Best Value, the mechanic's lien holder, the amount of approximately $13,000 of the net sale proceeds, pursuant to its demand in escrow, and subject to Debtor's review and approval prior to distribution.

r.      To the O.C. Tax Collector the sum of approximately $24,000 of the net sale proceeds, pursuant to its demand in escrow, and subject to Debtor's review and approval prior to distribution.

s.      To the successful Buyer's Real Estate Agent, an amount not greater than 3.5% of the sale price.

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

M-Sale-Fisher

t.    To Co-Owners, the CM Property and approximately $142,201 in cash, consistent with Exhibit "3" herein, in exchange for its execution of documents in escrow effecting transfer of the Property to Buyer and a release of all claims and liens against Debtor and this estate.

u.    The remaining net proceeds of approximately $73,049, to me as Debtor as Debtor in Possession.

12.    I have confirmed with the Co-Owners that they approve of this sale and my proposed distribution of the proceeds of sale, as between me, them, and all other stakeholders, detailed above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Orange County, California on March 29, 2011.

_____

Carl Reinhart

Payne and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-19-

M-Sale-Fisher

## DECLARATION OF MILAGROS ELHAJ

I, Milagros Elhaj, declare as follows:

1.     I am over 18 years of age and the proposed buyer ("Buyer") of the Property located at 19312 Fisher Lane, North Tustin CA 92705. The facts contained herein are true and correct of my own personal knowledge.

2.     I participated in the negotiation of the Fisher RPA and the related CM Proeprty transaction, along with Carl Reinhart and the Minichellos. I am not a relative or general partner of the Debtor nor is the Debtor my partner, director, officer, or a person in control of me.

3.     There is no relationship between the Debtor and me, except the Fisher RPA and the related CM Property deal.

4.     The Fisher RPA is an arms-length transaction negotiated in good faith between the parties.

5.     I have obtained approval for the new loan specified in the California Residential Purchase Agreement and Joint Escrow Instructions. There are no contingencies remaining unsatisfied in the proposed sales transactions, other than this Court's approval, the passing of clear title under an Order authorizing the sale of the Property free and clear of liens, and the funding of the above loan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed in Orange County, California on March 29, 2011.

Milagros Elhaj

-20-

M-Sale-Fisher

Payne and Miller
325 N Cabrillo
Park Drive
Suite 104
Santa Ana CA
92701
(718) 541-6072





CALIFORNIA
ASSOCIATION
OF REALTORS

**CALIFORNIA**
**RESIDENTIAL PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
For Use With Single Family Residential Property — Attached or Detached
(C.A.R. Form RPA-CA, Revised 4/10)

Date _February 11, 2011_

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _____ Milagros Elhaj , _____ ("Buyer").
   B. **THE REAL PROPERTY TO BE ACQUIRED** is described as _19312 Fisher Lane, North Tustin  CA  92705_ _____
      _____, Assessor's Parcel No. _393-083-15_ _____, situated in
      _North Tustin_ , County of _Orange_ , California, ("Property").
   C. **THE PURCHASE PRICE** offered is _One Million, Seventy-Five Thousand_ _____
      _____ (Dollars $ _1,075,000.00_ ).
   D. **CLOSE OF ESCROW** shall occur on _____ (date) (or ☒ _60_ Days After Acceptance).
2. **AGENCY:**
   A. **DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of a "Disclosure Regarding Real Estate Agency Relationships"
      (C.A.R. Form AD).
   B. **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of
      multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer representation
      agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential
      buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also
      represent other sellers with competing properties of interest to this Buyer.
   C. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
      Listing Agent _Peninsula Investment R. E. Brokerage_ (Print Firm Name) is the agent
      of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
      Selling Agent _Ridgecrest Investments_ (Print Firm Name) (if not the same as the
      Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate
      Brokers are not parties to the Agreement between Buyer and Seller.
3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _5,000.00_
      (1) Buyer shall deliver deposit directly to Escrow Holder by personal check, ☐ electronic funds transfer, ☐ Other
          _____ within 3 business days after acceptance (or ☐ Other _____ );
      OR (2) (If checked) ☐ Buyer has given the deposit by personal check (or ☐ _____ )
          to the agent submitting the offer (or to ☐ _____ ),
          made payable to _____ The deposit shall be held
          uncashed until Acceptance and then deposited with Escrow Holder (or ☐ into Broker's trust account) within 3
          business days after Acceptance (or ☐ Other _____ ).
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . . .$ _____
      within _____ Days After Acceptance, or ☐ _____
      If a liquidated damages clause is incorporated into this Agreement, Buyer and Seller shall sign a separate
      liquidated damages clause (C.A.R. Form RID) for any increased deposit at the time it is deposited.
   C. **LOAN(S):**
      (1) **FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _860,000.00_
          This loan will be conventional financing or, if checked, ☐ FHA, ☐ VA, ☐ Seller (C.A.R. Form SFA),
          ☐ assumed financing (C.A.R. Form PAA), ☐ Other _____ This loan shall be at a fixed
          rate not to exceed _5.500_ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
          Regardless of the type of loan, Buyer shall pay points not to exceed _1.50_ % of the loan amount.
      (2) ☐ **SECOND LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _____
          This loan will be conventional financing or, if checked, ☐ Seller (C.A.R. Form SFA), ☐ assumed financing
          (C.A.R. Form PAA), ☐ Other _____ This loan shall be at a fixed rate not to exceed
          _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
          the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (3) **FHA/VA:** For any FHA or VA loan specified above, Buyer has 17 (or ☐ _____ ) Days After Acceptance
          to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer
          requests Seller to pay for or repair. Seller has no obligation to pay for repairs or satisfy lender requirements
          unless otherwise agreed in writing.
   D. **ADDITIONAL FINANCING TERMS:** _____

   E. **BALANCE OF PURCHASE PRICE OR DOWN PAYMENT:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _210,000.00_
      to be deposited with Escrow Holder within sufficient time to close escrow.
   F. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _1,075,000.00_

Buyer's Initials ( _____ ) ( _____ )                                      Seller's Initials ( _____ ) ( _____ )

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or
any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED

**RPA-CA REVISED 4/10 (PAGE 1 OF 8)**        Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)**

Agent: Carl Reinhart        Phone: (714)404-8020        Fax:        Prepared using zipForm® software
Broker: Peninsula Investment Real Estate Brokerage P. O. Box 14130 Irvine, CA 92623

*19312 Fisher Lane*
Property Address: *North Tustin, CA 92705* _____ Date: *February 11, 2011*

**G. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 3H(1)) shall, within 7 (or ☐ _____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. (If checked, ☐ verification attached.)

**H. LOAN TERMS:**

(1) **LOAN APPLICATIONS:** Within 7 (or ☐ _____ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in 3C above. (If checked, ☐ letter attached.)

(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Obtaining the loan(s) specified above is a contingency of this Agreement unless otherwise agreed in writing. Buyer's contractual obligations to obtain and provide deposit, balance of down payment and closing costs are not contingencies of this Agreement.

(3) **LOAN CONTINGENCY REMOVAL:**

(i) Within 17 (or ☒ _20_ ) Days After Acceptance, Buyer shall, as specified in paragraph 14, in writing remove the loan contingency or cancel this Agreement;

OR (ii) (if checked) ☒ the loan contingency shall remain in effect until the designated loans are funded.

(4) ☐ **NO LOAN CONTINGENCY** (If checked): Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or, if checked, ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the specified purchase price. If there is a loan contingency, Buyer's removal of the loan contingency shall be deemed removal of this appraisal contingency (or, ☐ if checked, Buyer shall, as specified in paragraph 14B(3), in writing remove the appraisal contingency or cancel this Agreement within 17 (or _____ ) Days After Acceptance). If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), in writing remove the appraisal contingency or cancel this Agreement within 17 (or _____ ) Days After Acceptance.

**J.** ☐ **ALL CASH OFFER** (If checked): Buyer shall, within 7 (or _____ ) Days After Acceptance, Deliver to Seller written verification of sufficient funds to close this transaction. (If checked, ☐ verification attached.)

**K. BUYER STATED FINANCING:** Seller has relied on Buyer's representation of the type of financing specified (including but not limited to, as applicable, amount of down payment, contingent or non contingent loan, or all cash). If Buyer seeks alternate financing, (i) Seller has no obligation to cooperate with Buyer's efforts to obtain such financing, and (ii) Buyer shall also pursue the financing method specified in this Agreement. Buyer's failure to secure alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. ALLOCATION OF COSTS** (If checked): Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test or service ("Report") mentioned; it does not determine who is to pay for any work recommended or identified in the Report.

**A. INSPECTIONS AND REPORTS:**

(1) ☒ Buyer ☒ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Wood Pest Report") prepared by _____ a registered structural pest control company.

(2) ☒ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems pumped and inspected _____

(3) ☒ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____

(4) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by _____

(5) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

(6) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless exempt.

(2) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law.

**C. ESCROW AND TITLE:**

(1) ☐ Buyer ☒ Seller shall pay escrow fee *and all non-recurring closing costs* _____
Escrow Holder shall be *Seller's choice* _____

(2) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 12E _____
Owner's title policy to be issued by *Seller's choice* _____
(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

**D. OTHER COSTS:**

(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____

(2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee _____

(3) ☐ Buyer ☒ Seller shall pay Homeowner's Association ("HOA") transfer fee _____

(4) ☐ Buyer ☒ Seller shall pay HOA document preparation fees _____

(5) ☐ Buyer ☒ Seller shall pay for any private transfer fee _____

(6) ☐ Buyer ☒ Seller shall pay the cost, not to exceed $ _____ , of a one-year home warranty plan, issued by _____ , with the following optional coverages:
☒ Air Conditioner ☐ Pool/Spa ☐ Code and Permit upgrade ☐ Other: _____
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

(7) ☐ Buyer ☐ Seller shall pay for _____

(8) ☐ Buyer ☐ Seller shall pay for _____

Buyer's Initials ( ___ ) ( ___ )    Seller's Initials ( ___ ) ( _CWW_ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by _____ Date _____

**RPA-CA REVISED 4/10 (PAGE 2 OF 8)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 8)**    19312 Fisher Lane,

Property Address: *19312 Fisher Lane*
*North Tustin, CA   92705*                                    Date: *February 11, 2011*

**5. CLOSING AND POSSESSION:**
A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
B. Seller-occupied or vacant property: Possession shall be delivered to Buyer at 5 PM or ( ☐ ___10___ ☑ AM ☐ PM), on the date of Close Of Escrow; ☐ on _____ ; or ☐ no later than _____ Days After Close Of Escrow. If transfer of title and possession do not occur at the same time, Buyer and Seller are advised to: (I) enter into a written occupancy agreement (C.A.R. Form PAA, paragraph 2); and (II) consult with their insurance and legal advisors.
C. Tenant-occupied property:
(I) Property shall be vacant at least 5 (or ☐ _____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.
OR ☐ (II) (if checked) ☐ Tenant to remain in possession. (C.A.R. Form PAA, paragraph 3)
D. At Close Of Escrow, (I) Seller assigns to Buyer any assignable warranty rights for items included in the sale, and (II) Seller shall Deliver to Buyer available Copies of warranties. Brokers cannot and will not determine the assignability of any warranties.
E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**6. STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
A. (1) Seller shall, within the time specified in paragraph 14A, Deliver to Buyer, if required by Law: (I) Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (II) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordinance location (C.A.R. Form SPQ or SSD).
(2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.
(3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.
(4) If any disclosure or notice specified in 6A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After Delivery in person, or 5 Days After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.
(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.
B. NATURAL AND ENVIRONMENTAL HAZARDS: Within the time specified in paragraph 14A, Seller shall, if required by Law: (I) Deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet, (II) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (III) disclose any other zone as required by Law and provide any other information required for those zones.
C. WITHHOLDING TAXES: Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law. (C.A.R. Form AS or QS).
D. MEGAN'S LAW DATABASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**7. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
A. SELLER HAS: 7 (or _____ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision. (C.A.R. Form SPQ or SSD).
B. If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or _____ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (I) Copies of any documents required by Law; (II) disclosure of any pending or anticipated claim or litigation by or against the HOA; (III) a statement containing the location and number of designated parking and storage spaces; (IV) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

**8. ITEMS INCLUDED IN AND EXCLUDED FROM PURCHASE PRICE:**
A. NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.
B. ITEMS INCLUDED IN SALE:
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; (if checked ☐ stove(s), ☐ refrigerator(s); and
(3) The following additional items: _____
(4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
(5) All items included shall be transferred free of liens and without Seller warranty.
C. ITEMS EXCLUDED FROM SALE: Unless otherwise specified, audio and video components (such as flat screen TVs and speakers) are excluded if any such item is not itself attached to the Property, even if a bracket or other mechanism is attached to the component is attached to the Property; and

Buyer's Initials ( ___ )( ___ )                              Seller's Initials ( ___ )( ___ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 4/10 (PAGE 3 OF 8)                            Reviewed by ____ Date ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 8)**          19312 Fisher Lane,

*19312 Fisher Lane*

Property Address: **North Tustin, CA    92705**                                                 Date: **February 11, 2011**

9.  **CONDITION OF PROPERTY:** Unless otherwise agreed: (i) the Property is sold (a) in its **PRESENT** physical ("as-is") condition as of the date of Acceptance and (b) subject to Buyer's investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Seller by Close Of Escrow.
    A.  Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
    B.  Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
    C.  Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

10.  **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
    A.  Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.
    B.  Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 14B, complete Buyer Investigations and, either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
    C.  Seller shall have water, gas, electricity and all pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
    D.  Buyer indemnity and Seller protection for entry upon property: Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs of Buyer's Investigations. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination or cancellation of this Agreement and Close of Escrow.

11.  **SELLER DISCLOSURES; ADDENDA; ADVISORIES; OTHER TERMS:**
    A.  **Seller Disclosures (if checked):** Seller shall, within the time specified in paragraph 14A, complete and provide Buyer with a:
        ☒ Seller Property Questionnaire (C.A.R. Form SPQ)    **OR**    ☒ Supplemental Contractual and Statutory Disclosure (C.A.R. Form SSD)
    B.  **Addenda (if checked):**    ☐ Addendum #_____    (C.A.R. Form ADM)
        ☒ Wood Destroying Pest Inspection and Allocation of Cost Addendum (C.A.R. Form WPA)
        ☒ Purchase Agreement Addendum (C.A.R Form PAA)    ☒ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI)
        ☐ Short Sale Addendum (C.A.R. Form SSA)    ☐ Other _____
    C.  **Advisories (if checked):**    ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
        ☐ Probate Advisory (C.A.R. Form PAK)    ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
        ☐ Trust Advisory (C.A.R. Form TA)    ☐ REO Advisory (C.A.R. Form REO)
    D.  **Other Terms:** *One Seller is a California real estate licensee.  Sale is subject to Court approval.*

12.  **TITLE AND VESTING:**
    A.  Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report, which shall include a search of the General Index. Seller shall within 7 Days After Acceptance give Escrow Holder a completed Statement of Information. The preliminary report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.
    B.  Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
    C.  Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
    D.  At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
    E.  Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, survey requirements, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

13.  **SALE OF BUYER'S PROPERTY:**
    A.  This Agreement is **NOT** contingent upon the sale of any property owned by Buyer.
    OR B.  ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

Buyer's Initials ( _____ ) ( _____ )                                    Seller's Initials ( _____ ) ( _____ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**RPA-CA REVISED 4/10 (PAGE 4 OF 8)**

Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 8)**                                    *19312 Fisher Lane,*

19312 Fisher Lane

Property Address: North Tustin, CA  92705 _____    Date: February 11, 2011 _____

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

**A.** **SELLER HAS: 7 (or ☐ _____ ) Days After Acceptance** to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 4, 6A, B and C, 7A, 9A, 11A and B, and 12. Buyer may give Seller a Notice to Seller to Perform (C.A.R. Form NSP) if Seller has not Delivered the items within the time specified.

**B.** **(1) BUYER HAS: 17 (or ☐ _____ ) Days After Acceptance,** unless otherwise agreed in writing, to:

(i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all other matters affecting the Property; and

(ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures Delivered by Seller in accordance with paragraph 6A.

(2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

(3) Within the time specified in 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller either (i) a removal of the applicable contingency (C.A.R. Form CR), or (ii) a cancellation (C.A.R. Form CC) of this Agreement based upon a contingency or Seller's failure to Deliver the specified items. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in 14A, then Buyer has 5 (or ☐ _____ ) Days After Delivery of any such items, or the time specified in 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

(4) **Continuation of Contingency:** Even after the end of the time specified in 14B(1) and before Seller cancels this Agreement, if at all, pursuant to 14C, Buyer retains the right to either (i) in writing remove remaining contingencies, or (ii) cancel this Agreement based upon a remaining contingency or Seller's failure to Deliver the specified terms. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to 14C(1).

**C.** **SELLER RIGHT TO CANCEL:**

(1) **Seller right to Cancel; Buyer Contingencies:** If, within the time specified in this Agreement, Buyer does not, in writing, Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP) may cancel this Agreement. In such event, Seller shall authorize return of Buyer's deposit.

(2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first Delivering to Buyer a NBP may cancel this Agreement for any of the following reasons: (i) if Buyer fails to deposit funds as required by 3A or 3B; (ii) if the funds deposited pursuant to 3A or 3B are not good when deposited; (iii) if Buyer fails to Deliver a notice of FHA or VA costs or terms as required by 3C(3) (C.A.R. Form FVA); (iv) if Buyer fails to Deliver a letter as required by 3H; (v) if Buyer fails to Deliver verification as required by 3G or 3J; (vi) if Seller reasonably disapproves of the verification provided by 3G or 3J; (vii) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 6A(2); or (viii) if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraphs 3B and 25. In such event, Seller shall authorize return of Buyer's deposit.

(3) **Notice To Buyer To Perform:** The NBP shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 2 (or ☐ _____ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet an obligation specified in 14C(2).

**D.** **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall with regard to that contingency or cancellation right conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections or for inability to obtain financing.

**E.** **CLOSE OF ESCROW:** Before Seller or Buyer may cancel this Agreement for failure of the other party to close escrow pursuant to this Agreement, Seller or Buyer must first give the other a demand to close escrow (C.A.R. Form DCE).

**F.** **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A Buyer or Seller may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

**15. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

**16. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 9; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are a current lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are a current lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

Buyer's Initials ( ____ ) ( ____ )                    Seller's Initials ( ____ ) ( ____ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

**RPA-CA REVISED 4/10 (PAGE 5 OF 8)**

Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)**

19312 Fisher Lane,

*19312 Fisher Lane*

Property Address: *North Tustin, CA  92705*                                     Date: *February 11, 2011*

18. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

19. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

20. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

21. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 26A.

22. **DEFINITIONS:** As used in this Agreement:
   A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
   B. **"C.A.R. Form"** means the specific form referenced or another comparable form agreed to by the parties.
   C. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded.
   D. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
   E. **"Days"** means calendar days. However, After Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
   F. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
   G. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   H. **"Deliver", "Delivered" or "Delivery",** regardless of the method used (i.e. messenger, mail, email, fax, other), means and shall be effective upon (i) personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in paragraph D of the section titled Real Estate Brokers on page 8; OR (ii) if checked, ☐ per the attached addendum (C.A.R. Form RDN).
   I. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other party.
   J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
   K. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
   L. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

23. **BROKER COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

24. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 3, 4, 6C, 11B and D, 12, 13B, 14F, 17, 22, 23, 24, 28, 30, and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 23, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out of Buyer's or Seller's funds, or both, as applicable, the respective Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not specifically referenced above, in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.
   B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____ ). Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.
   C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 23 and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 23, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if either Buyer or Seller instruct Escrow Holder to cancel escrow.
   D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

Buyer's Initials ( ___ )( ___ )          Seller's Initials ( ___ )( ___ )

| Reviewed by _____ Date _____ |

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC
**RPA-CA REVISED 4/10 (PAGE 6 OF 8) Print Date**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)**          19312 Fisher Lane.

Property Address: *19312 Fisher Lane*
*North Tustin, CA   92705*                                    Date: *February 11, 2011*

**25. LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release Instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF THE INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID).

| Buyer's Initials _____ / _____ | Seller's Initials _____ / _____ |
|---|---|

**26. DISPUTE RESOLUTION:**

   **A. MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Buyer and Seller also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 26C.

   **B. ARBITRATION OF DISPUTES:**

   **Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. Buyer and Seller also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 26C.**

        **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

        **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

| Buyer's Initials _____ / _____ | Seller's Initials _____ / _____ |
|---|---|

   **C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:**

     **(1) EXCLUSIONS:** The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.

     **(2) BROKERS:** Brokers shall not be obligated or compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

**27. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all parties initial such paragraph(s), a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**28. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

Buyer's Initials ( _____ ) ( _____ )          Seller's Initials ( _____ ) ( _____ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC
RPA-CA REVISED 4/10 (PAGE 7 OF 8)

| Reviewed by _____ Date _____ |
|---|

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 8)          19312 Fisher Lane.

Property Address: *19312 Fisher Lane*
*North Tustin, CA  92705* _____ Date: *February 11, 2011*

**29. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or, if checked, ☐ by _____, ☐ AM/ ☐ PM, on _____ (date)).

Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships.

Date _____   Date _____

BUYER _____   BUYER _____

*Milagros Elhaj*   (Print name)
(Print name)

(Address)

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

**30. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form CO) DATED: _____

Date _____   Date _____

SELLER _____   SELLER _____

*Carl H. Reinhart*   *George and Ellen Minichiello*
(Print name)   (Print name)

(Address)

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

(_____)   **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized
(Initials)   agent on (date) _____ at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement. It is solely intended to evidence the date that Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
A.  Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B.  Agency relationships are confirmed as stated in paragraph 2.
C.  If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D.  **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker. Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) *Ridgecrest Investments* _____ DRE Lic. # *00420581*
By *Ron Stevens* DRE Lic. # *00420581* _____ Date _____
Address *351 North Ford, #127* _____ City *Fullerton* _____ State *CA* _____ Zip *92832*
Telephone *(714)318-2217* _____ Fax _____ E-mail *ronnystime@aol.com*

Real Estate Broker (Listing Firm) *Peninsula Investment R. E. Brokerage* _____ DRE Lic. # *01250970*
By *Carl H. Reinhart* DRE Lic. # *0647355* _____ Date _____
Address *Post Office Box 14130* _____ City *Irvine* _____ State *CA* _____ Zip *92623*
Telephone *(714)404-8020* _____ Fax _____ E-mail *creinhart@peninsulaireb.com*

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $_____ ),
counter offer numbered _____ , ☐ Seller's Statement of Information and ☐ Other_____
_____ , and agrees to act as Escrow Holder subject to paragraph 24 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions if any.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____   Escrow # _____
By _____   Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

---

**PRESENTATION OF OFFER:** (_____ ) Listing Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** (_____)(_____) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

---

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
● 525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____
Broker or Designee _____ Date _____

**REVISION DATE 4/10**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 8)**

*19312 Fisher Lane.*



**CALIFORNIA ASSOCIATION OF REALTORS®**

**BUYER'S INSPECTION ADVISORY**

**(C.A.R. Form BIA-A, Revised 10/02)**

Property Address: _19312 Fisher Lane, North Tustin  CA  92705_ ("Property").

**A. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. For this reason, you should conduct thorough investigations of the Property personally and with professionals who should provide written reports of their investigations. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**B. BUYER RIGHTS AND DUTIES:** You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. The purchase agreement gives you the right to investigate the Property. If you exercise this right, and you should, you must do so in accordance with the terms of that agreement. This is the best way for you to protect yourself. It is extremely important for you to read all written reports provided by professionals and to discuss the results of inspections with the professional who conducted the inspection. You have the right to request that Seller make repairs, corrections or take other action based upon items discovered in your investigations or disclosed by Seller. If Seller is unwilling or unable to satisfy your requests, or you do not want to purchase the Property in its disclosed and discovered condition, you have the right to cancel the agreement if you act within specific time periods. If you do not cancel the agreement in a timely and proper manner, you may be in breach of contract.

**C. SELLER RIGHTS AND DUTIES:** Seller is required to disclose to you material facts known to him/her that affect the value or desirability of the Property. However, Seller may not be aware of some Property defects or conditions. Seller does not have an obligation to inspect the Property for your benefit nor is Seller obligated to repair, correct or otherwise cure known defects that are disclosed to you or previously unknown defects that are discovered by you or your inspectors during escrow. The purchase agreement obligates Seller to make the Property available to you for investigations.

**D. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as soil stability, geologic or environmental conditions, hazardous or illegal controlled substances, structural conditions of the foundation or other improvements, or the condition of the roof, plumbing, heating, air conditioning, electrical, sewer, septic, waste disposal, or other system. The only way to accurately determine the condition of the Property is through an inspection by an appropriate professional selected by you. If Broker gives you referrals to such professionals, Broker does not guarantee their performance. You may select any professional of your choosing. In sales involving residential dwellings with no more than four units, Brokers have a duty to make a diligent visual inspection of the accessible areas of the Property and to disclose the results of that inspection. However, as some Property defects or conditions may not be discoverable from a visual inspection, it is possible Brokers are not aware of them. If you have entered into a written agreement with a Broker, the specific terms of that agreement will determine the nature and extent of that Broker's duty to you. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

**E. YOU ARE ADVISED TO CONDUCT INVESTIGATIONS OF THE ENTIRE PROPERTY, INCLUDING, BUT NOT LIMITED TO THE FOLLOWING:**

1. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof, plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa, other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property. (Structural engineers are best suited to determine possible design or construction defects, and whether improvements are structurally sound.)

2. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. (Professionals such as appraisers, architects, surveyors and civil engineers are best suited to determine square footage, dimensions and boundaries of the Property.)

3. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms and other infestation or infection. Inspection reports covering these items can be separated into two sections: Section 1 identifies areas where infestation or infection is evident. Section 2 identifies areas where there are conditions likely to lead to infestation or infection. A registered structural pest control company is best suited to perform these inspections.

4. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage. (Geotechnical engineers are best suited to determine such conditions, causes and remedies.)

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Buyer's Initials ( ____ )( ____ )
Seller's Initials ( ____ )( ____ )

| Reviewed by | Date |
|---|---|



**BIA-A REVISED 10/02 (PAGE 1 OF 2)**

**BUYER'S INSPECTION ADVISORY (BIA-A PAGE 1 OF 2)**

| Agent: Carl Reinhart | Phone: (714)404-8020 | Fax: | Prepared using zipForm® software |
|---|---|---|---|
| Broker: Peninsula Investment Real Estate Brokerage P. O. Box 14130 Irvine, CA 92623 | | | |

Property Address: _19312 Fisher Lane, North Tustin  CA  92705_____    Date: _February 11, 2011_

6. **ROOF:** Present condition, age, leaks, and remaining useful life. (Roofing contractors are best suited to determine these conditions.)
7. **POOL/SPA:** Cracks, leaks or operational problems. (Pool contractors are best suited to determine these conditions.)
8. **WASTE DISPOSAL:** Type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
8. **WATER AND UTILITES; WELL SYSTEMS AND COMPONENTS:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components.
9. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants). (For more information on these items, you may consult an appropriate professional or read the booklets "Environmental Hazards: A Guide for Homeowners, Buyers, Landlords and Tenants," "Protect Your Family From Lead in Your Home" or both.)
10. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood. (A Geologist or Geotechnical Engineer is best suited to provide information on these conditions.)
11. **FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies. (An insurance agent is best suited to provide information on these conditions.)
12. **BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. (Such information is available from appropriate governmental agencies and private information providers. Brokers are not qualified to review or interpret any such information.)
13. **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements. (Government agencies can provide information about these restrictions and other requirements.)
14. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property. Compliance requirements differ from city to city and county to county. Unless specifically agreed, the Property may not be in compliance with these requirements. (Local government agencies can provide information about these restrictions and other requirements.)
15. **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (x) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyer is encouraged to read it carefully.

_____   2-16-11      _____   2-12-11
Buyer Signature           Date          Buyer Signature           Date
Milagros Elhaj                          Glen G Minichiello

_____              _____   2-12-11
Seller Signature          Date         Seller Signature          Date
Carl H. Reinhart                        George and Ellen Minichiollo

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

BIA-A REVISED 10/02 (PAGE 2 OF 2)    **BUYER'S INSPECTION ADVISORY (BIA-A PAGE 2 OF 2)**    19312 Fisher Lane,

Escrow No. _____
19312 Fisher Lane
North Tustin, CA. 92705

RIDER TO RESIDENTIAL PURCHASE AGREEMENT AND
JOINT ESCROW INSTRUCTIONS DATED FEBRUARY 11,
2011, BETWEEN MILAGROS ELHAJ, AS BUYER, AND
CARL M. REINHART, GEORGE AND ELLEN MINICHIELLE,
AS SELLERS

16.    Contingency to Close of Escrow.  Buyer's obligation to perform under this
Agreement and the Close of Escrow is contingent upon the concurrent closing of
Escrow No. _____ whereby Sellers in this Escrow are the buyers purchasing the
real property commonly known as 2429 Andover Place, Costa Mesa, CA. 92626 (the
"Separate Escrow") from Buyer (the owner, as Trustee, of the Andover Place property).
Neither of the foregoing escrows shall close and neither party (parties) is/are required to
perform the terms and conditions of the respective purchase agreements unless both
escrows close concurrently.

17.    Transfer of Down Payment to Separate Escrow.  Upon Close of Escrow of this
Escrow (for the sale of the Fisher Lane property), sufficient cash funds due Sellers from
Buyer shall be transferred to the Separate Escrow for the sale of the Andover Place
property in order for the buyers in the Separate Escrow to have sufficient funds to pay
the Down Payment and all closing costs in the Separate Escrow.  In lieu of an actual
transfer of funds, a credit may be issued to Buyer in this Escrow and a debit charged
buyer in the Separate Escrow, in order to carry out the intent of the parties.

18.    Designation of Escrow Agent.  Escrow designated for this transaction and for the
Separate Escrow shall be ~~Investors Title Company~~, whose address is
116 Fashion Ln _____ , Tustin , California; M. Vanderberg Escrow Officer.

19.    Outside Closing Date.  In the event both escrows are not yet in a position to
close concurrently by May 15, 2011, then either party may cancel the purchase
agreement and escrow at any time thereafter by the terminating party giving the non-
terminating party not less than five (5) calendar days' written notice.

Buyer Initials _____          Sellers Initials _____



CALIFORNIA ASSOCIATION OF REALTORS®

**CALIFORNIA**
**RESIDENTIAL PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
For Use With Single Family Residential Property — Attached or Detached
(C.A.R. Form RPA-CA, Revised 4/10)

Date **February 11, 2011**

1. **OFFER:**
   A. THIS IS AN OFFER FROM ____**Carl H. Reinhart, George and Ellen Minichiello**____ ("Buyer").
   B. THE REAL PROPERTY TO BE ACQUIRED is described as **2420 Andover Place, Costa Mesa, CA  92626**
      _____. Assessor's Parcel No. _____, situated in
      ____**Costa Mesa**____, County of ____**Orange**____, California, ("Property").
   C. THE PURCHASE PRICE offered is **Five Hundred Thousand**
      _____ (Dollars $ **500,000.00** )
   D. CLOSE OF ESCROW shall occur on _____ (date) (or ☒ __60__ Days After Acceptance).

2. **AGENCY:**
   A. DISCLOSURE: Buyer and Seller each acknowledge prior receipt of a "Disclosure Regarding Real Estate Agency Relationships"
      (C.A.R. Form AD).
   B. POTENTIALLY COMPETING BUYERS AND SELLERS: Buyer and Seller each acknowledge receipt of a disclosure of the possibility of
      multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer representation
      agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential
      buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also
      represent other sellers with competing properties of interest to this Buyer.
   C. CONFIRMATION: The following agency relationships are hereby confirmed for this transaction:
      Listing Agent ____**Ridgecrest Investments**____ (Print Firm Name) is the agent
      of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
      Selling Agent ____**Peninsula Investment R. E. Brokerage**____ (Print Firm Name) (if not the same as the
      Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate
      Brokers are not parties to the Agreement between Buyer and Seller.

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Deposit shall be in the amount of .................................................. $ ____**5,000.00**____
      (1) Buyer shall deliver deposit directly to Escrow Holder by personal check, ☐ electronic funds transfer, ☐ Other
         _____ within 3 business days after acceptance (or ☐ Other _____);
      OR (2) (If checked) ☐ Buyer has given the deposit by personal check (or ☐ _____ )
         to the agent submitting the offer (or to ☐ _____ ),
         made payable to _____. The deposit shall be held
         uncashed until Acceptance and then deposited with Escrow Holder (or ☐ into Broker's trust account) within ____
         business days after Acceptance (or ☐ Other _____ ).
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of ............ $ _____
      within _____ Days After Acceptance, or ☐ _____
      If a liquidated damages clause is incorporated into this Agreement, Buyer and Seller shall sign a separate
      liquidated damages clause (C.A.R. Form RID) for any increased deposit at the time it is deposited.
   C. LOAN(S):
      (1) FIRST LOAN: in the amount of .................................................................. $ ____**361,000.00**____
         This loan will be conventional financing or, if checked, ☐ FHA, ☐ VA, ☐ Seller (C.A.R. Form SFA),
         ☐ assumed financing (C.A.R. Form PAA), ☒ Other __**subject to**__. This loan shall be at a fixed
         rate not to exceed __5.752__ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
         Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (2) ☐ SECOND LOAN: in the amount of ............................................................ $ _____
         This loan will be conventional financing or, if checked, ☐ Seller (C.A.R. Form SFA), ☐ assumed financing
         (C.A.R. Form PAA). ☐ Other _____ This loan shall be at a fixed rate not to exceed
         _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
         the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (3) FHA/VA: For any FHA or VA loan specified above, Buyer has 17 (or _____ ) Days After Acceptance
         to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer
         requests Seller to pay for or repair. Seller has no obligation to pay for repairs or satisfy lender requirements
         unless otherwise agreed in writing.
   D. ADDITIONAL FINANCING TERMS: *terms relating to taking primary*
      *subject to, to be established and agreed upon by Feb 23rd*
   E. BALANCE OF PURCHASE PRICE OR DOWN PAYMENT: in the amount of ............................. $ ____**134,000.00**____
      to be deposited with Escrow Holder within sufficient time to close escrow.
   F. PURCHASE PRICE (TOTAL): ........................................................................ $ ____**500,000.00**____

Buyer's Initials ( _____ )( _____ )          Seller's Initials ( _____ )( _____ )

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or
any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

RPA-CA REVISED 4/10 (PAGE 1 OF 8)          Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)**

Agent: Carl Reinhart          Phone: (714)404-8020     Fax:          Prepared using zipForm® software
Broker: Peninsula Investment Real Estate Brokerage P. O. Box 14130 Irvine, CA 92623

*2429 Andover Place*
Property Address: *Costa Mesa, CA   92626*_____    Date: *February 11, 2011*_____

G. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 3H(1)) shall, within 7 (or
☐ _____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. (If checked, ☐
verification attached.)

H. **LOAN TERMS:**
(1) **LOAN APPLICATIONS:** Within 7 (or ☐ _____ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in 3C above. (If checked, ☐ letter attached.)
(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Obtaining the loan(s) specified above is a contingency of this Agreement unless otherwise agreed in writing. Buyer's contractual obligations to obtain and provide deposit, balance of down payment and closing costs are not contingencies of this Agreement.
(3) **LOAN CONTINGENCY REMOVAL:**
(i) Within 17 (or ☐ ___ 20 ___ ) Days After Acceptance, Buyer shall, as specified in paragraph 14, in writing remove the loan contingency or cancel this Agreement;
OR (ii) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
(4) ☐ **NO LOAN CONTINGENCY** (if checked): Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

I. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or, if checked, ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the specified purchase price. If there is a loan contingency, Buyer's removal of the loan contingency shall be deemed removal of this appraisal contingency (or, ☐ if checked, Buyer shall, as specified in paragraph 14B(3), in writing remove the appraisal contingency or cancel this Agreement within 17 (or _____ ) Days After Acceptance). If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), in writing remove the appraisal contingency or cancel this Agreement within 17 (or _____ ) Days After Acceptance.

J. ☐ **ALL CASH OFFER** (if checked): Buyer shall, within 7 (or ☐ _____ ) Days After Acceptance, Deliver to Seller written verification of sufficient funds to close this transaction. (If checked, ☐ verification attached.)

K. **BUYER STATED FINANCING:** Seller has relied on Buyer's representation of the type of financing specified (including but not limited to, as applicable, amount of down payment, contingent or non contingent loan, or all cash). If Buyer seeks alternate financing, (i) Seller has no obligation to cooperate with Buyer's efforts to obtain such financing, and (ii) Buyer shall also pursue the financing method specified in this Agreement. Buyer's failure to secure alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

4. **ALLOCATION OF COSTS** (if checked): Unless otherwise specified in writing, this paragraph only determines who is to pay for the inspection, test or service ("Report") mentioned; it does not determine who is to pay for any work recommended or identified in the Report.
A. **INSPECTIONS AND REPORTS:**
(1) ☒ Buyer ☐ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Wood Pest Report") prepared by _____ a registered structural pest control company.
(2) ☒ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems pumped and inspected _____
(3) ☒ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____
(4) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by _____
(5) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____
(6) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____
B. **GOVERNMENT REQUIREMENTS AND RETROFIT:**
(1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless exempt.
(2) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. _____
C. **ESCROW AND TITLE:**
(1) ☐ Buyer ☒ Seller shall pay escrow fee _____
Escrow Holder shall be *Buyer's choice*_____
(2) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 12E _____
Owner's title policy to be issued by *Buyer's choice*_____
(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)
D. **OTHER COSTS:**
(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____
(2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee _____
(3) ☐ Buyer ☒ Seller shall pay Homeowner's Association ("HOA") transfer fee _____
(4) ☐ Buyer ☒ Seller shall pay HOA document preparation fees _____
(5) ☐ Buyer ☒ Seller shall pay for any private transfer fee _____
(6) ☐ Buyer ☒ Seller shall pay the cost, not to exceed $ _____ , of a one-year home warranty plan,
issued by _____ , with the following optional coverages:
☒ Air Conditioner ☐ Pool/Spa ☐ Code and Permit upgrade ☐ Other: _____
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
(7) ☐ Buyer ☐ Seller shall pay for _____
(8) ☐ Buyer ☐ Seller shall pay for _____

Buyer's Initials ( _____ )( *G H 14 14* )    Seller's Initials ( _____ )( _____ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC
**RPA-CA REVISED 4/10 (PAGE 2 OF 8)**    Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 8)**    2429 Andover

*2429 Andover Place*

Property Address: Costa Mesa, CA  92626                    Date: February 11, 2011

**5. CLOSING AND POSSESSION:**

  **A.** Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.

  **B.** Seller-occupied or vacant property: Possession shall be delivered to Buyer at 5 PM or ( ☐ __10:00__ ☒ AM☐ PM), on the date of Close Of Escrow; ☐ on _____ ; or ☐ no later than _____ Days After Close Of Escrow. If transfer of title and possession do not occur at the same time, Buyer and Seller are advised to: (I) enter into a written occupancy agreement (C.A.R. Form PAA, paragraph 2); and (II) consult with their insurance and legal advisors.

  **C.** Tenant-occupied property:

    **(i)** Property shall be vacant at least 5 (or ☐ _____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

    OR **(ii)** (if checked) ☒ Tenant to remain in possession. (C.A.R. Form PAA, paragraph 3)

  **D.** At Close Of Escrow, (I) Seller assigns to Buyer any assignable warranty rights for items included in the sale, and (II) Seller shall Deliver to Buyer available Copies of warranties. Brokers cannot and will not determine the assignability of any warranties.

  **E.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**6. STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

  **A. (1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer, if required by Law: (I) Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (II) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordinance location (C.A.R. Form SPQ or SSD).

    **(2)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.

    **(3)** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.

    **(4)** If any disclosure or notice specified in 6A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After Delivery in person, or 5 Days After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.

    **(5)** Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

  **B.** NATURAL AND ENVIRONMENTAL HAZARDS: Within the time specified in paragraph 14A, Seller shall, if required by Law: (I) Deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (II) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (III) disclose any other zone as required by Law and provide any other information required for those zones.

  **C.** WITHHOLDING TAXES: Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law. (C.A.R. Form AS or QS).

  **D.** MEGAN'S LAW DATABASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**7. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

  **A.** SELLER HAS: 7 (or ☐ _____ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or SSD).

  **B.** If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or ☐ _____ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (I) Copies of any documents required by Law; (II) disclosure of any pending or anticipated claim or litigation by or against the HOA; (III) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

**8. ITEMS INCLUDED IN AND EXCLUDED FROM PURCHASE PRICE:**

  **A.** NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.

  **B.** ITEMS INCLUDED IN SALE:

    **(1)** All EXISTING fixtures and fittings that are attached to the Property;

    **(2)** EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; (if checked ☐ stove(s), ☐ refrigerator(s); and

    **(3)** The following additional items: _____

    **(4)** Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.

    **(5)** All items included shall be transferred free of liens and without Seller warranty.

  **C.** ITEMS EXCLUDED FROM SALE: Unless otherwise specified, audio and video components (such as flat screen TVs and speakers) are excluded if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component is attached to the Property; and

Buyer's Initials ( _____ ) ( __6-14-14-Man__ )       Seller's Initials ( _____ ) ( _____ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.    Reviewed by _____ Date _____

**RPA-CA REVISED 4/10 (PAGE 3 OF 8)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 8)**    2429 Andover

*2429 Andover Place*
Property Address: **Costa Mesa, CA  92626**                                    Date: **February 11, 2011**

9. **CONDITION OF PROPERTY:** Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical ("as-is") condition as of the date of Acceptance and (b) subject to Buyer's investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Seller by Close Of Escrow.
   A. Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
   B. Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
   C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

10. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 14B, complete Buyer Investigations and, either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
   C. Seller shall have water, gas, electricity and all utilities and pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
   D. **Buyer indemnity and Seller protection for entry upon property:** Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs of Buyer's Investigations. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination or cancellation of this Agreement and Close of Escrow.

11. **SELLER DISCLOSURES; ADDENDA; ADVISORIES; OTHER TERMS:**
   A. **Seller Disclosures (if checked):** Seller shall, within the time specified in paragraph 14A, complete and provide Buyer with a:

| | | |
|---|---|---|
| ☒ Seller Property Questionnaire (C.A.R. Form SPQ) | **OR** | ☒ Supplemental Contractual and Statutory Disclosure (C.A.R. Form SSD) |

   B. **Addenda (if checked):** ☐ Addendum # _____ (C.A.R. Form ADM)

| | |
|---|---|
| ☒ Wood Destroying Pest Inspection and Allocation of Cost Addendum (C.A.R. Form WPA) | |
| ☐ Purchase Agreement Addendum (C.A.R. Form PAA) | ☒ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

   C. **Advisories (if checked):** ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)

| | |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PAK) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |

   D. **Other Terms:** One Buyer is a California real estate licensee.  Sale is subject to Court approval.

12. **TITLE AND VESTING:**
   A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report, which shall include a search of the General Index. Seller shall within 7 Days After Acceptance give Escrow Holder a completed Statement of Information. The preliminary report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.
   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
   C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
   D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
   E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, survey requirements, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

13. **SALE OF BUYER'S PROPERTY:**
   A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.
   OR B. ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

Buyer's Initials ( _CeuL_ )( _G-H W_ )( _HY_ )              Seller's Initials ( ___ )( ___ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**RPA-CA REVISED 4/10 (PAGE 4 OF 8)**

| Reviewed by | Date |
|---|---|



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 8)**            2429 Andover

*2429 Andover Place*
Property Address: *Costa Mesa, CA  92626*                          Date: *February 11, 2011*

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

  **A. SELLER HAS: 7 (or ☐ _____ )** Days After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 4, 6A, B and C, 7A, 9A, 11A and B, and 12. Buyer may give Seller a Notice to Seller to Perform (C.A.R. Form NSP) if Seller has not Delivered the items within the time specified.

  **B. (1) BUYER HAS: 17 (or ☐ _____ )** Days After Acceptance, unless otherwise agreed in writing, to:
    (i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all other matters affecting the Property; and
    (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures Delivered by Seller in accordance with paragraph 6A.
    (2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.
    (3) Within the time specified in 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller either (i) a removal of the applicable contingency (C.A.R. Form CR), or (ii) a cancellation (C.A.R. Form CC) of this Agreement based upon a contingency or Seller's failure to Deliver the specified items. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in 14A, then Buyer has **5 (or ☐ _____ )** Days After Delivery of any such items, or the time specified in 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
    (4) Continuation of Contingency: Even after the end of the time specified in 14B(1) and before Seller cancels this Agreement, if at all, pursuant to 14C, Buyer retains the right to either (i) in writing remove remaining contingencies, or (ii) cancel this Agreement based upon a remaining contingency or Seller's failure to Deliver the specified terms. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to 14C(1).

  **C. SELLER RIGHT TO CANCEL:**
    (1) Seller right to Cancel; Buyer Contingencies: If, within time specified in this Agreement, Buyer does not, in writing, Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP) may cancel this Agreement. In such event, Seller shall authorize return of Buyer's deposit.
    (2) Seller right to Cancel; Buyer Contract Obligations: Seller, after first Delivering to Buyer a NBP may cancel this Agreement for any of the following reasons: (i) if Buyer fails to deposit funds as required by 3A or 3B, (ii) if the funds deposited pursuant to 3A or 3B are not good when deposited, (iii) if Buyer fails to Deliver a notice of FHA or VA costs or terms as required by 3C(3) (C.A.R. Form FVA); (iv) if Buyer fails to Deliver a letter as required by 3H; (v) if Buyer fails to Deliver verification as required by 3G or 3J, (vi) if Seller reasonably disapproves of the verification provided by 3G or 3J; (vii) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 6A(2); or (viii) if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraphs 3B and 25. In such event, Seller shall authorize return of Buyer's deposit.
    (3) Notice To Buyer To Perform: The NBP shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least **2 (or ☐ _____ )** Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet an obligation specified in 14C(2).

  **D. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall with regard to that contingency or cancellation right conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections or for inability to obtain financing.
  **E. CLOSE OF ESCROW:** Before Seller or Buyer may cancel this Agreement due to the other party to close escrow pursuant to this Agreement, Seller or Buyer must first give the other a demand to close escrow (C.A.R. Form DCE).
  **F. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A Buyer or Seller may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

**15. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

**16. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within **5 (or _____ )** Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 9; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are a current lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are a current lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

Buyer's Initials ( ____ )( ____ )       Seller's Initials ( ____ )( ____ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**RPA-CA REVISED 4/10 (PAGE 5 OF 8)**

Reviewed by _____ Date _____   

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)**   2429 Andover

*2429 Andover Place*

Property Address: *Costa Mesa, CA  92626*               Date: *February 11, 2011*

**18. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**19. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

**20. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**21. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 26A.

**22. DEFINITIONS:** As used in this Agreement:

  **A.** "Acceptance" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.

  **B.** "C.A.R. Form" means the specific form referenced or another comparable form agreed to by the parties.

  **C.** "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded.

  **D.** "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.

  **E.** "Days" means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

  **F.** "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.

  **G.** "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

  **H.** "Deliver", "Delivered" or "Delivery", regardless of the method used (i.e. messenger, mail, email, fax, other), means and shall be effective upon (i) personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in paragraph D of the section titled Real Estate Brokers on page 8; OR (ii) if checked, ☐ per the attached addendum (C.A.R. Form RDN).

  **I.** "Electronic Copy" or "Electronic Signature" means as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other party.

  **J.** "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

  **K.** "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

  **L.** "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.

**23. BROKER COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

**24. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

  **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 3, 4, 6C, 11B and D, 12, 13B, 14F, 17, 22, 23, 24, 28, 30, and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 23, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out of Buyer's or Seller's funds, or both, as applicable, the respective Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not specifically referenced above, in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

  **B.** A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____ ). Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

  **C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 23 and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 23, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if either Buyer or Seller instruct Escrow Holder to cancel escrow.

  **D.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

Buyer's Initials ( ___ )( ___ )      *GHM*   *JE*                 Seller's Initials ( ___ )( ___ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

**RPA-CA REVISED 4/10 (PAGE 6 OF 8) Print Date**

| Reviewed by _____ Date _____ |



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)**      2429 Andover

Property Address: *2429 Andover Place*
*Costa Mesa, CA  92626*                                     Date: *February 11, 2011*

**25. LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF THE INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID).

| Buyer's Initials _____ / _____ | Seller's Initials _____ / _____ |

**26. DISPUTE RESOLUTION:**

**A. MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Buyer and Seller also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 26C.

**B. ARBITRATION OF DISPUTES:**
Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. Buyer and Seller also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 26C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

| Buyer's Initials _____ / _____ | Seller's Initials _____ / _____ |

**C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:**

(1) **EXCLUSIONS:** The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.

(2) **BROKERS:** Brokers shall not be obligated or compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

**27. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all parties initial such paragraph(s), a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**28. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

Buyer's Initials ( _____ )( _____ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS® INC
**RPA-CA REVISED 4/10 (PAGE 7 OF 8)**

Seller's Initials ( _____ )( _____ )

| Reviewed by _____ | Date _____ |

**2429 Andover Place**
Property Address: *Costa Mesa, CA  92626*                        Date: *February 11, 2011*

**29. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ who is authorized to receive it, by 5:00 PM on the third, Day after this offer is signed by Buyer (or, if checked, ☐ by _____, ☐ AM ☐ PM, on _____ (date)).
Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships.

Date *2/17/11*                                                      Date *2/17/11*
BUYER *Carl Reinhart*                                              BUYER *[signature]*
*Carl H. Reinhart*                                                 *George and Ellen Minichiello*
(Print name)                                                       (Print name)
(Address)
☐ Additional Signature Addendum attached (C.A.R. Form ASA).

**30. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.
☐ (if checked) SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form CO) DATED: _____
Date *2/16/11*                                                    Date _____
SELLER *[signature]*                                              SELLER _____
*Milagros Ethat*                                                  (Print name)
(Print name)
(Address)
☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( *OciA* ) **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized
(Initials) agent on (date) _____ at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement. It is solely intended to evidence the date that Confirmation of Acceptance has occurred.

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☒ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker. Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exits.

Real Estate Broker (Selling Firm) *Peninsula Investment R. E. Brokerage*   DRE Lic. # *01250970*
By *Carl H. Reinhart* DRE Lic. # *0647355*   Date *02/11/2011*
Address *Post Office Box 14130*   City *Irvine*   State *CA*   Zip *92623(714)*
Telephone *(714)404-8020*   Fax _____   E-mail *creinhart@peninsulaireb.com*

Real Estate Broker (Listing Firm) *Ridgecrest Investments*   DRE Lic. # *00420581*
By *Ron Stevens* DRE Lic. # *00420581*   Date *02/11/2011*
Address *351 North Ford, #127*   City *Fullerton*   State *CA*   Zip *92832*
Telephone *(714)318-2217*   Fax _____   E-mail *ronnystime@aol.com*

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbered _____, ☐ Seller's Statement of Information and ☐ Other _____,
and agrees to act as Escrow Holder subject to paragraph 24 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions if any.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____   Escrow # _____
By _____   Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ )( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.
Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____
Broker or Designee _____ Date _____

REVISION DATE 4/10
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 8)**   2429 Andover

CALIFORNIA
ASSOCIATION
OF REALTORS®

**BUYER'S INSPECTION ADVISORY**
(C.A.R. Form BIA-A, Revised 10/02)

Property Address: _2429 Andover Place, Costa Mesa  CA  92626_____ ("Property").

**A. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. For this reason, you should conduct thorough investigations of the Property personally and with professionals who should provide written reports of their investigations. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**B. BUYER RIGHTS AND DUTIES:** You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. The purchase agreement gives you the right to investigate the Property. If you exercise this right, and you should, you must do so in accordance with the terms of that agreement. This is the best way for you to protect yourself. It is extremely important for you to read all written reports provided by professionals and to discuss the results of inspections with the professional who conducted the inspection. You have the right to request that Seller make repairs, corrections or take other action based upon items discovered in your investigations or disclosed by Seller. If Seller is unwilling or unable to satisfy your requests, or you do not want to purchase the Property in its disclosed and discovered condition, you have the right to cancel the agreement if you act within specific time periods. If you do not cancel the agreement in a timely and proper manner, you may be in breach of contract.

**C. SELLER RIGHTS AND DUTIES:** Seller is required to disclose to you material facts known to him/her that affect the value or desirability of the Property. However, Seller may not be aware of some Property defects or conditions. Seller does not have an obligation to inspect the Property for your benefit nor is Seller obligated to repair, correct or otherwise cure known defects that are disclosed to you or previously unknown defects that are discovered by you or your inspectors during escrow. The purchase agreement obligates Seller to make the Property available to you for investigations.

**D. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as soil stability, geologic or environmental conditions, hazardous or illegal controlled substances, structural conditions of the foundation or other improvements, or the condition of the roof, plumbing, heating, air conditioning, electrical, sewer, septic, waste disposal, or other system. The only way to accurately determine the condition of the Property is through an inspection by an appropriate professional selected by you. If Broker gives you referrals to such professionals, Broker does not guarantee their performance. You may select any professional of your choosing. In sales involving residential dwellings with no more than four units, Brokers have a duty to make a diligent visual inspection of the accessible areas of the Property and to disclose the results of that inspection. However, as some Property defects or conditions may not be discoverable from a visual inspection, it is possible Brokers are not aware of them. If you have entered into a written agreement with a Broker, the specific terms of that agreement will determine the nature and extent of that Broker's duty to you. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

**E. YOU ARE ADVISED TO CONDUCT INVESTIGATIONS OF THE ENTIRE PROPERTY, INCLUDING, BUT NOT LIMITED TO THE FOLLOWING:**

1. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof, plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa, other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property. (Structural engineers are best suited to determine possible design or construction defects, and whether improvements are structurally sound.)

2. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. (Professionals such as appraisers, architects, surveyors and civil engineers are best suited to determine square footage, dimensions and boundaries of the Property.)

3. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms and other infestation or infection. Inspection reports covering these items can be separated into two sections: Section 1 identifies areas where infestation or infection is evident. Section 2 identifies areas where there are conditions likely to lead to infestation or infection. A registered structural pest control company is best suited to perform these inspections.

4. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage. (Geotechnical engineers are best suited to determine such conditions, causes and remedies.)

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

BIA-A REVISED 10/02 (PAGE 1 OF 2)

Buyer's Initials _____ ( _____ )
Seller's Initials _____ ( _____ )
Reviewed by _____ Date _____

**BUYER'S INSPECTION ADVISORY (BIA-A PAGE 1 OF 2)**

| Agent: Carl Reinhart | Phone: (714)404-8020 | Fax: | Prepared using zipForm® software |
|---|---|---|---|
| Broker: Peninsula Investment Real Estate Brokerage P. O. Box 14130 Irvine, CA 92623 | | | |

Property Address: *2429 Andover Place, Costa Mesa  CA  92626*                                                  Date: *February 11, 2011*

5. **ROOF:** Present condition, age, leaks, and remaining useful life. (Roofing contractors are best suited to determine these conditions.)
6. **POOL/SPA:** Cracks, leaks or operational problems. (Pool contractors are best suited to determine these conditions.)
7. **WASTE DISPOSAL:** Type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
8. **WATER AND UTILITES; WELL SYSTEMS AND COMPONENTS:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components.
9. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants). (For more information on these items, you may consult an appropriate professional or read the booklets "Environmental Hazards: A Guide for Homeowners, Buyers, Landlords and Tenants," "Protect Your Family From Lead in Your Home" or both.)
10. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood. (A Geologist or Geotechnical Engineer is best suited to provide information on these conditions.)
11. **FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies. (An insurance agent is best suited to provide information on these conditions.)
12. **BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. (Such information is available from appropriate governmental agencies and private information providers. Brokers are not qualified to review or interpret any such information.)
13. **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants; and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements. (Government agencies can provide information about these restrictions and other requirements.)
14. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property. Compliance requirements differ from city to city and county to county. Unless specifically agreed, the Property may not be in compliance with these requirements. (Local government agencies can provide information about these restrictions and other requirements.)
15. **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

Buyer and Seller acknowledge and agree that Broker: (I) Does not decide what price Buyer should pay or Seller should accept; (II) Does not guarantee the condition of the Property; (III) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (IV) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (x) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyer is encouraged to read it carefully.**

| | | | |
|---|---|---|---|
| *[signature]* | 2/17/11 | *[signature]*, *[signature]* | 2-17-11 |
| Buyer Signature | Date | Buyer Signature | Date |
| Carl H. Reinhart | | George and Ellen Minichiello | |
| *[signature]* | 2/16/11 | | |
| Seller Signature | Date | Seller Signature | Date |
| Milagros Elhaj | | | |

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |
|---|

BIA-A REVISED 10/02 (PAGE 2 OF 2)                    BUYER'S INSPECTION ADVISORY (BIA-A PAGE 2 OF 2)                    2429 Andover



## REAL PROPERTY SALE AGREEMENT

This Real Property Sale Agreement ("Agreement") is made and entered into as of
April 21, 2001, by and between Carl H. Reinhart ("Seller"), and George M. and
Ellen E. Minichiello ("Buyer"), for Buyer's purchase of an interest in the Property (as
defined below).

The Buyer and Seller agree as follows:

1. Buyer is to purchase and Seller is to sell a single-family residence with
   approximately 4,286 square feet of improvements on a single parcel of land
   with approximately 10,500 square feet (the "Property"), located in
   unincorporated Orange County, California. The improvements were
   constructed in 1979. The Property is also described as Assessor's Parcel
   Number 393-083-15, and is located at 19312 Fisher Lane, Santa Ana, CA.

2. The Property is valued at $800,000, and is encumbered by existing loans as
   follows: a first deed of trust in the amount of $364,200, in favor of Wells
   Fargo Home Mortgage Company, a second deed of trust in the amount of
   $68,650, in favor of Master Financial, Inc., and a third deed of trust in the
   amount of $100,000 in favor of Richard H. Meine. The third trust deed is a
   result of a cross-collateralization of a deed of trust on an additional property
   owned by Seller. Seller herein warrants to Buyer that there are no further
   encumbrances on the Property, that there are no defaults on any encumbrances
   and that all property taxes due have been paid.

3. This Agreement is for the purchase of a 49.34% interest in the Property by the
   Buyer, for $394,720.00. The Buyer is to place $131,803.43 down, and
   purchase the above interest subject to the existing loans as specified in
   Paragraph 2 above.

4. Buyer is to purchase and Seller is to sell the Property under this Agreement in
   "as-is" condition.

5. The Buyer will take title to the above interest as a tenant-in-common with
   Seller, or in another manner which is acceptable to Buyer.

6. Seller will execute a grant deed in favor of Buyer or Buyer's assignee. Such
   grant deed shall specifically transfer Seller's interest as described above to
   Buyer or Buyer's assignee.

Seller     Buyer

Real Property Sale Agreement, 19312 Fisher Lane, Santa Ana, California          Page 2

7.  The sale transaction is to be completed on or before April 27, 2001.  There shall be no escrow holder.  Seller herein warrants to Buyer that there are no encumbrances on the Property other than specified in Paragraph 2 above, that there are no defaults on any encumbrances, and that all property taxes due have been paid.  There will be no prorations of loan payments, property taxes, or other expenses of the Property.  Concurrently with recordation of the grant deed specified above, Alliance Exchange Group, Inc., as a qualified intermediary for Buyer, shall transfer a sum equal to the down payment specified above from Buyer's account to Seller's account in a manner to be specified by Seller.

8.  Buyer and Seller each agrees to cooperate should the other party elect to purchase or sell the above interest in the Property as part of a like-kind exchange under IRC Section 1031.  Any party's contemplated exchange shall not impose upon the other party any additional liability or financial obligation, and each party contemplating such exchange agrees to hold the other party harmless from any liability that might arise from such exchange.  This Agreement is not subject to or contingent upon either party's ability to effectuate an exchange.  In the event any exchange contemplated by either party should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

9.  In the event that, prior to the closing of this transaction, there is damage to the Property in an amount of $10,000 or more, the Buyer may elect to cancel this Agreement.

In witness whereof, the parties have duly executed this Agreement as of the day and year first above written.

SELLER:    _____
           Carl H. Reinhart

BUYER:     _____  4/21/01
           George M. Minichiello

           _____
           Ellen E. Minichiello

CARL H. REINHART
POST OFFICE BOX 4476
IRVINE, CALIFORNIA  92616


April 17, 2001


Mr. & Mrs. George M. Minichiello
18961 Flagstaff Lane
Huntington Beach, California  92646

Dear George and Ellen:

This letter is in regard to the single-family house located at 19312 Fisher Lane, Santa
Ana, California.

In the event that you complete the purchase of a 49.34% interest in the above property, as
specified in the Real Property Sale Agreement dated April 21, 2001, I hereby agree to
lease your interest in the above property, for the sum of $2,612.04 per month, on an
absolute net basis.  I will lease the property from you for a period of thirty-six months,
beginning immediately upon your acquisition of the above interest in the property.

We understand that I will pay to you the above monthly lease payment at the beginning
of each month, and I will also pay directly your share of any expenses for utilities,
property taxes, insurance, repairs and any capital improvements necessary to the
property.  The only expense that I will not pay directly or reimburse to you under the
lease is any cost of debt service that you may have on the property.

In the event that the property is sold to another party, I understand that the lease is to be
terminated concurrently with the closing of such sale.

In the event that you are in agreement with the above, please sign as indicated below to
acknowledge our agreement.

Sincerely,                                                    We hereby agree to the above:


Carl H. Reinhart                                        George M. Minichiello        Date

CHR/bm
                                                               Ellen E. Minichiello        Date

CARL H. REINHART
POST OFFICE BOX 4476
IRVINE, CALIFORNIA  92616


April 18, 2001


Mr. & Mrs. George M. Minichiello
18961 Flagstaff Lane
Huntington Beach, California  92646

Dear George and Ellen:

This letter is in regard to your proposed purchase of a 49.34% interest in the property at
19312 Fisher Lane, Santa Ana, California.

In the event that you complete the purchase of the above interest in the property, as well
as the lease of this interest to me, as outlined in my letter to you dated April 17, 2001,
you will receive a monthly lease payment, and will also be responsible for your
proportionate share of the debt service due on the first and second trust deeds.  As we
previously discussed, the third trust deed is actually a cross-collateralization of a deed of
trust on a property on Ladd Canyon Road in Silverado, California, and you are not to be
responsible for any portion of the payment on that loan.  Your monthly net cash flow
from your interest in the Fisher property will be as follows:

| | |
|---|---|
| Lease Payment: | $2,612.04 |
| Less Debt Service on 1st T.D.: | 1,310.97 |
| Less Debt Service on 2nd T.D.: | 422.38 |
| Net Cash Flow: | $  878.69 |


If you wish, I will send you each lease payment, and you can send me each of the
payments for the debt service, or if you prefer, I can credit you for the lease payment,
debit you for the two debt service payments, and send you your monthly net cash flow.
Let me know which method that you would prefer.

Sincerely,


Carl H. Reinhart
CHR/bm

CARL H. REINHART
POST OFFICE BOX 4476
IRVINE, CALIFORNIA 92616

May 3, 2004

Mr. & Mrs. George Minichiello
18961 Flagstaff Lane
Huntington Beach, California  92646

Dear George and Ellen:

Enclosed is the check for this month's rent of your interest in 19312 Fisher Lane, Santa
Ana.  You will note that the rental payment has increased from $1,236.92 to $1,248.46,
as a result of the payment on the first trust deed reducing, effective May 1, 2004, from
$1,930.97 to $1,970.59.

For your records, the following is the new calculation of the monthly rental payment:

| | |
|---|---|
| Lease payment: | $2,612.04 |
| 1st T.D. payment: | 1,907.59 |
| 2nd T.D. payment: | 856.05 |
| Total of 1st and 2nd T.D. payments: | 2,763.64 |
| George & Ellen's 49.34% share of payments: | 1,363.58 |
| Net payment to George & Ellen: | $1,248.46 |

Let me know if you have any questions.

Carl H. Reinhart
Enclosure



**SUMMARY OF TERMS OF SALE OF SINGLE-FAMILY HOUSE AT 19312 FISHER LANE, NORTH TUSTIN, CA**

I purchased this property in 1991 and used it as my primary residence until I placed it on the market for sale in 2010. In 2001, I sold a 49.34% interest in the property to George and Ellen Minichiello who are personal friends and who needed to purchase an interest in a small income-producing property as a replacement property to complete a Section 1031 tax-deferred exchange. I agreed to pay rent to the Minichiellos for my use of their portion of the property. There are additional agreements between the parties for the payment of various expenses, including operating expenses as well as capital improvements. In approximately 2005, I deeded my interest in the property to Nancy Nichols for estate planning purposes, but she deeded her full interest in the property back to me in 2008.

I am a licensed California real estate broker and I listed the property for sale with my firm in 2010. The property was recently sold, subject to Court approval, for $1,075,000. In the above transaction, there is no brokerage fee to my firm, the listing agent. There is a brokerage fee of $38,750 to Ridgecrest Investments, the buyer's agent. Neither my real estate firm nor I have any previous relationship with the buyer's agent. The terms of the above sale require that the Seller (Reinhart and Minichiellos) accept, as a portion of their consideration, equity of approximately $139,000 in a single-family house located at 2429 Andover Place, Costa Mesa, CA. After payment of all liens and reimbursements that encumber the <u>entire</u> Fisher Lane property, the sale produces approximately $600,000 in net proceeds, which are divided proportionate with the ownership interests. From the net sales proceeds, I expect to receive approximately $300,000 (50.66%) and the Minichiellos will receive approximately $295,000 (49.34%). After payment of all liens that encumber <u>only my interest</u> in the property, my net proceeds are reduced to approximately $80,000.

The Minichiellos, to faciliatie the completion of the sale, have agreed to accept all of the equity in the above Andover Place house as a portion of their net sales proceeds. I will receive no interest in the Andover Place property—all of my net proceeds will be cash which will be the property of my estate and used as approved by the Court.

Attached is a summary of the expected gross and net proceeds from the above sale transaction.

**SUMMARY OF GROSS AND NET PROCEEDS FROM SALE OF 19312 FISHER LANE, NORTH TUSTIN, CA**

| | | | |
|---|---|---|---|
| Gross Sale Price: | $1,075,000 | | |
| Less Closing Costs, Termite Repairs | ( 9,000) | | |
| Less Brokerage Fee to Buyer's Agent | ( 38,750) | | |
| Net Sale Price: | $1,027,250 | | |
| | | | |
| Less Payoff of Principal Balance, 1st T.D. | ( 302,000) | | |
| Less Payoff of Principal Balance, 2nd T.D. | ( 63,000) | | |
| Less Payoff of Principal Balance, 3rd T.D. | ( 100,000) | | |
| Less Reimbursement for Capital Improvem. | ( 195,000) | | |
|    Reinhart, $155,000 | | | |
|    Minichiellos, $40,000 | | Plus Reimbursement | $ 40,000 |
| Remaining Equity | $ 367,250 | | |
| | | | |
| Remaining Equity to Reinhart | $186,049 | Remaining Equity to Minichiellos | 181,201 |
| | | | |
| Less Payoff of Minichiello Loan | ( 60,000) | Plus Payoff of Reinhart Loan | 60,000 |
| Less Payoff of Meine Loan | (112,000) | | |
| Less Payoff of Best Value Lien | ( 13,000) | | _____ |
| Less Payoff of Prop. Tax Adv. | ( 24,000) | Total to Minichiellos | $281,201 |
| Less Payoff of 1st T.D. Acc. Int. | ( 19,000) | | |
| Less Payoff of 2nd T.D. Acc. Int. | ( 15,000) | | |
| Less Payoff of 3rd T.D. Acc. Int. | ( 25,000) | | |
| | | | |
| Plus Reimbursement for Capital Improvements | $155,000 | | |
| | | | |
| Total to Reinhart | $ 73,049 | | |

| In re: CARL H. REINHART, | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 8:09-bk-16774 TA |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **525 N. Cabrillo Park Drive, Suite 104, Santa Ana, CA 92701**

A true and correct copy of the foregoing document **Motion  by Debtor** FOR ORDER (1) APPROVING SALE OF REAL PROPERTY [19312 Fisher Lane, North Tustin, CA 92705] (2) APPROVING OVERBID PROCEDURES; (3) APPROVING DISTRIBUTION OF SALE PROCEEDS; (4) APPROVING COMPENSATION OF REAL ESTATE AGENTS will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **4/2/11** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **4/2/11** served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4/2/11 | RG PAGTER, JR. | /s/ **RG Pagter, Jr** |
|---|---|---|
| Date | Type Name | Signature |

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

-20-

M-Sale-Fisher

| In re: CARL H. REINHART, | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 8:09-bk-16774 TA |

## TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- **Evan C Borges:** eborges@irell.com, bblythe@irell.com
- **Deborah Conley:** bkmail@prommis.com
- **Christine M Fitzgerald:** cfitzgerald@scckg.com
- **Daniel K Fujimoto:** wdk@wolffirm.com
- **Nancy S Goldenberg:** nancy.goldenberg@usdoj.gov
- **Christopher M McDermott:** ecfcacb@piteduncan.com
- **John D Schlotter:** ecfmail@aclawllp.com
- **Patrick T Sullivan:** patricksullivan@lambertrogers.com
- **David A Tilem:** davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- **Linh K Tran:** bline.chapter13@blinellc.com
- **United States Trustee (SA):** ustpregion16.sa.ecf@usdoj.gov
- **Alan Steven Wolf:** wdk@wolffirm.com

## ALL SERVICE INFORMATION CONTINUED ON ATTACHED PAGE ARE BEING SERVED BY U.S. MAIL

Pagter and Miller
525 N Cabrillo
Park Drive
Suite 104
Santa Ana, CA
92701
(714) 541-6072

M-Sale-Fisher

-21-

Agricredit Acceptance LLC
Attn Managing Agent
P O Box 2000
Johnston, IA 50131

Alan Short, P.E.
25911 Pinewood Lane
Laguna Hills, CA 92653

Atty for HNB
Alan Steven Wolf
The Wolf Law Firm
38 Corporate Park
Irvine, CA 92606

American Express
Attn Managing Agent
P O Box 981535
El Paso, TX 79998

American Express Centurion Bank
Attn Managing Agent
PO Box 3001
Malvern, PA 19355-0701

American Express
Attn Managing Agent
P O Box 981535
El Paso, TX 79998

Bob D Heinrich
3616 South Norwich Place
Rowland Heights, CA 91748

Canyon Market
Attn Managing Agent
28192-28222 Silverado Canyon R.
Silverado, CA 92676

Best Value Roofing
Attn Managing Agent
2230 W Chapman Ave #237
Orange, CA 92868

Capital One
Attn Managing Agent
P O Box 30273
Salt Lake City, UT 84130

Capital One Bank (USA) N.A.
Attn Tsys Debt Management
PO Box 5155
Norcross, GA 30091

CCRC Farms, LLC
Attn Managing Agent
222 Via Marnell Way
Las Vegas, NV 89119

CCRC Farms, LLC
c/o Christine M Fitzgerald
Laura Buchanan
Smith, Campbell, Clifford, etal
3424 Carson St, Ste 350
Torrance CA 90503

Capital One
Attn Managing Agent
P O Box 30285
Salt Lake City, UT 84130

PRA Receivables Management LLC
c/o Capital One
PO Box 41067
Norfolk VA 23541

Assignee of Chase Bank
Roundup Funding LLC
MS 550
PO Box 91121
Seattle WA 98111-1121

Chase Bank USA, N.A.
Attn Managing Agent
PO Box 15145
Wilmington, DE 19850-5145

Chase
Attn Managing Agent
P O Box 15298
Wilmington, DE 19850

CitiBank
Attn Managing Agent
P O Box 6000
The Lakes, NV 89163

City of Newport Beach
Attn Managing Agent
3300 Newport Blvd.
Newport Beach, CA 92663

Commercial Bank of California
Attn Ron del Toro, VP
695 Town Center Drive #100
Costa Mesa, CA 92626

Attorneys for Commercial Bank of CA
Stephen F Lambert
359 W Madison Ave Ste 100
El Cajon, CA 92020

Eoin L Kreditor, Esq.
Friedman Stroffe & Gerard PC
19800 MacArthur Blvd #1100
Irvine, CA 92612

First Franklin Loan Services
Attn Managing Agent
P O Box 1838
Pittsburgh, PA 15230

Franchise Tax Board
Special Procedures Branch
PO Box 2952
Sacramento, CA 95812-2952

Franklin Credit Mgmt Group
Attn Managing Agent
101 Hudson st 25th Fl
Jersey City, NJ 07302

Franklin Credit Management Corp.
Bankruptcy Department
P O Box 2301
Jersey City, NJ 07303

The Huntington Nat'l Bk, as Tr for Franklin
Mortgage Asset Management Trust 2009-A, by Franklin
Credit Management
Corporation as Servicing Agent
c/o Franklin Credit Management Corporation
PO Box 2301
Jersey City, NJ 07303-2301

The Huntington National Bank,
As TR for Franklin Mtg Asset TR 2009A
c/o Franklin Credit Management Corp
PO Box 620444
Indianapolis, IN 46262-0444

First Franklin National City Bank
c/o Home Loan Services Inc
Christophen McDermott
Pite Duncan
4375 Jutland Drive, Ste 200
San Diego, CA 92117

~~Ganahl Lumber~~
~~Attn Managing Agent~~
~~P O Box 31~~
~~Anaheim, CA 92815~~

George & Ellen Minichiello
8161 Bryant Dr
Huntington Beach, CA 92647

George Helland/Robin Reinhart
2626 29th St
San Diego, CA 92104

Gladych & Associates, Inc.
Attn Managing Agent
1400 Bristol Street North #270
Newport Beach, CA 92660

HFC
Attn Managing Agent
P O Box 3425
Buffalo, NY 14240

HFC
Attn Managing Agent
PO Box 10490
Virginia Beach, VA 23450

Bright Prospects
HSBC Bank USA NA
Attn Managing Agent
POB 5213
Carol Stream, IL 60197

HSBC
Attn Managing Agent
P O Box 80026
Salinas, CA 93912

HSBC
Attn Managing Agent
P O Box 81622
Salinas, CA 93912

Household Receivable Acquisition Corp
HSBC Bank USA NA
Attn Managing Agent
POB 5213
Carol Stream, IL 60197

Internal Revenue Service
PO Box 21126
Philadelphia, PA 19114

Internal Revenue Service
Insolvency Group 7 Mailstop 5503
24000 Avila Road
Laguna Niguel, CA 92677

Juniper Card Service
Attn Managing Agent
P O Box 13337
Philadelphia, PA 19101

Kathy Shade
18247 El Nido Ave
Perris, CA 92570

Attorney for Main Street Santa Ana LLC
c/o James T Tice
38 Sorrento
Irvine CA 92614

Main Street Santa Ana LLC
Attn William Takaheshi, Jr., Mgr
1030 Andrews Highway #208
Midland, TX 79701

Main Street Santa Ana LLC
Attn Managing Agent
1030 Andrews Highway #209
Midland, TX 79701

Marguerite Reinhart
18800 Florida St #333
Huntington Beach, CA 92648

Michael Britt
28435 Zurita
Mission Viejo, CA 92692

Michael A. Lanphere, Esq.
Lanphere Law Group
400 N Tustin Ave Ste 225
Santa Ana, CA 92705

National Construction Rentals
Attn Managing Agent
P O Box 4503
Pacoima, CA 91333

Attorney for National Construction Rentals Inc
Earle H Cohen Esq
Carlson & Cohen LLP
16133 Ventura Blvd Ste 1175
Encino, CA 91436

NCO Financial Systems Inc
Attn Managing Agent
507 Prudential Road
Horsham, PA 19044

Orange County Tax Collector
PO Box 1438
Santa Ana, CA 92702

Office of the U S Trustee
411 W. Fourth Street
Suite 9041
Santa Ana, CA 92701

Orkin Pest Control
Attn Managing Agent
12710 Magnolia Ave
Riverside, CA 92503

Attorney for Martin Vellandi – Plumbing   Customs
Hallie D. Hannah
Law Office of Mitchell B. Hannah
9900 Research Drive
Irvine, CA 92618-4309

~~R H Meine Trust~~
~~Attn R H Meine, Trustee~~
~~P O Box 155~~
~~Palos Verdes Peninsula, CA 90274~~

The Koll Trust
Attn Managing Agent
2583 W Loma Vista Drive
Rialto, CA 92377

Attorneys for Koll Trust
c/o Law Offices of David A. Tilem
206 N Jackson Street, Ste 201
Glendale, CA 91206

~~Union Bank of California~~
~~Attn Managing Agent~~
~~P O Box 85643~~
~~San Diego, CA 92186~~

Union Bank NA
Attn Managing Agent
PO Box 85543 LRU-M711
San Diego, CA 92186-5443

Creditors Adjustment Bureau, Inc
Assignee of Walters Wholesale Electric
Attn Managing Agent
PO Box 5932
Sherman Oaks, CA 91413

~~Walters Wholesale Electric~~
~~Attn Managing Agent~~
~~1451-A Lincoln Blvd.~~
~~Santa Monica, CA 90401~~

~~Lincoln Wholesale Electric~~
~~Attn Managing Agent~~
~~1451-A Lincoln Blvd~~
~~Santa Monica, CA  90401~~

Waste Management
Attn Managing Agent
1800 S Grand Ave
Santa Ana, CA  92705

W. B. Contento
P O Box 6397
Santa Ana, CA 92701

Wells Fargo Bank
Attn Managing Agent
P O Box 10347
Des Moines, IA 50306

Wells Fargo Bank, NA
Bankruptcy Department
3476 Stateview Blvd
X7801-014
Ft Mill, SC 29715

Wells Fargo Bank, N.A.
Attn Managing Agent
MAC S4101-08C
100 W Washington St
Phoenix, AZ 85003

~~West Coast Plumbing~~
~~Attn Managing Agent~~
~~7 Pemberly~~
~~Mission Viejo, CA 92692~~

Wells Fargo Home Mortgage
Attn Managing Agent
P O Box 14411
Des Moines, IA 50306

Wells Fargo Bank, N.A.
Attn Managing Agent
PO Box 9210
Des Moines, IA 50306

Yocom-Baldwin Development
Attn Managing Agent
3299 Horseless Carriage Dr
Norco, CA 92860

Charles J. Hunt, Jr. J.D., M.B.A., LL.M.
Professor of Business Law
Graziadio School of Business & Management
Pepperdine University
Irvine Graduate Campus
18111 Von Karman Ave., Suite 209
Irvine, CA 92612

First Franklin National City Bank
c/o Home Loans Services, Inc.
PO Box 17933
San Diego, CA 92177-0933

Assignee of NCB
Select Portfolio Servicing, Inc.
PO Box 65450
Salt Lake City, UT 84165

Select Portfolio Servicing Inc
PO Box 65727
Salt Lake City, UT 84165